FILED

JAN 1 4 2011

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

OREGON NATURAL DESERT
ASSOCIATION,

        Plaintiff,

                                    CV 09-369-PK

                                    OPINION AND ORDER

KENNY MCDANIEL, *et al.*,

        Defendants.

PAPAK, Judge:

        Plaintiff Oregon Natural Desert Association (ONDA) brings this action arising from the

travel management planning process for the Steens Mountain. ONDA names as defendants the

United States Bureau of Land Management ("BLM"), Kenny McDaniel, District Manager for the

Burns District of BLM, and Joan Suther, Field Manager for the Andrews Resource Area of the

Page 1 - OPINION AND ORDER

Burns District of BLM.[1]  Specifically, ONDA alleges that BLM's adoption of the Travel

Management Plan violates the Steens Mountain Cooperative Management and Protection Act of

2000 ("Steens Act"), 16 U.S.C. § 460nnn *et seq.*, the Federal Land Policy and Management Act

of 1976 ("FLPMA"), 43 U.S.C. §§ 1701–87, the Wilderness Act of 1964, 16 U.S.C. §§ 1131–36,

and the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321–61.  Now before the

court is ONDA's motion for summary judgment (#52), BLM's cross-motion for summary

judgment (#67), BLM's motion to strike extra-record materials (#59), and ONDA's motion for

leave to file an amended complaint (#84).  I have considered all of the parties' briefs and all of

the evidence in the administrative record relevant to questions of amendment.[2]  For the reasons

set forth below, ONDA's motion is granted and ONDA is instructed to file its amended

complaint as proposed.

## BACKGROUND

I.      **Procedural History**

On November 28, 2007, BLM issued a Decision Record adopting the proposed

Transportation Management Plan (TMP) for the Steens Mountain Cooperative Management and

Protection Area.  AR 783.  On January 4, 2008, ONDA appealed from and petitioned for stay of

the effect of that decision to the Department of Interior's Board of Land Appeals (IBLA).  AR

619-690, 242-294.  On April 2, 2008, the IBLA granted a stay as to the part of the BLM decision

---

[1] In its proposed amended complaint, ONDA also includes the Interior Board of Land Appeals (IBLA) as a defendant.  For simplicity, I refer to defendants collectively as BLM.

[2] I have discussed the pending motions with the parties and we agreed that it would be most efficient to address ONDA's motion for leave to file an amended complaint before addressing summary judgment motions.

to open Obscure Routes to public vehicle traffic, but denied ONDA's petition for stay as to all

other challenged aspects of BLM's decision. AR 202. On July 28, 2008, ONDA filed a motion

to expand the stay granted by the IBLA, arguing that two subsequent court rulings required the

IBLA to enjoin any implementation of the TMP decision. AR 82-201. On February 19, 2009,

the IBLA issued a ruling reversing BLM's decision to permit motorized traffic on the Obscure

Routes within the CMPA, affirming BLM's TMP decision in all other respects, and denying

ONDA's motion to expand the stay as moot. AR 53-57, 65.

      ONDA filed this action on April 13, 2009, challenging BLM's Decision Record as the

final agency action. On November 9, 2010, this court heard oral arguments on the limited issue

of which agency action -- BLM's Decision Record or the IBLA ruling -- was subject to judicial

review. (#80.) Subsequently, this court issued an opinion and order concluding that the IBLA's

February 19, 2009 ruling was the single final agency action subject to judicial review. (Opinion

and Order, #80.) On November 23, 2010, a scheduling conference was held during which this

court discussed with the parties potential options for proceeding efficiently in this case, including

simply construing ONDA's complaint as against the IBLA ruling or, alternatively, permitting

ONDA to amend its complaint to challenge the IBLA's decision. (#83.) In that conference, the

court also recognized that ONDA might prefer to proceed by amending its complaint to ensure

that the record was clear for any potential appeal ONDA wished to file. During that conference,

this court also requested supplemental briefing from the parties on the question of issue

exhaustion. *Id.* On December 9, 2010, ONDA moved to amend its complaint to add the IBLA

as a defendant and plead its claims in the alternative, challenging both the BLM and IBLA

decisions as final agency actions. (#84.) Defendants resist plaintiff's motion on ground that

Page 3 - OPINION AND ORDER

permitting the amended complaint would cause undue delay in the final resolution of this action, would prejudice defendants, and would be a largely futile exercise.

## LEGAL STANDARD

A party may amend a pleading once as a matter of course before being served with a responsive pleading or within 20 days after serving the pleading but thereafter may only amend by consent of the opposing party or leave of the court. Fed. R. Civ. P. 15(a). "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend is within the discretion of the trial court, but that discretion "should be guided by the underlying purpose of Rule 15(a) which was to facilitate decisions on the merits, rather than on technicalities or pleadings." *In re Morris*, 363 F.3d 891, 894 (9th Cir. 2004) (citation omitted). "A district court may, however, take into consideration such factors as bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether the party has previously amended his pleadings." *Id.* (citation omitted). "An outright refusal to grant leave to amend without a justifying reason is . . . an abuse of discretion." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1034 (9th Cir. 2008) (citation omitted).

## DISCUSSION

A motion for leave to amend should be granted unless there has been a showing that to permit the amendment would produce an undue delay in the litigation, that the motion was brought in bad faith or out of dilatory motive, that the movant has repeatedly failed to cure deficiencies in the complaint by previous amendments, that the proposed amendment would unduly prejudice an opposing party, or that the proposed amendment would result in futility for lack of merit. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Moreover, it is well settled that,

of these factors, the most important is the potential for prejudice to opposing parties. *See Jackson*, 902 F.2d at 1387 (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330-31 (1971)). However, futility alone is sufficient grounds for denying a motion to amend. *See Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004) (quoting *Nunes v. Ashcroft*, 348 F.3d 815, 818 (9th Cir. 2003)). Undue delay alone cannot justify the denial of a motion for leave to amend. *See Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999).

