**Peter M. Lacy ("Mac") (OSB # 01322)**
Oregon Natural Desert Association
917 SW Oak Street, Suite 408
Portland, OR 97205
(503) 525-0193
lacy@onda.org

**David H. Becker (OSB # 081507)**
Law Office of David H. Becker, LLC
917 SW Oak Street, Suite 409
Portland, OR 97205
(503) 525-0193
davebeckerlaw@gmail.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| **OREGON NATURAL DESERT ASS'N,** | |
| | Case No. CV-09-369-PK |
| Plaintiff, | |
| v. | **CONSOLIDATED MEMORANDUM IN SUPPORT OF PLAINTIFF'S** |
| **KENNY MCDANIEL**, Burns District Manager, BLM, *et al*., | **MOTIONS FOR RECONSIDERATION AND PERMANENT INJUNCTION** |
| Defendants. | |

# TABLE OF CONTENTS

**INTRODUCTION** ............................................................................................................... - 1 -

**STANDARD OF REVIEW** .................................................................................................. - 2 -

**I.    RECONSIDERATION** ................................................................................................. - 2 -

**II.   PERMANENT INJUNCTION** ..................................................................................... - 2 -

**ARGUMENT** ......................................................................................................................... - 3 -

**I.    THE COURT SHOULD CLARIFY THE SCOPE OF ITS VACATUR RULING.** ................................................................................................................... - 3 -

**II.   THE COURT SHOULD ISSUE A PERMANENT INJUNCTION.** ........................... - 8 -

    A.   The Court Should Order Interior to Prepare a Lawful NEPA Analysis. ............. - 8 -

    B.   The Court Should Enjoin Route "Maintenance" and Use of Obscure and
        Previously Closed Routes. .................................................................................... - 9 -

        1.   Irreparable Harm. ........................................................................................ - 10 -

        2.   Adequacy of Other Remedies. ..................................................................... - 15 -

        3.   Balance of Hardships. .................................................................................. - 16 -

        4.   Public Interest. ............................................................................................. - 17 -

        5.   Scope. ........................................................................................................... - 18 -

**CONCLUSION** ................................................................................................................... - 18 -

## INTRODUCTION

In its April 28, 2011 decision, this Court held that the Department of the Interior's final decision, through its Board of Land Appeals ("IBLA"), approving the Steens Mountain Travel Management Plan ("TMP") was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the Steens Act, FLPMA, the Wilderness Act, and NEPA. To remedy these violations of law, the Court vacated that decision except for the part that prohibited motorized access on Obscure Routes, and remanded to the IBLA for further proceedings consistent with the Court's opinion.

With respect, ONDA urges the Court to reconsider the issue of remedy by clarifying that, when the Court set aside and vacated the Secretary of the Interior's final and only decision approving the Steens Mountain TMP, the findings and conclusions subsumed within the Secretary of the Interior's final decision—the Decision Record ("DR"), Finding of No Significant Impact ("FONSI"), TMP, and Environmental Assessment ("EA")—also accordingly are vacated. These elements of the Secretary's decision (prepared in the first instance by the Bureau of Land Management ("BLM") and affirmed by IBLA) have no independent legal validity once Interior's final decision is vacated.

Second, based on this Court's decision granting summary judgment to ONDA on seven of nine counts under the Steens Act, FLPMA, the Wilderness Act, and NEPA, ONDA now formally moves the Court to enjoin Interior from undertaking any "maintenance" activities that will mechanically improve or maintain routes within the CMPA, and from allowing any motorized use on Obscure Routes and TMP-closed routes. Unless the Court issues this clarification and permanent injunction, Interior will continue to allow motorized travel and route "maintenance" throughout the 519-mile network authorized in the DR/FONSI/TMP/EA, making

it likely that, in the absence of an injunction, irreparable harm to wildlife habitat and wilderness and roadless areas will ensue.

## STANDARD OF REVIEW

### I. RECONSIDERATION

A motion for reconsideration under FRCP 60 must be filed within a reasonable time, but no later than one year after entry of judgment for motions brought under subsections (b)(1) through (3). Fed. R. Civ. P. 60; *see Fidelity Fed. Bank, F.S.B. v. Durga Ma Corp.*, 387 F.3d 1021, 1023 (9th Cir. 2004) (discussing FRCP 60(b)). Three major grounds justify reconsideration: "if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (citation omitted).

