IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

OREGON NATURAL DESERT ASS'N,

        Plaintiff,

                                             CV 09-369-PK
                                             OPINION AND ORDER

KENNY MCDANIEL, Burn District
Manager, BLM, *et al.*,

        Defendants.

_____

PAPAK, Judge:

        Plaintiff Oregon Natural Desert Association (ONDA) brought this action arising from the travel management planning process for the Steens Mountain. ONDA alleged that either BLM's decision adopting its Travel Management Plan (TMP) or the Interior Board of Land Appeals' ("IBLA") decision approving BLM's adoption of the TMP violates the Steens Mountain Cooperative Management and Protection Act of 2000 ("Steens Act"), 16 U.S.C. § 460nnn *et seq.*,

Page 1 - OPINION AND ORDER

the Federal Land Policy and Management Act of 1976 ("FLPMA"), 43 U.S.C. §§ 1701–87, the

Wilderness Act of 1964, 16 U.S.C. §§ 1131–36, and the National Environmental Policy Act

("NEPA"), 42 U.S.C. §§ 4321–61. This court previously ruled that the IBLA's decision was the

single final agency action susceptible to judicial review. (#80.) Subsequently, on April 28, 2011,

this court granted in part and denied in part both plaintiff's and defendants' motions for summary

judgment. (#103.) Specifically, this court vacated most aspects of the IBLA's decision as

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C.

§ 706(2)(A), because that decision failed to address ONDA's central concern that BLM's route

inventory was flawed and additionally failed to address seven legal issues related to the route

inventory, rendering the decision inadequate to permit meaningful judicial review. (#103.) This

court, however, explicitly declined to find any violations of the substantive environmental

statutes alleged by plaintiffs. *Id.*

Now before the court is ONDA's motion for reconsideration (#104) seeking the court's

clarification that its order vacating the IBLA decision also vacates the Bureau of Land

Management's Decision Record (DR), Finding of No Significant Impact (FONSI), Travel

Management Plan (TMP) and Environmental Assessment (EA), each of which was affirmed by

the IBLA decision. Also before the court is ONDA's motion for permanent injunction (#105)

seeking an order requiring preparation of a new environmental analysis, prohibiting maintenance

on certain routes within the Steens Mountain Cooperative Management and Protection Area

(CMPA), and prohibiting motorized travel on Obscure Routes and other routes closed by the

Travel Management Plan (TMP). For the reasons set forth below, the court grants ONDA's

motion for reconsideration, but alters its previous decision by declining to vacate the IBLA's

decision. Regarding ONDA's motion for permanent injunction, the court acknowledges the need for a limited and temporary injunction of some route maintenance and requests a joint proposal describing a more narrowly tailored injunction prohibiting route maintenance only on routes alleged to be obscure or non-existent.

## LEGAL STANDARDS

**1.    Motion for Reconsideration**

A district court may reconsider its grant of summary judgment under either Federal Rule of Civil Procedure 59(e) or Rule 60(b). *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993). Under Rule 59(e), the district court may alter or amend a judgment if: (1) it is presented with newly discovered evidence; (2) it committed clear error or made an initial decision that was manifestly unjust; or (3) there is an intervening change in controlling law. *United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 780 (9th Cir. 2009) (citing *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001). Rule 60(b) allows a district court to provide relief from a final judgment if the moving party can show: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud, misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief. *Id.*; Fed . R. Civ. P. 60(b).