BLM argues generally that ONDA's motion should be denied because granting leave to amend would cause undue delay in the litigation and substantial prejudice to BLM. Additionally, BLM contends that ONDA failed to exhaust many of its legal issues contained within its proposed amended complaint and argues, therefore, that ONDA's proposed amendment is futile. Regarding BLM's general concerns, I find that ONDA's proposed amendment will neither unduly delay this litigation nor substantially prejudice BLM. Moreover, I conclude that ONDA's proposed amended complaint is not futile because ONDA properly exhausted all the legal issues disputed by BLM.[3]

---

[3] It is important to understand precisely which issues are before the court in this exhaustion inquiry. BLM and ONDA both agree that ONDA originally moved for summary judgment on nine different legal issues associated with four different claims for relief. (Pl.'s Supp. Br., #86, at 5) (chart listing ONDA's four claims and nine corresponding issues). BLM concedes that ONDA exhausted two of those nine legal issues before the IBLA, namely ONDA's argument that BLM violated the Steens Act requirement for a comprehensive travel management plan and ONDA's argument that BLM violated the NEPA requirement consider a range of reasonable alternatives to the proposed action. Therefore, I do not discuss these two issues in this opinion. BLM however, disputes that ONDA exhausted the remaining seven legal issues before the IBLA, each of which I analyze separately below. Finally, ONDA asserts that it in addition to the nine issues it raised on summary judgment, it also exhausted a number of other issues that it pleads within its proposed amended complaint but on which it has not yet moved for summary judgment. (Pl.'s Supp. Br., #86, at 4 n.2.) Since those additional issues are not before the court, I make no ruling in this opinion concerning whether they were exhausted before the agency.

Page 5 - OPINION AND ORDER

I.       **Undue Delay**

ONDA's proposed amendment will not cause undue delay in this case. Although summary judgment motions are already before this court, granting ONDA leave to amend will not delay resolution of those motions. This court specifically requested supplemental briefing to address the threshold question of issue exhaustion. Now, by simultaneously granting leave to amend and ruling on issue exhaustion, this court ensures that the pending summary judgment motions will be not be delayed on account of ONDA's motion for leave to amend. Moreover, ONDA provides a reasonable explanation for the timing of its request to amend. During oral argument on the "final agency action" issue, ONDA clarified its position that both the BLM decision and the IBLA ruling were reviewable final agency actions. Although this court ultimately found otherwise, the precise issue was one of first impression in this circuit, with conflicting statutes, regulations, and case law confounding the analysis. Thus, ONDA cannot be faulted for its decision to challenge only the BLM decision in its initial complaint. Lastly, the cases relied upon by BLM concerning delay are inapposite to the situation here.[4] In sum, this factor weighs in favor of granting leave to amend.

---

[4] For example, BLM extensively discussed *M/V American Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1492 (9th Cir. 1983), where the Ninth Circuit affirmed the district court's denial of plaintiff's motion for leave to amend a complaint. There, the Court reasoned that plaintiff sought leave to amend a year and a half after filing the case, that the proposed amended complaint included completely new allegations covering different acts, employees and time periods despite that those facts were not newly discovered, and that the proposed amendment would have necessitated additional discovery. *Id.* Here, however, ONDA's proposed amended complaint responds directly to a new development in the case (this court's ruling that the BLM decision is not a reviewable final agency action), includes no new facts or theories, and requires no additional discovery. The only similarity between *M/V American Queen* and the present case is the timing of ONDA's motion, more than a year and half after the action commenced.

## II.        Prejudice

Further, granting ONDA leave to amend would not unfairly prejudice defendants. BLM argues that it will be prejudiced because it will have to prepare a new answer to ONDA's complaint, new summary judgment briefing, new briefing to strike extra-record materials, and because ONDA stands to gain a windfall in attorney fees under the Equal Access to Justice Act (EAJA) if it eventually prevails on any of its claims. First, although granting ONDA leave to amend would require BLM to prepare and file a new answer to ONDA's amended complaint, such additional legal work will likely be minimal, since ONDA alleges no new facts or legal theories. Second, BLM does not explain why it will need entirely new summary judgment briefing. Indeed, BLM's original summary judgment briefing framed the IBLA ruling, not the BLM decision, as the final agency action and addressed whether that ruling was arbitrary and capricious under the Administrative Procedure Act. I do not see how permitting ONDA to amend its complaint to conform to BLM's legal theory would create a hardship for BLM. Third, since BLM has already moved to strike the extra-record materials ONDA presented from the period after the IBLA ruling, additional briefing on that topic would be superfluous. Finally, BLM's concern about exposure to additional attorney fees under the EAJA is exaggerated. This court's ruling on the final agency action issue will not require duplication of the past 18 months of litigation. As I described above, this case is not being delayed on account of ONDA's motion and ONDA's preexisting briefing is still relevant, for the most part. Overall, any prejudice BLM may suffer from ONDA's amendment will be slight.

## III.       Futility

Last, ONDA's proposed amendment is not futile. Courts in this circuit typically find

a proposed amendment to be futile when the complaint as amended would either fail to state a claim or certainly be defeated on summary judgment. *See Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990) (amendment futile because proposed amendment would appear not to state a claim); *Roth v. Garcia Marquez*, 942 F.2d 617, 628-629 (9th Cir. 1991) (amendment to specifically plead additional facts relevant to a claim the court had already considered would be futile because the claim "would certainly be defeated on summary judgment"). Since courts will not consider issues that were not presented before an administrative proceeding at the appropriate time, a complaint seeking relief on legal issues that were not administratively exhausted will surely fail. *See Marathon Oil Co. v. United States*, 807 F.2d 759, 767-68 (9th Cir. 1986). Here, ONDA indeed exhausted all seven of the legal issues to which BLM objects.