### II. PERMANENT INJUNCTION

This Court has broad discretion to craft an equitable remedy. *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1022 (9th Cir. 2009). To obtain permanent injunctive relief after succeeding on the merits, ONDA must meet a four-factor test, demonstrating that: (1) it has suffered, or will suffer, an irreparable injury; (2) the remedies available at law are inadequate to compensate for that injury; (3) the balance of the hardships between the parties warrants a remedy in equity; and (4) the public interest would not be disserved by a permanent injunction. *Cal. v. U.S. Dep't of Agric.*, 575 F.3d 999, 1019 (9th Cir. 2009). Injunctive relief must also be narrowly tailored to the specific injury. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009).

///    ///    ///

///    ///    ///

**ARGUMENT**

**I.     THE COURT SHOULD CLARIFY THE SCOPE OF ITS VACATUR RULING.**

This Court held that the IBLA's decision approving BLM's Decision Record for the Steens TMP was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" with respect to seven issues under the Steens Act, FLPMA, the Wilderness Act, and NEPA. Apr. 28, 2011 Opinion & Order at 53. The Court vacated the IBLA decision "except for the portion that reversed BLM's TMP Decision Record permitting motorized access on Obscure Routes, which remains in force." *Id*. The Court states it did *not* vacate the DR, FONSI, TMP, or EA, explaining, "Since I did not review BLM's Decision Record as the final agency action, I did not determine whether it was arbitrary, capricious, an abuse of discretion or contrary to law and thus I cannot set it aside." *Id*. at 48.

This ruling constitutes a clear error of law. By vacating what was the Secretary of the Interior's final decision adopting the Steens Mountain TMP, the approved DR, FONSI, TMP, and EA also are vacated. This is because the IBLA decision represents the final decision of the Secretary of the Interior approving the Steens TMP and therefore subsumes the BLM findings and decision. As this Court put it, the Secretary's final decision, issued through the IBLA, "affirmed BLM's TMP decision." Opinion & Order at 13.[1] If the Secretary's final decision approving the TMP has been vacated, then it follows that the DR/FONSI/TMP/EA—*i.e.*, the documents that collectively constitute the plan actually affirmed by the Secretary's final decision—also is vacated. The Court should clarify that its holding declaring unlawful and setting aside the Secretary's final decision encompasses the DR, FONSI, TMP, and EA prepared

---

[1] ONDA restates this Court's statements in its April 28, 2011 Opinion & Order and related preliminary orders for purposes of this motion for reconsideration but reserves its rights to appeal from any findings and holdings of this Court in this case.

by BLM, consistent with the plain language of the Department of the Interior's regulations and prevailing law in the Ninth Circuit.

Under Interior's regulations, the IBLA "is an authorized representative of the Secretary for the purpose of hearing, considering and determining, as fully and finally as might the Secretary, matters within the jurisdiction of the Department involving hearings, and appeals and other review functions of the Secretary." 43 C.F.R. § 4.1 (referring to the IBLA and the other Boards within Interior's Office of Hearings and Appeals); *see also* Def. Reply Memo. on Summ. J. (Dkt # 77), at 1 (arguing and quoting same). In other words, like BLM, *see* 43 U.S.C. § 1731, the IBLA executes the authority of the Secretary of the Interior.

Earlier in this case, this Court held that "the IBLA merits decision is the sole final agency action that ONDA may challenge in this court." Nov. 23, 2010 Amended Opinion & Order (Dkt # 82), at 9. The Court explained that the IBLA decision "supersedes" the BLM decision and "rendered the underlying BLM decision non-final for purposes of APA review." *Id.* at 6, 9; *see also* Def. Reply Memo. on Summ. J., at 1 (stating the government's position that "IBLA reviews the BLM decision and renders an opinion for the agency"). Thus, there is only a "single" decision issued by the Department of the Interior that approves the Steens TMP: the IBLA's February 2009 final decision. Nov. 23, 2010 Amended Opinion & Order at 10.

Where the BLM's decision was non-final and the IBLA's decision affirmed BLM's decision, the Ninth Circuit makes clear that a court reviewing an IBLA decision as the Secretary of the Interior's final agency action looks to the IBLA decision and the underlying BLM decision and environmental analysis as a composite whole. *See Nat'l Parks & Conservation Ass'n v. BLM*, 606 F.3d 1058, 1069–74 (9th Cir. 2010) (describing in detail the provisions of, and adequacy or inadequacy of, BLM's environmental impact statement ("EIS"), despite reviewing

the IBLA decision as Interior's single, final agency action).