**2.    Motion for Permanent Injunction**

To obtain permanent injunctive relief, a plaintiff must show: (1) that it has suffered an

irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate

to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff

and defendant, a remedy in equity is warranted; and (4) that the public interest would not be

disserved by a permanent injunction. *California ex rel. Lockyer v. U.S. Dep't of Agric.*, 575 F.3d

999, 1019–20 (9th Cir. 2009). This traditional four-factor test applies when a plaintiff seeks a

permanent injunction to remedy a NEPA violation. *Monsanto Co. v. Geertson Seed Farms*, 130

S. Ct. 2743, 2756 (2010). The decision to grant or deny permanent injunctive relief is an act of

equitable discretion by the district court, reviewable on appeal for abuse of discretion. *eBay Inc.*

*v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

## DISCUSSION

**3.      Motion for Reconsideration**

ONDA contends that this court's April 2011 ruling to vacate the majority of the IBLA

decision without also vacating BLM's underlying DR, FONSI, TMP, and EA constitutes a "clear

error of law." In particular, ONDA argues that the IBLA's decision affirming BLM's DR,

FONSI, TMP, and EA actually incorporated those documents, fusing the two agency actions into

a single, inseparable unit. Therefore, ONDA argues, when this court vacated the IBLA's

decision, it also necessarily vacated all of the Department of Interior's findings and conclusions

contained within the DR, FONSI, TMP, and EA.

I agree with ONDA that the IBLA's decision, the single final action of the Department of

Interior, incorporated the underlying BLM decision and environmental analysis. As ONDA

describes in its motion for reconsideration, that conclusion is consistent with Ninth Circuit case

law describing an IBLA decision as a final agency action that incorporates BLM's underlying

Page 4 - OPINION AND ORDER

environmental analysis. *See Nat'l Parks & Conservation Ass'n v. Bureau of Land Mgmt.*, 606 F.3d 1058, 1063, 1065, 1069 (9th Cir. 2010) ("the [IBLA] affirmed the BLM's decision in a separate decision, incorporating the Draft and Final EIS"). Moreover, I disagree with BLM's contention that judicial estoppel bars ONDA from taking that position. In fact, ONDA adopts that position consistent with this court's prior determination that the IBLA's merits determination was the single final agency action subject to judicial review.

I disagree, however, with ONDA's suggestion that I should now clarify that BLM's DR, FONSI, EA, and TMP are vacated. I intended to issue only a very limited ruling. First, I found that because the IBLA did not even address seven distinct legal issues that ONDA administratively exhausted, it's decision to affirm the TMP was inadequate to permit meaningful judicial review on those issues. Therefore, the IBLA's decision was in a technical sense "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," U.S.C. §706(2)(A), with respect to those legal issues. Second, I also found that because the IBLA did not address the completeness or accuracy of BLM's route inventory, it could not have considered all of the factors relevant to making a determination on those seven legal issues. This flaw also rendered the IBLA decision "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Id.* I, however, specifically declined to rule on the merits of the seven issues ONDA exhausted before the IBLA. (#103, at 51) ("I have not found that BLM violated the Steens Act, FLPMA, Wilderness Act, or NEPA.").[1]

---

[1] ONDA, however, insists that my April 2011 decision held that the IBLA decision was unlawful under NEPA because it approved the TMP based on a FONSI rather than an EIS. (Pl.'s Br., #106, at 8.) ONDA's position appears to derive from my statement in the April 2011 decision that "[t]he same result also obtains for ONDA's final NEPA issue: the TMP violated NEPA by failing to recognize the significant environmental impact that would result and,

Page 5 - OPINION AND ORDER

Upon reconsideration, the court concludes that it improvidently vacated the IBLA's decision. A court should remand without vacating the agency action when the agency can cure a defect by providing further explanation of its decision. *Humane Soc. of U.S. v. Locke*, 626 F.3d 1040, 1053 n.7 (9th Cir. 2010). Both deficiencies in the IBLA's decision described in this court's April 2011 decision could possibly be cured by further explanation from the IBLA.[2] Consequently, I take this opportunity to clarify the effect of this court's ruling. I remand the case to the agency for further explanation, but do not vacate the IBLA's existing decision or any underlying BLM findings, conclusions, decisions, or environmental analyses. On remand, the IBLA shall issue a new decision in which it addresses the seven legal issues ONDA exhausted but that the IBLA failed to consider, and, in doing so, analyzes the completeness and accuracy of BLM's route inventory.