## A.    Issue Exhaustion

Although the requirements of administrative issue exhaustion predominantly derive from statutes, courts sometimes impose an issue exhaustion requirement even in the absence of a statute or regulation. *Sims v. Apfel*, 530 U.S. 103, 107-08 (2000). The basis for such requirements is "an analogy to the rule that appellate courts will not consider arguments not raised before trial courts." *Id.* at 108-09. Whether a court should require administrative issue exhaustion depends on the nature of the administrative proceeding; the rationale for exhaustion is strongest in adversarial proceedings, but weaker in non-adversarial proceedings. *Id.* at 110. Thus, in *Sims*, the Supreme Court held that administrative issue exhaustion is not required for Social Security claimants, since the Social Security administrative review process is informal and non-adversarial. *Id.* at 110-12. By contrast, several courts have explicitly applied the Supreme Court's reasoning in *Sims* to impose an administrative issue exhaustion requirement for judicial

Page 8 - OPINION AND ORDER

review of IBLA proceedings, noting that such proceedings are adversarial. *See, e.g., Bolack Minerals Co. v. Norton*, 370 F. Supp. 2d 161, 169 (D.D.C. 2005); *City of Santa Clarita v. U.S. Dep't of Interior Bd. of Land Appeals*, No. CV04-1572 DT (FMOx), 2006 WL 4748737, at *22 (C.D. Cal. Feb. 8, 2006).

The Supreme Court has also provided specific guidance on administrative exhaustion for NEPA issues. In *Department of Transp. v. Pub. Citizen*, 541 U.S. 752 (2004), the Supreme Court explained that "[p]ersons challenging an agency's compliance with NEPA must 'structure their participation so that it . . . alerts the agency to the [parties'] position and contentions,' in order to allow the agency to give the issue meaningful consideration."[5] *Id.* at 764 (quoting *Vermont Yankee Nuclear Pwr. Corp. v. Natural Res. Def. Council*, 435 U.S. 519, 553 (1978)). Moreover, in NEPA cases "the agency bears the primary responsibility to ensure that it complies with NEPA . . . and an EA's or an EIS' flaws might be so obvious that there is no need for a commentator to point them out specifically in order to preserve its ability to challenge a proposed action." *Public Citizen*, 541 U.S. at 765.

In *Nat'l Parks & Conservation Ass'n v. BLM*, the Ninth Circuit summarized its current jurisprudence on the administrative issue exhaustion requirement. As a general rule, reviewing federal courts will not consider issues that were not presented before an administrative proceeding at the appropriate time. *Nat'l Parks & Conservation Ass'n v. BLM*, 606 F.3d 1058, 1065 (9th Cir. 2010) (citing *Marathon Oil Co. v. United States*, 807 F.2d 759, 767-68 (9th Cir.

---

[5] Where plaintiffs bring NEPA claims, Ninth Circuit courts sometimes follows the Supreme Court's decision in *Public Citizen* and addresses administrative exhaustion using the conceptual framework of notice and waiver instead of issue exhaustion as described in *Sims*. *High Sierra Hikers Ass'n v. U.S. Forest Serv.*, 436 F.Supp. 2d 1117, 1148 (E.D. Ca. 2006) (citing *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1208 (9th Cir. 2004)).

1986)).  However, the Ninth Circuit has repeatedly held that the issue exhaustion requirement

should be interpreted broadly.  *Id.*  Plaintiffs satisfy the issue exhaustion requirement if their

appeal "'provided sufficient notice to the [agency] to afford it the opportunity to rectify the

violations that the plaintiffs alleged.'"  *Id.* (quoting *Native Ecosystems v. Dombeck*, 304 F.3d

886, 899 (9th Cir. 2002)).  Moreover, plaintiffs need not state their claims in precise legal terms,

and need only raise an issue "'with sufficient clarity to allow the decision maker to understand

and rule on the issue raised . . . ." *Id.* (quoting *Great Basin Mine Watch v. Hankins*, 456 F.3d 955,

968 (9th Cir. 2006)).  Finally, there is no "bright-line standard" for meeting the issue exhaustion

requirement.  *Id.*  The Ninth Circuit's most recent exhaustion decision in *Lands Council v.*

*McNair* reiterates this expansive approach, clarifying that alerting the agency "in general terms"

to a particular issue will be sufficient for exhaustion if the agency is given the opportunity to

"'bring its expertise to bear to solve [the] claim.'" *Lands Council v. McNair*, No. 09-36026, 2010

U.S. App. LEXIS 26274, at *11 (9th Cir. Dec. 28, 2010) (quoting *Native Ecosystems Council*,

304 F.3d at 900).

There are, however, several exceptions to the issue exhaustion requirement.  First, a

court may address an issue not raised before the agency if "the agency lacked either the power or

the jurisdiction to decide it."  *Marathon Oil Co. v. United States*, 807 F.2d 759, 768 (9th Cir.

1986).  Second, a court may consider issues not raised to the agency when "exceptional

circumstances" warrant such review.  *Id.* (internal quotations omitted).  Exceptional

circumstances include, for example, "[o]bjective and undisputed evidence of administrative bias

[that] would render pursuit of an administrative remedy futile." *Geo-Energy Partners v. Salazar*,

613 F.3d 946, 959 (9th Cir. 2010) (quoting *Anderson v. Babbitt*, 230 F.3d 1158, 1164 (9th Cir.

2000).   Moreover, "[i]n determining whether to require exhaustion, this court balances the agency's interests in applying its expertise, correcting its own errors, making a proper record, enjoying appropriate independence of decision and maintaining an administrative process free from deliberate flouting, and the interests of private parties in finding adequate redress for their grievances." *Id.* (quoting *Litton Industries, Inc. v. Fed. Trade Comm.*, 676 F.2d 364, 369-70 (9th Cir. 1982)).

Since there is no bright-line standard for administrative issue exhaustion in the Ninth Circuit, it is instructive to examine the specific facts and reasoning of relevant cases to determine the contours of this requirement.   In *Native Ecosystems Council v. Dombeck*, 304 F.3d 886 (9th Cir. 2002), environmental groups sought review of the Forest Service's approval of a timber sale on national forest land, arguing that the Forest Service's amendment of the forest plan's road density standard violated the National Forest Management Act (NFMA), among other statutes. *Id.* at 891.   The plaintiffs argued that the Forest Service violated the NFMA by: (1) waiving the road density standard without analyzing the impact on the forest plan; and (2) failing to prepare an environmental impact statement (EIS) for the amendment. *Id.* at 898.   Defendants countered that plaintiffs failed to raise these distinct issues in their administrative appeals. *Id.*   The Ninth Circuit observed that the plaintiffs complained generally that both the road density amendment and the process by which the Forest Service adopted that amendment violated the NFMA. *Id.* Moreover, the Ninth Circuit noted that the administrative decision-makers actually addressed the proper amendment procedures in its decision. *Id.* at 899.   Consequently, the Court held that because the plaintiffs raised the forest plan amendment procedures sufficiently for the agency to review the Forest Service's compliance with the NFMA, the plaintiffs satisfied the issue

exhaustion requirement. *Id.* at 899-900. The Court also explained that the purpose of the issue exhaustion requirement was to "avoid[] premature claims and ensur[e] that the agency be given a chance to bring its expertise to bear to resolve a claim." *Id.* at 900. In conclusion, the Court remarked that "[r]equiring more might unduly burden those who pursue administrative appeals unrepresented by counsel, who may frame their claims in non-legal terms rather than precise legal formulations." *Id.* at 900.