In the IBLA decision which led to the *National Parks* decision, IBLA addressed the BLM decision and environmental analysis exactly as it did in this case: by reviewing the record before the Board, which contained the BLM environmental analysis and decision document, and by determining whether the reasoning in the BLM's decision and supporting environmental analysis met appropriate legal standards. *See, e.g.*, *Donna & Larry Charpeid*, 150 IBLA 314, 314–16, 320–29, 332–34, 338–39 (Sept. 30, 1999)[2] (discussing adequacy of EIS); *compare* AR 50–65 (discussing adequacy of EA). Accordingly, the Ninth Circuit used a shorthand reference to the IBLA decision "incorporating" the draft and final EIS in *National Parks*. *Nat'l Parks & Conservation Ass'n*, 606 F.3d at 1063; *see also id*. at 1065 ("The Appeals Board decision, which incorporated the Environmental Impact Statement, is the final agency action before us for review."). Nowhere in that IBLA decision does the Board explicitly "incorporate" the environmental analysis: only one variant of that word ("incorporated") appears, twice, in block-quoted sections from the record before the Board. *Charpeid*, 150 IBLA at 323, 328. In the same sense the Ninth Circuit described in *National Parks*, IBLA in this case has "incorporated" BLM's EA, FONSI, DR, and TMP in its decision, and affirmed the underlying BLM decision and supporting documents.

The IBLA decision therefore is the only decision of the Secretary of the Interior from which "rights or obligations have been determined" or from which "legal consequences will flow." *See* Nov. 23, 2010 Amended Opinion & Order at 3 (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)). And the fundamental "legal consequence" of the Secretary's final decision was that 519 miles of routes were established for motorized use on Steens Mountain. *See* AR 793

---

[2] Attached hereto as Exhibit 1.

(DR establishing 555 miles of designated open routes), AR 53–57, 60–63 (IBLA final decision closing the 36 miles of Obscure Routes, but affirming the remaining designation). The other "legal consequences" relevant to remedial issues are: (1) the final plan's authorization of "Level 2" maintenance for all so-called Base Routes, *see* AR 9929–30, 9965 (EA) & AR 796 (FONSI); AR 41 (IBLA affirming the plan in all respects other than as to Obscure Routes); and (2) the Secretary's Finding of No Significant Impact, which Interior issued to justify its decision to not prepare an EIS. AR 796.

Under the Administrative Procedure Act ("APA"), courts "shall" "hold unlawful and set aside agency action, findings, and conclusions" found to be arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A); *see also* Apr. 28, 2011 Opinion & Order at 15–17 (discussing this standard of review). By setting aside and vacating the final "agency action" of the Secretary of the Interior—the only decision that had the legal consequence of giving the Steens TMP legal effect—the approved plan itself also is set aside. Without a final decision of the Secretary authorizing the plan, there can be no plan, and BLM's underlying decisions have no independent validity. This is consistent with the APA's express language including "findings" and "conclusions" alongside "agency action." 5 U.S.C. § 706(2)(A). Here, the Secretary issued his decision approving the TMP based on the findings and conclusions as stated in the EA, FONSI, and DR. *See* AR 41–65 (citing and evaluating BLM's DR, FONSI, TMP, and EA, throughout the final decision). Accordingly, all such findings and conclusions must be "set aside." *Id*. This is consistent with BLM's request that the Court remand "to the agency" without specifying "whether it means BLM or the IBLA." Apr. 28, 2011 Opinion & Order at 48. This is because, technically, "the agency" which manages the public lands at issue is the Department of the Interior.