**4.    Motion for Permanent Injunction**

ONDA seeks a four-part permanent injunction (1) vacating the IBLA decision and BLM

---

consequently, whether BLM improperly failed to prepare an EIS." (#103, at 42.) Unfortunately, it appears that my April 2011 decision inadvertently omitted a key word which likely contributed to ONDA's misunderstanding. The first sentence on page 42 of that opinion should read: "The same result also obtains for ONDA's final NEPA issue: *whether* the TMP violated NEPA by failing to recognize the significant environmental impact that would result and, consequently, whether BLM improperly failed to prepare an EIS." Thus, consistent with the rest of my April 2011 opinion, I found that the IBLA's decision was arbitrary and capricious in its analysis of this particular issue because it completely failed to address whether BLM violated NEPA by preparing an EA instead of an EIS. Accordingly, I declined to address the merits of this NEPA issue.

    [2] I express no opinion at this point regarding the probable outcome of the IBLA's analysis. The IBLA could offer further explanation and affirm the TMP, determine that statutory violations occurred and order BLM prepare a new lawful environmental analysis, or any other appropriate form of relief. I leave that decision to the discretion of the agency.

DR, FONSI, TMP, and EA, except for the portion the IBLA reversed, which permitted motorized

access on Obscure Routes, (2) requiring the Department of Interior to prepare a lawful NEPA

analysis, (3) enjoining any mechanical maintenance activities within the Steens Mountain

CMPA, except for maintenance on "Level 3" and "Level 5" roads, and (4) enjoining any

motorized use of TMP-identified Obscure Routes and TMP-closed routes.  ONDA contends that

such an injunction is appropriate based on this court's ruling that "the Department of the Interior

violated the Steens Act, FLPMA, the Wilderness Act, and NEPA on seven of the nine counts

ONDA alleged."  (Pl.'s Br., #106, at 8.)

    In general, a permanent injunction may issue only after a hearing on the merits.  1 Dan B.

Dobbs, Law of Remedies, § 2.11(1), (2nd ed. 1993).  Thus, courts determine whether a

permanent injunction should issue only after plaintiffs succeed on the merits in showing that a

particular statute has been violated.  *See, e.g., Monsanto Co. v. Geertson Seed Farms*, 130 S. Ct.

2743, 2756-57 (2010) (discussing propriety of permanent injunction as remedy for NEPA

violation); *Sierra Forest Legacy v. Sherman*, --- F.3d ---, 2011 WL 2041149, at *17 (9th Cir.

May 26, 2011) (referring to district courts' assessment of prerequisites for permanent injunction

as "consideration of the equities after a violation of law has been found").  Here, however, this

court has not yet found that the defendants violated any environmental statute.  Consequently,

ONDA cannot properly seek a permanent injunction at this time.

    Moreover, three out of the four aspects of ONDA's requested injunction are inappropriate.

First, as described above, this court does not vacate the IBLA decision and therefore the

underlying BLM environmental analysis and decision remain intact.  Further, since the court has

not yet found any NEPA violation, it cannot order the Department of Interior to prepare a lawful

NEPA analysis.  Finally, in light of this court's reconsidered decision above to remand without

vacatur, there is no need to enjoin motorized travel on Obscure Routes or TMP-closed routes.

The IBLA decision banning motorized travel on Obscure Routes and affirming the TMP's closure

of certain other routes remains in place.  AR 65, 794.