In *Idaho Sporting Cong. v. Rittenhouse*, 305 F.3d 957 (9th Cir. 2002), the Ninth Circuit similarly addressed issue exhaustion. There, plaintiffs sued the Forest Service to enjoin timber sales for violations of the National Environmental Policy Act (NEPA) and the NFMA. *Id.* at 960. The Ninth Circuit analyzed whether the plaintiffs properly exhausted two separate alleged violations of the NFMA. *Id.* at 965. The Court found no references in the administrative record regarding the first issue, the alleged failure to establish habitat conservation plans for sensitive species, and consequently held that plaintiffs failed to exhaust that issue. *Id.* On the second issue, the alleged failure to conduct population surveys or monitor certain wildlife species, the Court reached the opposite conclusion. Although the plaintiffs did not cite 36 C.F.R. § 219.19(a)(6), the applicable regulation requiring the Forest Service to monitor those wildlife species, they made references to the Forest Service's "fail[ure] to disclose and analyze effects on sensitive species," among other conduct. *Id.* at 965-66. Consequently, the Ninth Circuit observed that the plaintiffs "clearly expressed their concern that the proposed logging sales would harm management indicator species . . . ." *Id.* at 966. Thus, the Ninth Circuit held that "it would be unreasonable to require that the [plaintiffs] incant the magic words 'monitor' and 'population trends' in order to leave the courtroom door open to a challenge citing requirements

of section 219.19 . . . ." *Id.*

The Ninth Circuit continued to apply a broad definition of issue exhaustion in *Great Basin Mine Watch v. Hankins*, 456 F.3d 955 (9th Cir. 2006). In *Great Basin*, plaintiffs challenged the Bureau of Land Management's decisions approving two different mines, the Amended South Project and Leeville. *Id.* at 960. The Ninth Circuit analyzed whether the district court properly held that plaintiffs failed to exhaust four different issues. Regarding plaintiffs' Clean Water Act issue, the Court held that plaintiffs placed BLM on notice of their concerns over discharged groundwater from the Amended South Project through a comment letter to BLM questioning the water quality of discharged water. *Id.* at 965. The Court similarly found plaintiffs exhausted one of their NEPA issues because plaintiffs expressed concerns in comments on an EIS that the two mine projects were actually linked and because BLM subsequently considered whether the projects were independent. *Id.* at 968. The Court concluded that plaintiffs also exhausted another NEPA issue by submitting comments on a draft EIS raising concerns that BLM's cumulative impact analysis was inadequate. *Id.* at 971. Unlike the preceding three issues, the Court determined that plaintiffs did not exhaust an issue regarding protected public water reserves because the plaintiffs' "general comments about groundwater, springs, and seeps" were "too attenuated" from "an argument that [BLM] failed to protect federally-reserved water rights under an eighty-year-old Executive Order." *Id.* at 967.

In *Buckingham v. Sec'y of the USDA*, the Ninth Circuit further explained the degree of similarity that must exist between a plaintiff's arguments before the agency and the district court in order to satisfy the exhaustion requirement. 603 F.3d 1073, 1080-81 (9th Cir. 2010). There, plaintiff sought review of the Forest Service's cancellation of his grazing permit after he

repeatedly grazed his cattle in unauthorized areas. *Id.* at 1076, 1079. The district court ruled that

plaintiff failed to exhaust his administrative remedies and the Ninth Circuit affirmed. *Id.* at

1079, 1081. The Court explored the difference between plaintiff's initial argument to the agency

and his subsequent argument to the district court. The plaintiff originally argued to the agency

that other ranchers' non-compliance with their permit obligations excused him from complying

with the restrictions in his own permit. *Id.* at 1081. Before the district court, however, plaintiff

contended that the limitations in his permit were unenforceable because his permit did not

include a description or map defining boundaries of his grazing area. *Id* at 1080. The Court

reasoned that these arguments – one focusing on neighboring ranchers' conduct and the other on

the permit language – were so dissimilar that raising the first did not exhaust the second. *Id.* at

1081. Moreover, the Court noted that plaintiff also could not identify any place in the

administrative record where he complained of the permit's deficient pasture boundary

description. *Id.* Thus, the Court contrasted this case with the situation where a plaintiff satisfies

the exhaustion requirement by presenting a similar argument before the agency despite framing

that argument in non-legal terms. *Id.* (citing *Native Ecosystems Council*, 304 F.3d at 900).

Finally, in *Nat'l Parks & Conservation Ass'n v. BLM*, the Ninth Circuit addressed a

scenario procedurally similar to the current litigation. There, plaintiff challenged a land

exchange between a private party and BLM to facilitate the construction of landfill. *Nat'l Parks*

*& Conservation Ass'n*, 606 F.3d at 1062. BLM approved the exchange, as did the IBLA. *Id.*

Before both the district court and the Ninth Circuit, plaintiff argued that BLM improperly

appraised the land to be exchanged because it failed to consider a landfill as the "highest and best

use" of the public parcels as required by the Federal Land and Policy Management Act

(FLPMA). *Id.* at 1065. The Ninth Circuit held that plaintiff had exhausted that issue before the

IBLA. *Id.* The Court noted that although plaintiff did not use the words "highest and best use"

in its Statement of Reasons for appeal to the IBLA, plaintiff's appeal "highlighted the BLM's

failure to appraise the land's fair market value *as a landfill*." *Id.* at 1066 (emphasis in original).