This is consistent, too, with the scope of judicial review, which consists not just of the four corners of the IBLA decision, but of the "whole record" lodged by Interior as the administrative record in this action. *See* 5 U.S.C. § 706 ("the court shall review the whole record or those parts of it cited by a party"); *Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993) ("The 'whole record' includes everything that was before the agency pertaining to the merits of its decision"); *see also* Apr. 28, 2011 Opinion and Order at 17 (citing these same authorities).[3]

Finally, vacatur of the DR/FONSI/EA/TMP is consistent with the Ninth Circuit's NEPA jurisprudence. The Ninth Circuit has explained that "[b]ecause [NEPA] is procedural in nature, we will set aside agency actions that are adopted without observance of procedure required by law." *Pit River Tribe v. U.S. Forest Serv.*, 469 F.3d 768, 781 (9th Cir. 2006); *see also Idaho Sporting Cong. v. Alexander*, 222 F.23 562, 567 (9th Cir. 2000) ("NEPA is a procedural statute, and we have held that agency action taken without observance of the procedure required by law will be set aside"); *Metcalf v. Daley*, 214 F.3d 1135, 1146 (9th Cir. 2000) ("The district court is directed to order the Federal Defendants to set aside the FONSI, suspend implementation of the [project], begin the NEPA process afresh, and prepare a new EA.").

For these reasons, the Court should clarify its remedial order to state that, by vacating Interior's final decision through IBLA approving the Steens Mountain TMP, the DR, FONSI, TMP, and EA also are set aside.

///    ///    ///

---

[3] *See also* Exhibit 1 to ONDA Suppl. Br. re: Issue Exhaustion (Dkt # 86) (the index of the administrative record BLM lodged with the IBLA during ONDA's administrative appeal, which confirms the documents that the Department of the Interior considered when it made its February 19, 2009 final decision approving the TMP).

## II.     THE COURT SHOULD ISSUE A PERMANENT INJUNCTION.

Based on this Court's ruling that the Department of the Interior violated the Steens Act, FLPMA, the Wilderness Act, and NEPA on seven of the nine counts ONDA alleged, the Court should now issue a permanent injunction, barring Interior from implementing any ground-disturbing activity pursuant to the TMP unless and until Interior has prepared a new, lawful NEPA analysis and decision. The Court explains in its April 28, 2011 decision that it "declined to act" on this request because "ONDA has not yet formally moved for any injunctive relief, and consequently, BLM has not been accorded an opportunity to respond." Apr. 28, 2011 Opinion & Order at 50–51. ONDA now formally moves the Court to issue the injunctive relief requested in the Motion for Permanent Injunction filed herewith. The relief now requested is substantially the same as the relief ONDA has requested previously through its Motion for Summary Judgment (Dkt # 52, at ¶¶ 1–4, 6), its First Amended Complaint (Dkt # 96, at ¶¶ A, B, C, E), and its Response to Defendants' Supplemental Brief (Dkt # 101).

### A.  The Court Should Order Interior to Prepare a Lawful NEPA Analysis.

The Court held that the Secretary's decision approving the TMP based on a FONSI rather than an EIS was unlawful under NEPA. Apr. 28, 2011 Opinion & Order at 42. However, based on IBLA's failure to address the FONSI at all in its final decision for the Department of the Interior, this Court did not make a finding that the Steens TMP may have a significant impact. *See Ctr. for Biol. Diversity v. Nat'l Hwy. Traffic Safety Admin.*, 538 F.3d 1172, 1179 (9th Cir. 2008) ("If the court finds that a project may have a significant impact, the court should order the agency to prepare an EIS"). Based on the Court's holding, ONDA amends its prior request (for an order that BLM prepare an EIS) to request instead that Interior be ordered to prepare "a lawful NEPA analysis." Based on Interior's myriad other violations of law, ONDA is confident that the

agency will have no choice on remand but to finally recognize that the Steens Mountain TMP *will* have significant impacts on the human environment, thus requiring an EIS. 42 U.S.C. § 4332(2)(C).

### B. The Court Should Enjoin Route "Maintenance" and Use of Obscure and Previously Closed Routes.

The Court should enjoin Interior from (1) undertaking any "maintenance" activities that will mechanically improve or maintain routes within the CMPA, and (2) allowing any motorized use on TMP-identified Obscure Routes (AR 803) and TMP-closed routes (AR 794). The injunction should remain in place unless and until Interior has completed a new and lawful NEPA analysis and final decision remedying the legal violations this Court identified in its April 28, 2011 decision.