### a.    Preliminary or Temporary Injunction Pertaining to Route Maintenance

By contrast, the second part of ONDA's requested injunction– the prohibition of

mechanized route maintenance on all but Maintenance Level 3 and Level 5 routes – requires

further analysis.  Since ONDA's motion for permanent injunction is inappropriate, I construe

ONDA's motion as seeking a preliminary or temporary injunction.  Ultimately, I find that ONDA

has met its burden to show that an injunction is warranted to prevent maintenance that effectively

creates new routes where they did not previously exist, but that the injunction ONDA seeks is

much too broad.  Instead, as I describe more thoroughly below, I seek proposals from the parties

delineating the scope of an appropriate injunction that prohibits mechanical maintenance on

particular routes that ONDA alleges are obscure or non-existent but otherwise permits BLM to

maintain the majority of routes in the CMPA, which both parties agree already exist on the

ground.

A  plaintiff seeking a preliminary injunction must establish: (1) that it is likely to succeed

on the merits; (2) that it is likely to suffer irreparable harm in the absence of preliminary relief;

(3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest.

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 374 (2008); *Amer. Trucking Assocs., Inc. v.

City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).   Instead of establishing likelihood of

success on the merits, a plaintiff may also obtain preliminary injunctive relief by showing "that

serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *See Alliance For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

      i.      **Likelihood of Success on the Merits**

I cannot conclude at this stage that ONDA is likely to succeed on the merits of its claims. In reviewing the record before the IBLA, I noted that there was scarce documentation of the nature of BLM's route inventory.  (#103, at 43-44.)  Morever, I concluded that the IBLA neglected to even address ONDA's concerns about the incompleteness and inaccuracy of the route designations.  Meanwhile, extra-record evidence first presented by the parties after the IBLA had rendered its decision contrasted sharply on the propriety of the inventory, with declarations from ONDA's experts highlighting the deficiencies in the inventory-associated TMP route decisions and responsive declarations from BLM explaining that the inventory was sufficient.  Consequently, I remanded with instructions for the agency to address the methodology of the route inventory and analyze ONDA's legal claims alleging that deficiencies in the inventory led to violations of various statutes.  In doing so, I did not predetermine the agency's response.

Nevertheless, I recognize that ONDA's allegations concerning the route inventory raise serious questions about the propriety of BLM's TMP and accompanying environmental analysis. These concerns go to the heart of ONDA's Steens Act, FLPMA, Wilderness Act, and NEPA claims.  For example, ONDA contends that the inventory ignored ground-level photographs of routes, examined an inadequate number of routes, recommended opening routes that were non-existent or obscure on the ground, arbitrarily added new routes, and unreliably translated the

Page 9 - OPINION AND ORDER

route inventory into TMP route designations. ONDA supports these arguments with

photographs, maps, and detailed analysis. Until the agency provides sufficient explanation to

dispel these concerns, serious questions on the merits exist.

### ii.    Irreparable Harm

Environmental injury is often permanent or long-lasting and therefore irreparable. *Cal. ex*

*rel. Lockyer v. USDA*, 575 F.3d 999, 1020 (9th Cir. 2009). Here, ONDA presents sufficient

evidence that irreparable environmental harm will result if BLM performs mechanical

maintenance on allegedly obscure routes, effectively creating routes where they did not

previously exist. First, mechanical maintenance on such routes will disfigure wilderness within

the CMPA, as illustrated by the results of BLM's "Burnt Car Road" maintenance project in 2009.

There, BLM apparently widened primitive routes into three-lane roads using heavy machinery

and a BLM review team determined that the maintenance violated various environmental

statutes. (Fenty Decl., #55, ¶15); (P.'s Resp. to Supp. Br., #101, Ex. A, 7-20.)