Since the highest and best use analysis is integral to the appraisal process, the Court found that

the IBLA had sufficient notice to address that issue. *Id.* The Ninth Circuit's analysis pointedly

diverged from that of Judge Trott, whose dissent proposed that plaintiff failed to exhaust because

it never used the term "highest and best use" before the IBLA and because it neglected to explain

exactly why the public land was undervalued in the appraisal process. *Id.* at 1093 (Trott, S.J.,

dissenting).

These cases clarify several features of the Ninth Circuit's issue exhaustion

requirement. First, plaintiffs need not cite the relevant statute or regulation to exhaust a legal

issue. *See Idaho Sporting Cong.*, 305 F.3d at 965-66; *cf. Native Ecosystems Council*, 304 F.3d at

900. Nor does a plaintiff have to invoke the exact legal terms of art drawn from those statutory

authorities. *See Idaho Sporting Cong.*, 305 F.3d at 966; *Nat'l Parks & Conservation Ass'n*, 606

F.3d at 1066. Moreover, while language in an agency decision actually addressing the plaintiff's

issue confirms that the plaintiff placed the agency on notice of that issue, such agency

responsiveness is apparently not required for issue exhaustion. *Compare Native Ecosystems*

*Council*, 304 F.3d at 899 (agency addressed issue) *with Nat'l Parks & Conservation Ass'n*, 606

F.3d at 1066 (issue exhausted even though IBLA did not address it). Further, there is some

variation in the level of specificity required at the administrative level to satisfy the issue

exhaustion requirement. Plaintiffs can certainly exhaust an issue by articulating on appeal the

Page 15 - OPINION AND ORDER

particular reason why an agency's action is improper. *See, e.g.*, *Nat'l Parks & Conservation Ass'n*, 606 F.3d at 1066. But, plaintiffs also can satisfy the exhaustion requirement merely by making a "general objection" under a statute to an agency action without referencing any specific violations of that statute. *See Lands Council*, 2010 U.S. Dist. LEXIS 26274, at *11; *Native Ecosystems Council*, 304 F.3d at 899. Although the Ninth Circuit interprets the issue exhaustion requirement broadly, a plaintiff cannot exhaust an issue merely by making "general comments" about an environmental feature completely attenuated from the legal authority protecting that feature. *See Basin Mine Watch*, 456 F.3d at 967. Nor does a plaintiff exhaust an issue when it later employs an entirely different and altogether new argument before the district court. *See Buckingham v. Sec'y of the USDA*, 603 F.3d at 1080-81.

Further, courts apply the issue exhaustion requirement similarly whether or not plaintiffs were represented by counsel in their administrative appeals. The Ninth Circuit interprets the issue exhaustion requirements leniently to avoid "unduly burden[ing] those who pursue administrative appeals unrepresented by counsel, who may frame their claims in non-legal terms." *Navajo Nation v. United States Forest Service,* 479 F.3d 1024, 1048 (9th Cir. 2007) (quoting *Native Ecosystems Council*, 304 F.3d at 900), *modified on other grounds*, 535 F.3d 1058 (9th Cir. 2008) (en banc). This phrasing suggests that the Ninth Circuit embraces a single standard applied to all litigants calculated to protect, in particular, those lacking counsel. Additionally, I find no instances where the Court explicitly applied a more stringent issue exhaustion standard because a litigant was represented. In fact, ONDA notes that the Court in *Nat'l Parks & Conservation Ass'n* also applied the lenient exhaustion standard, even though plaintiffs were represented by counsel. All of these factors confirm that the lenient issue

exhaustion requirement applies equally to ONDA in this case, despite that ONDA was represented in its appeal before the agency.

With these principles as guidance, I address the seven specific issues pursued by ONDA which BLM argues were never exhausted.  I base my analysis only on briefing and materials submitted by ONDA to the IBLA, disregarding comment letters and other documents predating ONDA's appeal to the IBLA unless they are explicitly referenced within ONDA's IBLA submissions.  *Cf. Am. Independence Mines & Minerals Co. v. U.S. Dep't of Agric.*, No. CV-09-433-S-EJL, 2010 U.S. Dist. LEXIS 46540, at *29 (D. Idaho May 12, 2010) ("[a]lthough the Ninth Circuit has not explicitly decided whether a party's comment letter is part of an administrative appeal, Ninth Circuit cases assume that exhaustion requirements begin with a party's administrative appeal").

**Issues One and Two**: **Steens Act  Prohibition on Off-Road Vehicle Use / Steens Act Prohibition on New Motorized Roads or Trails**

In its proposed amended complaint, ONDA alleges that BLM violated the Steens Act prohibitions on off-road vehicle use and construction of new motorized roads or trails by authorizing motorized travel on "routes that have fallen into obscurity on the landscape."[6] (Prop. Amend. Compl., #85, Ex.1 at ¶80.)  Specifically, ONDA's amended complaint describes how its 2007 route inventory report, which it submitted to BLM as part of its written public comments, "documented more than 100 separate routes which ONDA surveyed and found to be overgrown, rocky, rutted, impassable, and sometimes virtually nonexistent on the ground.  Many of the

---

[6] ONDA frames the two Steens Act prohibitions as distinct legal issues and I follow suit only to remain consistent, although I address them both simultaneously under a single heading.

routes . . . essentially have been naturally reclaimed over time by nonuse." *Id.* at ¶61.  The

major dispute here is not whether ONDA raised these twin issue with sufficient specificity to

allow the IBLA address them, but rather whether ONDA framed the issues too narrowly by

focusing on the authorization of motorized travel over so-called "Obscure Routes."

   BLM contends that ONDA did not exhaust these issues before the IBLA because

ONDA only identified BLM's designation of 35 miles of Obscure Routes as violative of the

Steen's Act prohibitions on off-road vehicle use and construction of new roads.  BLM asserts

that because ONDA limited its argument so specifically to these 35 miles of designated Obscure

Routes, ONDA failed to place the IBLA on notice that it actually objected to the designation of a

much wider, although somewhat poorly defined class of routes that are not Obscure Routes but

are nonetheless virtually non-existent on the ground.  BLM views ONDA's present effort as a

tactic to "transform the favorable ruling it obtained from IBLA on Obscure Routes into the basis

of brand-new Steens Act issues challenging other routes designated in the TMP decision."  (D.'s

Resp., #88, at 10.)