When determining whether a permanent injunction is appropriate, the traditional balancing of harms applies in the environmental context in a NEPA case. *Monsanto Co. v. Geertson Seed Farms*, 130 S.Ct. 2743, 2756 (2010). Injunctive relief is typically appropriate in environmental cases because "'[e]nvironmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, *i.e.*, irreparable.'" *Northern Cheyenne Tribe v. Norton*, 503 F.3d 836, 843 (9th Cir. 2007) (quoting *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 545 (1987)). Strong NEPA claims in particular counsel in favor of granting an injunction. *See Sierra Club v. Bosworth*, 510 F.3d 1016, 1033 (9th Cir. 2007). In this regard, the Ninth Circuit has stated that, "absent 'unusual circumstances', an injunction is the appropriate remedy for a violation of NEPA's procedural requirements." *Thomas v Peterson*, 753 F.2d 754, 764 (9th Cir. 1985); *see Nat'l Parks & Conservation Ass'n v. Babbitt*, 241 F.3d 722, 737 n.18 (9th Cir. 2001) (NEPA violation justified injunctive relief).

### 1. Irreparable Harm.

An environmental injury is often permanent and irreparable. *Cal.*, 575 F.3d at 1020. "[I]n the NEPA context, irreparable injury flows from the failure to evaluate the environmental impact of a major federal action." *Sierra Club*, 510 F.3d at 1034. Here, an injunction is necessary to protect imperiled wildlife and roadless and ecologically sensitive areas on Steens Mountain, and to ensure that Interior complies with its legal obligations. Absent an injunction, Steens Mountain will be vulnerable to wildlife habitat fragmentation, weed infestation, and off-road vehicle trespass. Likewise, "maintenance" actions on arbitrarily designated routes would fundamentally change the mountain's primitive character, carving up roadless areas and foreclosing Congress's ability to preserve these areas as Wilderness. *See, e.g.*, Fenty Decl. (Dkt # 55) ¶¶ 14–15. These likely impacts threaten Steens Mountain's "long-term ecological integrity," which Interior must protect above all else within the CMPA, 16 U.S.C. §§ 460nnn-12(a), 460nnn(5), and wilderness characteristics that Interior must protect in a state of non-impairment. 16 U.S.C. § 1133(b); 43 U.S.C. § 1782(c).

Thus, the most important action this Court can take to preserve the environmental status quo while Interior prepares a lawful NEPA review is to bar the agency from (1) taking any route "maintenance" activities within the CMPA and (2) allowing any motorized use on Obscure and previously closed routes, until Interior has completed a lawful NEPA analysis and new decision. This will ensure that Interior considers the designation (or *non*-designation) and use (or *non*-use) of all purportedly existing routes *before* any of the routes are converted to permanent scars on this fragile, high desert landscape.

BLM's actions at the geographic heart of the CMPA in the "Burnt Car Road" incident provide a stark illustration of the "maintenance" threat. Between May and July 2009, just months

after ONDA filed this lawsuit, BLM undertook "Level 2" route "maintenance" on Burnt Car Road and three other routes. The agency converted 28 miles of mostly primitive routes to bladed, widened, three-lane roads—in some cases where prior existing routes had been naturally reclaimed (*i.e.*, become completely overgrown) through decades of nonuse. *See* Fenty Decl. ¶ 15 (describing the road work, which included ripping out ancient juniper trees by the roots and bulldozing native plants and sagebrush habitat); Burnt Car Road Report (Dkt # 101), at 7–20 (BLM's "Report of Fact-Finding" by a 5-person review team appointed by the BLM State Office director).[4]

BLM did not undertake NEPA analysis prior to the Burnt Car Road maintenance project. Instead, BLM relied upon the TMP's designation of these routes as "existing" roads, and the plan's authorization of "Level 2" maintenance for all such TMP-designated Base Routes. Burnt Car Road Report at 3, 4, 6, 8, 12; *see also* AR 9929–30, 9965 (EA) & AR 796 (FONSI). Though BLM now plans to rehabilitate portions of the damaged and newly-created routes, *see* Burnt Car Road Report, even aggressive reclamation measures will take *decades* or longer to restore these routes to their prior, primitive (or non-existent) condition. *See, e.g.*, *Or. Natural Desert Ass'n v. Suther*, No. 09-cv-862-PK (D. Or. filed July 28, 2009), Second Amended Compl. (Dkt # 39) at ¶ 97 (showing pre- and post-construction condition of the routes); Fenty Decl. ¶ 15.