BLM argues that new maintenance policies instituted last year will prevent similar

incidents and that the damage from the Burnt Car Road project has since been reversed through

restoration. Neither of these arguments are persuasive. ONDA shows that despite the existence

of new policies, BLM issued plans in June 2011 to conduct Level 2 maintenance on 16 routes

that ONDA contends should never have been opened to motorized travel because they are either

non-existent or obscure on the ground. (P.'s Reply Br., #117, at 13 and Ex. A.) Although ONDA

appears to slightly overstate the scope of the problem, my analysis reveals that at least seven

routes that BLM proposes to maintain were identified by Dr. Miller and ONDA as obscure. *Id.*

(routes 74, 86, 114, 116, 147, 148, 150). Thus, ONDA's concern over the efficacy of BLM's

Page 10 - OPINION AND ORDER

prophylactic maintenance policy is well-placed. Additionally, BLM's photographs showing increased vegetation on the roads created by the 2009 Burnt Car Road maintenance are encouraging but insufficient. The mere presence of some amount of restored vegetation two years later cannot establish that no irreparable environmental harm occurred.

Further, as ONDA describes, the potential expansion of non-existent routes into roads poses the threat of weed infestation and habitat fragmentation. Although BLM apparently prioritizes discovery and treatment of noxious weed infestations, it is clear that road expansion under the guise of maintenance could only exacerbate weed infestation, despite BLM's mitigation efforts. The same is true for habitat fragmentation. BLM contends that seasonal road closures (of existing roads) sufficiently protect sage-grouse habitat. Nevertheless, since it is undisputed that roads damage and fragment sage-grouse habitat, the creation of *additional* roads will necessarily increase the threat to sage-grouse habitat. In sum, the irreparable harms ONDA seeks to avoid through an injunction flow from the virtual construction of new routes when formerly obscure routes are "maintained," not merely the continued maintenance of already-existing routes. The irreparable environmental harm caused by route expansion – as opposed to maintenance of existing routes – weighs in favor of injunctive relief.

### iii.    Balance of Equities

Assuming an injunction on maintenance is precisely tailored to the particular TMP-approved routes that ONDA alleges are obscure on the ground, ONDA succeeds in demonstrating that the balance of equities sharply tips in its favor. In its moving papers, ONDA originally sought a ban on all mechanized route maintenance within the CMPA. After BLM highlighted the problems with banning maintenance on Steens Loop Road, ONDA modified its

proposed injunction, seeking a ban on maintenance of routes categorized as Maintenance Level 1

or 2. Accordingly, some of the hardships BLM describes, such as interruption of $5 million

improvement to the Level 5 Steens Loop Road, are now irrelevant. Moreover, as explained

below, I favor an injunction much narrower than ONDA's proposed prohibition on maintenance

of all Level 1 and 2 routes. By limiting the scope of the injunction, I mitigate or avoid

completely many of the hardships raised by BLM.

 First, BLM contends that since ongoing maintenance of routes in response to the needs of

various stakeholders and to natural events is the status quo, enjoining such maintenance will be a

severe hardship. I agree, but only to the extent that BLM seeks to maintain existing routes that

already facilitate travel, recreation, or other access. It is unlikely, however, that BLM currently

maintains the allegedly illusory routes that are most concerning to ONDA, although the prospect

of future maintenance activities on those routes is precisely what motivates ONDA to seek this

injunction. Therefore, I agree with ONDA that preserving the un-maintained status quo of

contested routes is necessary.

 Second, BLM objects to the maintenance ban because it would endanger the public,

firefighters and rescue workers traveling on un-maintained routes. Moreover, BLM suggests that

allowing travel on routes marred by wet areas or gullies would encourage the public to maneuver

off-route and damage the surrounding area. First, an injunction will be narrowly tailored to

contested routes that are allegedly disused or non-existent and, therefore, will likely receive very

little travel. Moreover, to the extent that BLM anticipates travel on these allegedly obscure

routes, BLM can, if it chooses, easily mitigate the safety risk and threat to resources by

selectively closing any routes that it deems necessary. In fact, seasonal route closures are

Page 12 - OPINION AND ORDER

encouraged to avoid resource damage.  AR 10708, 10709.

Third, BLM asserts that banning maintenance will disrupt rights of way to communication sites and power lines, grazing operator access, and private landowners and ROW permit holder access.  This concern is understandable if BLM were to be barred from maintaining the majority of open routes within the CMPA.  However, it can be avoided by a carefully tailored injunction which takes into consideration these rights of way and access routes.