   By contrast, ONDA asserts that it exhausted these issues because it "raised concerns

over BLM's decision to designate routes that, in ONDA's view based on its extensive survey

work, do not exist."  (Pl.'s Supp. Br., #86, at 6).   Several sections of its Statement of Reasons

(SOR) filed with the IBLA discuss evidence of overgrown, impassable, obsolete or "virtually

nonexistent" routes that BLM should have closed to motorized vehicles.  AR 254, 265, 267.

Additionally, ONDA's SOR also refers to a declaration by Dr. Craig Miller documenting routes

that ONDA proposed closing because of their overgrown condition.  AR 308.  Further, ONDA's

Notice of Factual Correction drew attention to its route inventory documenting extensive

evidence of "on-the-ground conditions warranting closure or non-motorized use of hundreds of miles of routes at issue." AR 215. Finally, ONDA's executive director presented a declaration to the IBLA expressing concerns about various routes considered by BLM to be overgrown and impassable. AR 298.

Despite ONDA's primary focus on 35 miles of Obscure Routes before the IBLA, I find that ONDA's inclusion of its broader concerns about the designation of non-existent routes for vehicle travel suffices to exhaust these Steens Act issues. As in *Native Ecosystems Council*, ONDA objected generally to an agency decision (the designation of many overgrown routes for motorized travel) and the process by which the agency arrived at that decision (ignoring ONDA's detailed route inventory showing those routes were non-existent). Moreover, unlike in *Buckingham v. Sec'y of the USDA*, the administrative record contains several references to ONDA's concerns about the designation of routes for motorized access that are virtually non-existent on the ground. Thus, if ONDA had included nothing more in their appeal, ONDA's repeated calls to close routes because they were obscure would have satisfied the issue exhaustion requirement under the broad standard described by the Ninth Circuit. Therefore, ONDA should not be punished for crisply articulating its Steens Act issues specifically regarding the 35 miles of Obscure Routes elsewhere in its briefing to the IBLA. To hold otherwise would permit the agency to ignore a plaintiff's less formal allegations and hone in only on those issues more neatly expressed. The explicit leniency of the Ninth Circuit's issue exhaustion requirement and the Circuit's hesitance to require "precise legal formulations," *Native Ecosystems Council*, 304 F.3d at 900, counsels against such a result.

### Issue Three: FLPMA Non-Impairment Requirement

In its proposed amended complaint, ONDA alleges that BLM violated the FLMPA's non-impairment requirement, 43 U.S.C. § 1782(c), by opening to motorized travel certain routes within Wilderness Study Areas (WSAs) that have fallen into obscurity.  (Prop. Amend. Compl., #85, Ex. 1 at ¶89.)  As with ONDA's Steens Act issues, BLM argues that ONDA failed to exhaust the FLPMA non-impairment issue because it only complained about the designation of public-access "Obscure Routes" within the WSAs before the IBLA.  Thus, BLM argues, ONDA failed to appeal BLM's designations of any other routes within the WSAs, including permittee-only routes.

Again, I take a broader view of ONDA's appeal to the IBLA.  In the first substantive paragraph of its "Statement of Reasons," ONDA complains that BLM's TMP decision " violates . . . FLPMA . . . because it designates new routes in existing Wilderness Study Areas . . . ."  AR 248.  In the next paragraph, ONDA explains that its efforts to preserve the wilderness of Steens Mountain will be hampered by "500 plus miles of officially sanctioned, motorized vehicle routes carving up existing and proposed Wilderness Study Areas . . . ."  *Id.*  Although these statements lack citations to underlying statutory or regulatory provisions and amount to only a "general objection" to agency action, such imprecise formulations can satisfy the issue exhaustion requirement. *See Idaho Sporting Cong.*, 305 F.3d at 965-66; *Native Ecosystems Council*, 304 F.3d at 899.  Moreover, these statements properly raise the FLPMA non-impairment issue in its most expansive form, referencing "new roads" and "500 plus miles" of motorized routes within WSAs.  Admittedly, ONDA focuses more narrowly on the improper designation of Obscure Routes within WSAs later in its IBLA briefing.  AR 255, 258.  But, that later focus does not detract from ONDA's overarching FLPMA argument.  Thus, because ONDA's appeal, "*taken as*

*a whole*, provided sufficient notice" to the IBLA of ONDA's objection to the TMP's designation

of new routes within the WSAs, ONDA exhausted the FLPMA non-impairment issue. *Native*

*Ecosystems Council*, 304 F.3d at 899 (emphasis added).

**Issue Four: Wilderness Act Non-Impairment Requirement**

ONDA also alleges that BLM's TMP decision violated the Wilderness Act

requirement, 16 U.S.C. § 1131(a), to manage Congressionally-designated wilderness areas "in

such manner as will leave them unimpaired for future use and enjoyment as wilderness, and so as

to provide for the protection of these areas [and] the preservation of their wilderness character...."

(Prop. Amend. Compl., #85, Ex. 1 at ¶93.) Specifically, ONDA alleges that the TMP violated

the Wilderness Act by authorizing motorized use of routes within the Steens Mountain

Wilderness Area that are obscure or virtually nonexistent, thereby causing the reestablishment of

those routes as well as potentially causing new routes to be created where users either cannot or

do not follow those unclear routes. *Id.* at ¶97. BLM argues that since ONDA failed to allege any

violation of the Wilderness Act before the IBLA, either in precise or general terms, ONDA did

not exhaust the Wilderness Act issue. Even though ONDA never specifically mentioned the

Wilderness Act in its appeal to the IBLA, it exhausted the Wilderness Act non-impairment issue

by raising other identical arguments.

Case law suggests that failure to refer even generally to a statute at the administrative

level does not preclude issue exhaustion. In *Sierra Forest Legacy v. U.S. Forest Serv.*, 652 F.