Importantly, an injunction is necessary because setting aside the Secretary's final decision (issued through the IBLA), and even the DR, FONSI, EA and TMP, will *not* suffice to bar Interior from conducting this type of route "maintenance." Interior's authority to maintain routes in the CMPA derives not just from the TMP, but also from the underlying land use plan

---

[4] The full "Burnt Car Road Rehabilitation Environmental Assessment" is available at http://www.blm.gov/or/districts/burns/plans/index.php (last visited June 2, 2011).

and the unlawful (but never vacated) Transportation Plan. *See* AR 10707–08, 10785, 10846–47 (providing that CMPA routes will be managed according to their assigned Maintenance Levels, which are the same levels that were carried over into the TMP); Burnt Car Road Report at 3, 4, 6, 8, 12 ("Roads are maintained consistent with maintenance level assignments made in the Steens Mountain CMPA RMP/ROD (August 2005) which included a TP (Appendix M), and Steens Mountain TMP, November 2007"). Thus, an injunction barring route maintenance until Interior completes a lawful NEPA analysis and issues a new decision is necessary to protect the environmental status quo.

An injunction barring route maintenance actions not only will preserve roadless and wilderness values, but also will protect against weed infestation and habitat fragmentation. The single biggest threat to "ecological integrity" on Steens Mountain is invasion by non-native plants, *i.e.* weeds. *See* ONDA MSJ Br. at 30–32. The direct link between roads and the establishment and spread of weeds is "recognized, virtually by scientific consensus, as one of the greatest threats to desert ecosystems of the Intermountain West, including southeastern Oregon." Gelbard Decl. (Dkt # 57) ¶¶ 5, 13 (and Table 1). Roads serve as "major conduits" for the spread of invasive species because they are the "entry points for virtually all human impacts to terrestrial ecosystems." *Id*. ¶¶ 11–12. The impacts of weeds on these ecosystems range from reductions in biodiversity and wildlife habitat, to changes in ecosystem processes such as fire frequency and hydrology, to increases in erosion and soil loss. *Id*. at ¶ 8–10.

The TMP EA explains that "[m]aintained roads receive considerably more disturbance than the average landscape, exponentially increasing sites susceptible to new weed introductions. In this arid part of the world, unimproved roads or trails typically remain visible and road-like for many years even without maintenance or much traffic." AR 10002. The "vast majority of

noxious weed sites" on Steens Mountain occur along roads or around livestock watering stations. *Id*. Roads "are typically the likely place for new introductions of weeds" and *maintained* roads "exponentially increase[] sites susceptible to new weed introductions." *Id*.; *see also* Burnt Car Road Report at 5 (acknowledging increased "[o]pportunities for new weed introductions" along Burnt Car Road and other routes "maintained" in 2009).

Roads also irreparably harm wildlife habitat, which is particularly destructive for the dwindling population of Greater sage-grouse that live on Steens Mountain. Just last year, the U.S. Fish and Wildlife Service ("FWS"), reversing its own decision from just five years before, determined that the sage-grouse is in danger of extinction and therefore "warranted" for listing under the Endangered Species Act, 16 U.S.C. § 1531 *et seq*. 12-Month Findings for Petitions to List the Greater Sage-Grouse (*Centrocerus urophasianus*) as Threatened or Endangered, 75 Fed. Reg. 13,910 (Mar. 23, 2010).[5] In its decision, which is based on significant new information in a 2009 monograph published by the U.S. Geological Survey,[6] the FWS explains that habitat fragmentation is the main cause of the decline of the sage-grouse. 75 Fed. Reg. at 13,923, 13,927–28. Preservation of unfragmented habitat on Steens Mountain is critical to the sage-grouse's survival because the area lies within one of just two remaining habitat "strongholds" left

---

[5] ONDA provided the FWS listing decision, in relevant part, as Exhibit B to its supplemental brief (Dkt # 101) in March 2011.

[6] *See* http://sagemap.wr.usgs.gov/monograph.aspx (last visited June 2, 2011). In this 1,481-page document, thirty-eight federal, state, university, and nongovernmental experts collaborated to produce significant and unprecedented new analyses on the imperiled status of the Greater sage-grouse and its habitat. The monograph includes new information detailing how issues such as road networks, weeds, and climate change are far more harmful to sage-grouse than previously known. *See, e.g.*, 75 Fed. Reg. at 13,987 ("our understanding of the status of the [sage-grouse] and the threats affecting it has changed substantially since our decision in 2005. In particular, numerous scientific papers and reports with new and highly relevant information have become available, particularly during the past year.").

in North America. *Id*. at 13,918, 13,958.