Fourth, BLM argues that a maintenance ban would diminish access for recreation activities such as camping, hunting, fishing, horseback riding, wildlife viewing, and hiking.  Again, in contrast to ONDA's proposed injunction covering approximately 80% of routes in the CMPA, an injunction tailored to only those limited number of routes that are legitimately disputed would leave ample recreational opportunities.

Fifth, BLM contends that a maintenance injunction will prevent it from accessing and eradicating weed populations on open routes.  A narrowly tailored injunction, however, would permit BLM to maintain– and thus access– weeds along existing routes.  The far more serious concern, however, is the potential creation of new roads that propagate weeds.  (Gelbard Decl., #57, ¶¶ 5, 13.)

Finally, BLM posits that a maintenance injunction would hinder its ability to effectuate the Steens Act goals of (1) promoting cooperation with private landowners and (2) promoting cooperation, communication, and understanding, and reducing conflicts between competing interests within CMPA.  16 U.S.C. §460nnn-12(b)(3),(5).  As mentioned above, a narrowly tailored injunction will not affect routes giving access to private landowners, which are likely not the illusory routes about which ONDA complains.  Moreover, just because BLM arrived at its

Page 13 - OPINION AND ORDER

TMP decision through an extensive public process involving representatives from many diverse groups does not mean that a limited maintenance injunction on some small portion of routes will necessarily destroy the goodwill already established. In sum, the hardships BLM cites only apply to a blanket route maintenance injunction on all but the most well-traveled roads, which the court does not endorse.

By contrast, the balance of hardships strongly tips in favor of enjoining the type of maintenance activities that convert overgrown, obscure, or non-existent routes into improved roads. ONDA's extensive briefing in this case documents the effects of road expansion, including destruction of wilderness values, spread of noxious weeds, and habitat fragmentation, which I will not repeat. Moreover, an injunction comports with Congress' mandate in the Steens Act to "conserve, protect, and manage the long-term ecological integrity of Steens Mountain for future and present generations." 16 U.S.C. §460nnn-12(a). Finally, as ONDA's briefing suggests, there is a risk that BLM's new policies will not completely prevent the creation of routes under the pretense of road maintenance.[3] Overall, as long as the injunction is closely tailored to prevent maintenance on the individual routes ONDA contends are non-existent or obscure, the balance of hardships tips sharply in ONDA's favor. *See Alliance For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

---

[3] I note that BLM's policy limits road maintenance to "repairing a road to its originally constructed condition," and permits blading and other maintenance of primitive roads that have fallen into disrepair over decades only "within the Construction Limits of the original footprint." (Suther Decl., #112, Ex. A at 5.) The policy also recommends that "where constructed roads have evolved through lack of maintenance into two tracks, documentation with before-and-after photos will aid in the determination of maintenance widths." *Id.* Beyond the advice to use photographs, the policy offers no guidance for accurately ascertaining the "originally constructed condition" or the "original footprint," creating the risk of expanding routes well beyond their original scope through maintenance.

b.    **Public Interest**

Courts recognize a "well-established public interest in preserving nature and avoiding irreparable environmental injury." *Cottrell*, 632 F.3d at 1135 (internal citation and quotation omitted). Moreover, there is a public interest in "careful consideration of environmental impacts before major federal projects go forward," especially in NEPA cases. *Id.* At the same time, courts must consider other critical public interests that could be injured by granting injunctive relief. *Id.*

Here, the public interests served by a narrowly tailored preliminary or temporary injunction outweigh those that could be injured by such relief. BLM contends that the public interest in safe access for the public, firefighters and rescue personnel, grazing permittees, landowners, right of way holders, and BLM staff would be injured by ONDA's proposed injunction. While ensuring safe access for all who use the Steens Mountain CMPA is critical, the court does not anticipate that a temporary maintenance ban on a limited number of routes that are believed to be non-existent would undermine safe access.[4] By contrast, an injunction will avoid irreparable environmental injury to contested routes until the agency considers whether the TMP decision and associated route inventory were proper and complied with relevant environmental statutes. Accordingly, the public interest favors some form of limited injunctive relief.