Supp. 2d 1065, (N.D. Cal. 2009), the district court held that even though plaintiff did not

mention the Endangered Species Act (ESA) in its administrative appeals, it sufficiently

exhausted the issue of whether the agency complied with the ESA when it raised identical NEPA

Page 21 - OPINION AND ORDER

claims on appeal. *Id.* at 1081. The court reasoned that because plaintiff's NEPA and ESA claim at the district court both involved the identical issue – whether the agency's forest amendment plan would indeed have "no effect" on listed species – plaintiff's consistent objections under NEPA to the agency's "no effect" finding were sufficient for exhaustion of the ESA issue "even though their objection was not tailored to the ESA at the administrative appeals stage." *Id.* at 1081.

Similarly, here, ONDA consistently raised the exact issue underlying its current Wilderness Act claim– the detrimental impact on the wilderness character of the Steens Mountain Wilderness Area caused by the TMP's authorization of motor vehicle travel on naturally reclaimed routes – before the IBLA, even though it never actually invoked the Wilderness Act before the agency. For instance, ONDA began its appeal to the IBLA by observing that the BLM's decision to sanction over 500 miles of motorized vehicle routes on Steens Mountain, many of which are no more than two track "ways" through sagebrush, would cripple ONDA's efforts to "secure any of the 500,000 acres of recommended future wilderness on Steens Mountain . . . ." AR 248. Moreover, ONDA's appeal explicitly defined the characteristics of "wilderness" and repeatedly argued for reversal of the TMP in order to preserve various of those characteristics. *See* AR 260 n. 15 (citing shared Wilderness Act and FLPMA definition of "wilderness" including characteristics such as size, naturalness, outstanding opportunities for solitude or primitive and unconfined recreation, and supplemental values such as ecological, geological, scientific, educational, scenic, or historical values); AR 260 (arguing that allowing routes to continue to be reclaimed by nature will improve the naturalness of Wilderness Study Areas and increase opportunities for solitude or primitive recreation); AR 256

("the presence of roads adds to habitat fragmentation and other ecological damage to the values and resources that this area is statutorily designed to protect"); AR 261 (certain cherry-stem routes are obsolete and cause "ongoing resource damage"); AR 263-65 (describing how the invasion and spread of noxious weeds along open roads is the single greatest threat to the ecological integrity of Steens Mountain); AR 265 (contending that BLM's decision to leave open 555 miles of vulnerable high desert routes runs counter to protecting the long-term ecological integrity of Steens Mountain). By notifying the IBLA of the various ways in which opening naturally reclaimed routes to vehicle traffic would compromise the wilderness of Steens Mountain, ONDA exhausted the Wilderness Act non-impairment requirement.

**Issue Five**: **NEPA Disclosure and Discussion of Opposing Views and Accurate Environmental Baseline Requirement**

ONDA also argues that it properly exhausted another NEPA issue raised in its summary judgment briefing, which I discuss as two related but analytically separate issues: (1) BLM's failure to disclose and address opposing views in its NEPA analysis; and (2) BLM's consequent failure to ensure that it studied an accurate environmental baseline.[7] (Supp. Br., #86, at 13.) Assuming without deciding that ONDA properly plead these two NEPA violations, I find that ONDA exhausted those issues before the IBLA.

First, ONDA made several references to BLM's failure to disclose and address

---

[7] BLM contends that ONDA never plead the "failure to disclose" issue either in its original or proposed amended complaint and that, in any case, the disclosure requirement applies only to an EIS, not the EA that was conducted here. (D.'s Resp., #88, at 14.) I decline to address in this opinion the sufficiency of ONDA's pleading or the merits of ONDA's claim concerning the "failure to disclose issue." Instead, I will take up those concerns when addressing the parties' summary judgment motions.

opposing views to its NEPA analysis. In a section of its Statement of Reasons before the IBLA entitled "NEPA Violations," ONDA wrote that "BLM also ignored [ONDA's] exhaustive route inventory data, provided to BLM during both the CMPA RMP process as well as the TMP process." AR 254 (citing several declarations describing and explaining the route inventory). Moreover, ONDA explicitly faulted BLM's failure to consider its proposed route closures, which were based on geo-referenced photographic evidence and GIS mapping showing overgrown or nonexistent routes. *Id.* Additionally, in summarizing its NEPA claims, ONDA complained of BLM's "failure to evaluate" ONDA's inventory and route closure recommendations. *Id.* All of these references placed the IBLA on notice of ONDA's contention that BLM neglected to disclose and respond to opposing views.

Similarly, ONDA repeatedly raised its concerns about the inaccuracy of BLM's environmental baseline before the IBLA. Initially, ONDA pointed to BLM's admission that its EA was based on an incomplete inventory of non-motorized trails. AR 254. Next, ONDA cited several cases for the proposition that NEPA fundamentally requires the baseline of an environmental analysis to be accurate and complete. *Id.* Following that authority, ONDA faulted BLM for "failing to collects its own accurate and complete inventory of nonmotorized trails and routes" before issuing its TMP decision. *Id.* Thus, ONDA argued that the manner in which BLM prepared its TMP violated NEPA and other statutes in part because it relied on "incomplete inventory information . . . ." *Id.* This coherent presentation of law and facts undoubtedly notified the IBLA of ONDA's concern that BLM utilized an inaccurate environmental baseline.

### Issue Six: NEPA Prohibition on Segmentation

ONDA also alleges that BLM "improperly segment[ed] its environmental analysis by

preparing or proposing to prepare three separate NEPA documents involving the TP and TMP for

motorized travel and a subsequent CRP for non-motorized travel." (Prop. Amend. Compl., #85,

Ex. 1 at ¶105b.) BLM argues that, although ONDA referenced BLM's failure to plan

simultaneously for all aspects of transportation and recreation, those comments only supported

ONDA's argument concerning the NEPA alternatives requirement, and thus did not constitute a

distinct "issue" presented to the IBLA. I disagree with BLM's overly formalistic interpretation of

the issue exhaustion requirement.