It is indisputable that roads seriously fragment and degrade sage-grouse habitat. *Id*. at 13,929–30. Impacts from roads include "direct habitat loss, direct mortality, barriers to migration corridors or seasonal habitats, facilitation of predators and spread of invasive vegetation species, and other indirect influences such as noise." *Id*. at 13,929; *see also id*. at 13,930 (citing additional "indirect effects" such as behavioral avoidance of road areas). "The expansion of road networks contributes to exotic plant invasions via introduced road fill, vehicle transport, and road maintenance activities." *Id*. at 13,930 (citing one of Dr. Gelbard's published articles on this topic); *see also* Gelbard Decl. ¶¶ 45, 51 (explaining that "a single [exotic] plant is capable of dispersing tens of thousands of seeds" and "all it will take is one rider who has traveled through a weed infestation to introduce thousands of seeds along the road"). And weeds "are not limited to roadsides, but also encroach into surrounding habitats." 75 Fed. Reg. at 13,930; *see also* Gelbard Decl. ¶¶ 57–65 (discussing the likelihood of "roadside invasions" under the TMP, including the fact that biological soil crusts that will be damaged through the TMP's 100-foot-from-centerline provision wide will take *centuries* to recover); 75 Fed. Reg. at 13,935–37 (describing how weeds fragment and destroy sagebrush habitat, and represent "one of the highest risk factors for sage-grouse based on the plants' ability to out-compete sagebrush, the inability to effectively control them once they become established, and the synergistic interaction between them and other risk factors on the landscape").

Based on Interior's statements and findings on the record before the Court, combined with other evidence in the record and the FWS's recent findings linking roads as one of the major factors influencing the decline of the Greater sage-grouse, an injunction temporarily barring route maintenance while Interior carefully considers, among other things, which routes

actually exist, which of those should be opened and maintained for motorized use, and which should instead be designated for non-motorized use, is necessary to protect the environment. Likewise, an injunction ordering continued closure of the Obscure Routes (and the 1.23 miles of road closed in the TMP decision) also will ensure against motorists attempting to "hunt on the ground for" these routes that are "difficult or impossible to identify on the ground"—a threat the Department of the Interior foresaw when it reversed BLM's decision to designate these routes. AR 55.

Only through enjoining RMP-, TP-, and TMP-authorized route "maintenance" actions can Interior prepare a comprehensive transportation plan free from the threat of permanently fragmenting and destroying roadless and wilderness character areas and significantly increasing the presence of noxious weeds on Steens Mountain. This threat is particularly acute for routes that arguably or actually do not exist. *See, e.g.*, Fenty Decl. ¶ 15; Miller Decl. (Dkt # 56) ¶¶ 3, 11–14, 23–24, 31, 32–39, 43–44, 47 & Attachments D and F. In its final decision approving the TMP, Interior recognized that "opening the Obscure Routes to motorized or mechanized use will violate BLM's general responsibility under the Steens Act to conserve, protect, and manage the long-term ecological integrity of Steens Mountain." AR 55. Thus, the record before the Court demonstrates that irreparable harm will result absent injunctive relief.

### 2. Adequacy of Other Remedies.

The Ninth Circuit has explained that an "[e]nvironmental injury, by its nature, can seldom be adequately remedied by money damages." *Cal.*, 575 F.3d at 1020. "In such a case, the balance of harms will usually favor injunctive relief to protect the environment." *Or. Natural Desert Ass'n v. Tidwell*, 2010 WL 5464269, at *4 (D. Or. Dec. 30, 2010) (citing *Cal.*, 575 F.3d at 1020). The harm to the environment in this case cannot be compensated by monetary damages.

Congress and the Department of the Interior have recognized Steens Mountain as a "unique" and "nationally significant" ecosystem and landscape. *See* ONDA MSJ Br. at 32–33. The CMPA is to be protected and managed for "long-term ecological integrity." 16 U.S.C. § 460nnn-12(a). Fragmentation of imperiled species, wildlife habitat, and roadlessness is a harm to the public that cannot be remedied with money. This factor tips in favor of issuing the injunctive relief requested.