In sum, since ONDA raises serious questions going to the merits of its claims, demonstrates irreparable harm will occur from expansion of allegedly non-existent routes

---

[4] To the extent BLM believes that maintenance on any particular allegedly obscure route is necessary to ensure safe access for a particular constituency, BLM is encouraged to account for that need when it submits its detailed injunction proposal described below.

Page 15 - OPINION AND ORDER

through maintenance, shows the balance of hardships tip sharply in its favor, and establishes that the public interest of preventing environmental injury requires an injunction, ONDA satisfies its burden to show that a narrowly tailored injunction is appropriate.

    **c.**    **Scope of Injunction**

    Injunctive relief must be tailored to remedy the specific harm alleged. *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991). Here, the specific harm ONDA seeks to avoid is the creation of new roads within the CMPA through "maintenance" activities on routes opened to motorized travel that either have never existed or have been reclaimed by wilderness to the extent that they are obscure on the ground. ONDA's proposed injunction, however, would bar maintenance on all but the most developed roads within the CMPA, nearly 80% of all routes in total.[5] Fundamentally, although some injunctive relief is warranted, ONDA's proposal fails because it is not targeted to routes which are allegedly obscure.

    It is clearly possible to tailor an injunction to the specific harm alleged. For example, maps prepared by Dr. Miller appear to indicate all routes and route segments opened to motorized travel which ONDA alleges are actually obscure. (Miller Decl., #56, Ex. F., at 15.) Therefore, within two weeks ONDA and defendants shall confer and submit a joint proposal or separate proposals for an injunction either stating or depicting precisely which routes are allegedly obscure and should be exempt from maintenance. The parties shall prepare a map and accompanying GIS data to unambiguously delineate their proposal. If the parties cannot agree upon a joint proposal, the court will fashion an appropriate injunction based on the parties'

---

    [5] ONDA's proposed injunction seeks to temporarily halt maintenance on 409.3 of 519 miles of routes currently open within the CMPA.

Page 16 - OPINION AND ORDER

separate proposals.  Until the parties fashion a joint proposal or the court issues an injunction,

BLM shall refrain from undertaking the maintenance of Level 2 routes described in its proposed

"CMPA Road Maintenance" of June 1, 2011.  (Pl.'s Br., #117, Ex. A) (titled "Categorical

Exclusion Environmental Review and Approval").

  **d.**  **Temporal Limits of Injunction**

  The injunction on route maintenance, whether stipulated by the parties or ordered by the

court, shall remain in force until the IBLA issues a new decision addressing the methodology of

BLM's route inventory and the seven legal issues it failed to consider previously.  At that time,

the court will review the injunction in light of the IBLA's decision and the parties' positions.

The court will retain jurisdiction over the case pending further explanation from the IBLA.

///

///

///

///

///

///

///

///

///

///

///

///

Page 17 - OPINION AND ORDER

## CONCLUSION

For the reasons set forth above, ONDA's motion for reconsideration (#104) is granted and its April 2011 Opinion and Order (#103) is altered as follows. The court declines to vacate the IBLA decision of February 2009 and instead remands to the Department of Interior. Upon remand, the agency shall issue a new decision addressing the methodology of BLM's route inventory and the seven legal issues previously described, many of which pertain to the alleged deficiencies in BLM's route inventory. ONDA's motion for permanent injunction (#105) is construed as a motion for preliminary or temporary injunction and the parties are ordered to confer and submit a joint proposal or separate proposals for an injunction order as described herein.

Dated this 8th day of July 2011.

Honorable Paul Papak
United States Magistrate Judge