     The Ninth Circuit previously addressed the particular question of whether a plaintiff

exhausts the NEPA segmentation issue in *Great Basin*. In that case involving two mining

projects, plaintiffs commented on the agency's final EIS that, in regard to tailings generated by

the two projects, "it is essential to consider the South Operations Area and the Leeville as linked

projects." *Great Basin Mine Watch*, 456 F.3d at 968. Although the district court ruled that

plaintiffs had not exhausted the issue because they made no reference to other environmental

waste products besides tailings or to other adjacent mines, the Ninth Circuit found that plaintiffs

satisfied the exhaustion requirement. Plaintiffs "'clearly expressed concern' that the projects

were linked," and the agency also demonstrated its actual notice of plaintiffs' concern by taking

up the question of whether the two mining projects were sufficiently connected to lack an

independent purpose. *Id.* (quoting *Rittenhouse*, 305 F.3d at 966).

     Here, as in *Great Basin*, ONDA clearly expressed its concern that BLM failed to

conduct a single environmental planning process for integrally related transportation issues. For

example, in the midst of discussing Steens Act and FLPMA violations, ONDA complained that

"BLM limits is decision to *motorized transportation*, refusing to address *non-motorized* travel

Page 25 - OPINION AND ORDER

and recreation opportunities." AR 249 (emphasis in original). By doing so, BLM "deferr[ed]

non-motorized issues to yet another subsequent planning process . . . ." AR 251. Then, in

describing BLM's NEPA violations, ONDA asserted that BLM prepared the TMP "in piecemeal

fashion separate from the transportation plan, comprehensive recreation plan and other

transportation-related portions of the CMPA RMP . . . ." AR 254; *see also* AR 86 (ONDA's

Motion to Expand Stay describing its continual complaints about the "the piecemeal approach"

of BLM's transportation planning efforts). Moreover, although the IBLA never explicitly

addressed the segmentation issue as the agency did in *Great Basin*, such agency acknowledgment

of the issue is not required to demonstrate exhaustion. *See, e.g., Nat'l Parks & Conservation

Ass'n*, 606 F.3d at 1066. Finally, ONDA's discussion of segmentation before the IBLA was not

restricted to advancing a NEPA alternatives argument; the examples discussed above reflect

ONDA's recurring concern with BLM's fragmented transportation planning. Especially in this

area, where BLM bears the responsibility to ensure NEPA compliance, ONDA's submissions to

the IBLA apprised the agency of its NEPA segmentation concerns even though ONDA did not

use that precise legal terminology.

### Issue Seven: NEPA EIS Requirement

Finally, ONDA alleges that BLM violated NEPA by "failing to prepare an EIS by

improperly determining that the permanent establishment of more than 500 miles of motorized

routes on Steens Mountain will have no significant effect on the human environment." (Prop.

Amend. Compl., #85, Ex. 1 at ¶105d).[8]  BLM, however, contends that although ONDA

---

[8] In briefing, ONDA articulates more clearly its legal theory on this issue, as follows. NEPA regulations require BLM to determine in its EA whether to either prepare an EIS or, alternatively, a finding of no significant impact. *See* 40 C.F.R. § 1508.9(a)(1). BLM improperly

challenged its finding of no significant impact (FONSI) concerning noxious weeds, it did so only in the context of Steens Act and FLPMA violations. Thus, BLM argues that since ONDA made no claim before the IBLA that the FONSI violated NEPA in particular, ONDA failed to exhaust the EIS requirement issue. Again, because of the Ninth Circuit's view that a plaintiff need not employ precise legal language to exhaust an issue before an agency and because of the agency's responsibility to ensure NEPA compliance, I find that ONDA properly exhausted this issue.

Several times throughout its briefing to the IBLA, ONDA described deficiencies in BLM's EA/FONSI and argued that BLM's TMP would, in fact, have significant environmental impacts. First, ONDA explicitly objected to BLM's conclusion in its EA that leaving 555 miles of roads open to motorized vehicles would not have any different environmental impact on weed management than other alternative transportation plans. AR 264. ONDA noted "significant flaws" in the EA concerning noxious weeds and argued that roadside weed infestations would spread into "neighboring lands, including otherwise natural ecosystems." *Id.* Thus, ONDA warned that noxious weed invasion was the "most significant threat to the 'long-term ecological integrity'" of Steens Mountain and criticized BLM's EA for ignoring that threat. AR 265.

Second, ONDA highlighted its disagreement with the EA's conclusion that "road density" and "habitat fragmentation" would not adversely affect habitat or wildlife in the CMPA. AR 256. ONDA argued that the EA used faulty assumptions and unscientific methods in determining the impacts of habitat fragmentation and road densities. *Id.* Further, in a lengthy footnote, ONDA cited several studies demonstrating the "[t]he negative impacts of wildlands

---

evaluated the environmental consequences of its TMP decision and therefore improperly concluded that its TMP would have no significant environmental impact. Thus, BLM improperly failed to prepare an EIS, as would have been required if its EA had been more accurate.

roads on wildlife and wildlife habitat . . . ." *Id.* at n. 10.

Third, in its motion for expansion of stay, ONDA specifically raised NEPA concerns with the EA's failure to consider the impact of the TMP route designations on the wilderness characteristic of "roadlessness" within the CMPA.  AR 86-88.  In doing so, ONDA noted that the Ninth Circuit recognized the environmental value of roadlessness and the corresponding negative environmental impacts of opening roads to motorized vehicles, such as churning up mud, transporting seeds, and detracting from the experience of outdoor recreation, and concluded that "these are the very types of adverse impacts we can expect in this case . . . ."  AR 88.  Although I agree with BLM that ONDA's reference to NEPA's overarching "hard look" requirement does not automatically exhaust the more narrow NEPA EIS requirement issue, ONDA nevertheless exhausted that issue by highlighting the EA's failure to recognize the significant environmental impacts caused by noxious weed invasion, habitat fragmentation, increased road density, and the loss of roadlessness.

In sum, ONDA properly exhausted all seven issues discussed above.  Thus, ONDA's proposed amended complaint is not futile because the issue exhaustion requirement does not bar relief on those issues.  Moreover, ONDA's proposed amended complaint will not delay this litigation and will not unduly prejudice BLM.

//

//

//

//

//

Page 28 - OPINION AND ORDER

**CONCLUSION**

For the reasons stated above, ONDA's motion for leave to file an amended complaint

(#84) is granted.  ONDA must file its amended complaint as proposed within seven days.

Dated this 14th day of January, 2011.

_____

Honorable Paul Papak
United States Magistrate Judge

Page 29 - OPINION AND ORDER