### 3. Balance of Hardships.

The balance of harms also tips in ONDA's favor. If an injunction barring route maintenance and use of Obscure Routes and previously closed routes does not issue to preserve the status quo, irreparable harm to Steens Mountain will follow. Steens Mountain is a unique, ecologically critical, and nationally significant area. *See* ONDA MSJ Br. at 32–33. All but a handful of the 20,000 public comments BLM received on the TMP disputed the agency's proposal and baseline assumptions, and pleaded for significant road closures on Steens Mountain. *See id*. at 12, 14, 34. Given the single purpose Congress assigned to the Secretary's management of the CMPA, to "conserve, protect, and manage the long-term ecological integrity of Steens Mountain," 16 U.S.C. § 460nnn-12(a), combined with Interior's failure to conduct a proper environmental analysis before enshrining a 519-mile motorized road network on the mountain, the balance of the equities tips sharply in favor of an injunction that preserves the environmental status quo and the public interest in conserving Steens Mountain's largely primitive character.

By contrast, if this Court grants the injunction ONDA requests, the harm to Interior will be minimal. Interior will have to hold off on blading primitive routes, but this forbearance benefits the environment. Nothing ONDA requests would affect Interior's authority to travel

throughout the CMPA for administrative purposes or to respond to an emergency. 16 U.S.C. § 460nnn-22(b)(2)(A). Similarly, there is no economic harm to Interior from the requested injunction. If anything, the prohibition on maintenance will save Interior, and therefore taxpayers, money by placing a temporary hiatus on expensive road maintenance projects that may later have to be even more expensively rehabilitated. *See* Burnt Car Road Report. Moreover, the injunction ONDA requests would remain in effect only until Interior completes a lawful NEPA analysis and issues a new decision adopting a new transportation plan.

### 4. Public Interest.

Next, the Court must recognize "the well-established 'public interest in preserving nature and avoiding irreparable environmental injury.'" *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1138 (9th Cir. 2011) (quoting *Lands Council v. McNair*, 537 F.3d 981, 1005 (9th Cir. 2008) (en banc)). The Ninth Circuit recognizes "the public interest in careful consideration of environmental impacts before major federal projects go forward, and [has] held that suspending such projects until that consideration occurs 'comports with the public interest.'" *Id.* (quoting *S. Fork Band Council of W. Shoshone of Nev. v. U.S. Dep't of Interior*, 588 F.3d 718, 728 (9th Cir. 2009)). That public interest "is most often noted in the context of NEPA cases" such as this. *Id.*; *see also Sierra Club*, 510 F.3d at 1033 ("the public interest favor[s] issuance of an injunction because allowing a potentially environmentally damaging program to proceed without an adequate record of decision runs contrary to the mandate of NEPA"); *Or. Natural Desert Ass'n v. Singleton*, 75 F. Supp. 2d 1139, 1152 (D. Or. 1999) (describing public interest in compliance with NEPA). Accordingly, the public interest is furthered by an injunction barring road maintenance actions while keeping in place the Obscure Routes prohibition and 1.23 miles of TMP closures until Interior complies with its obligations under NEPA as well as the Steens Act,

FLPMA, and the Wilderness Act.

### 5. Scope.

The Court must craft a remedy that is narrowly tailored to the harm suffered. *See Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 381 (2008); *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782, 796 (9th Cir. 2005). Combined with an order vacating and setting aside Interior's final decision adopting the DR, FONSI, TMP, and EA, and requiring Interior to prepare a lawful NEPA analysis for its plan, an injunction barring route maintenance and maintaining the currently existing Obscure Routes ban and previous 1.23-mile closure, is narrowly tailored to the remaining, on-the-ground threats. Until Interior has properly evaluated Steens Mountain's motorized and non-motorized route network, and taken the requisite "hard look" at the environmental impacts of its transportation plan with respect to key issues such as wilderness characteristics, roadless areas, quiet recreation, sage-grouse habitat, weed infestation, and climate change, the requested relief cannot and should not be more narrowly tailored than proposed. The requested injunction is appropriate both in its substantive and temporal scope.

## CONCLUSION

For the foregoing reasons, ONDA respectfully requests that this Court reconsider its remedial order and grant permanent injunctive relief as described above based on Interior's violations of law.

DATED this 6th day of June 2011.          Respectfully Submitted,

s/ Peter M. Lacy

Peter M. Lacy ("Mac")
Oregon Natural Desert Association

Of Attorneys for Plaintiff