IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

OREGON NATURAL DESERT ASS'N,

          Plaintiff,

                                         3:09-cv-00369-PK
                                         OPINION AND ORDER

KENNY MCDANIEL, Burn District
Manager, BLM, *et al.*,

          Defendants.

PAPAK, Judge:

      Plaintiff Oregon Natural Desert Association ("ONDA") brought this action arising from

the travel management planning process for the Steens Mountain. ONDA alleged that either

BLM's decision adopting its Travel Management Plan ("TMP") or the Interior Board of Land

Appeals' ("IBLA") decision approving BLM's adoption of the TMP violates the Steens

Mountain Cooperative Management and Protection Act of 2000 ("Steens Act"), 16 U.S.C. §

460nnn *et seq.*, the Federal Land Policy and Management Act of 1976 ("FLPMA"), 43 U.S.C. §§

1701–87, the Wilderness Act of 1964, 16 U.S.C. §§ 1131–36, and the National Environmental

Policy Act ("NEPA"), 42 U.S.C. §§ 4321–61.  Now before the court are three motions filed by ONDA: (1) a motion for leave to supplement its complaint (#161) to challenge BLM's June 13, 2011 categorical exclusion ("CX") decision authorizing mechanical maintenance on approximately 133 miles of routes within the CMPA; (2) a motion to modify the court's earlier temporary injunction (#162) to include 54.7 miles of additional routes covered by the CX decision; and (3) a motion to compel defendants to complete the administrative record (#163) by filing certain Geographic Information System ("GIS") data.  For the reasons described below, the motion to compel is granted, the motion to modify is denied, although ONDA may propose different and more limited modifications, and the motion to supplement is denied.

## BACKGROUND

In April 2011, this court ruled that the IBLA's decision approving BLM's TMP was inadequate to permit meaningful judicial review, vacated the IBLA decision, and remanded to the IBLA with specific instructions.  (#103.)  On June 13, 2011, just a week after ONDA moved for injunctive and other relief, BLM issued a new categorical exclusion decision permitting maintenance of certain roads within the Steens Mountain Cooperative Management and Protection Area ("CMPA"), consistent with maintenance levels described in the CMPA Resource Management Plan ("RMP") and the Steens Mountain Travel Management Plan ("TMP").  (P.'s Br., #165, Ex. A, at 1) ("CX Decision").   About three weeks later, on July 8, 2011, this court reconsidered its earlier decision, remanding to the IBLA without vacatur and expressing the need for a narrowly tailored temporary injunction on mechanical route maintenance during remand proceedings at the agency to prevent BLM from effectively creating new routes under the guise of route maintenance.  ( #118.)  The court asked for either a joint or competing injunction

Page 2 - OPINION AND ORDER

proposals within two weeks. *Id.* At ONDA's request, the court extended the deadline for injunction proposals three more weeks, to August 12, 2011. (#135.) Prior to that deadline, ONDA gathered field data on various CMPA routes, some of which ONDA incorporated into its injunction proposal. (Third Miller Decl., #167, ¶¶3-4.) The week after the deadline, ONDA gathered more field data, eventually compiling and analyzing that data over the winter. *Id.* at ¶5.

BLM's injunction proposal addressed only the approximately 100 miles of routes challenged as obscure or non-existent by ONDA's expert Dr. Craig Miller in his July 2010 declaration accompanying ONDA's motion for summary judgment. (#147.) The proposal banned maintenance on 26 miles of routes and permitted limited maintenance on another 64 miles, while allowing an exception for maintenance necessary for wildfire response. *Id.* ONDA's proposal was broader, including additional routes not identified by Dr. Miller's declaration. (#157.) That proposal recommended no maintenance on 224 miles of routes and only limited maintenance on another 114 miles of routes. *Id.* On August 25, 2011, the court adopted BLM's proposal in full. (#160.)

In early September 2011, following the court's adoption of BLM's injunction proposal, ONDA requested GIS data corresponding to BLM's proposed injunction as well as GIS data for the CMPA route system as a whole. (Becker Decl., #170, ¶6.) A year and a half earlier, in March 2010, BLM had given ONDA GIS data that purportedly corresponded with the CMPA TMP decision map, which BLM issued years earlier in May 2007. *Id.* at ¶7; AR 802-803. During September 2011, it became clear to ONDA there were discrepancies between the March 2010 GIS data BLM had provided and the TMP decision map itself. *Id.* at ¶9. In early October 2011, BLM confirmed that the March 2010 GIS data it provided to ONDA was only "interim"

data, and was not the final data set actually used to generate the decision map published in 2007. *Id.* at ¶11. After communications between ONDA and BLM in October, November, and December 2011, during which ONDA enumerated exactly what GIS data it sought, BLM offered to provide the data for a fee of around $325. *Id.* at ¶¶13-24.

## DISCUSSION

### I.   Motion to Compel Completion of the Administrative Record

ONDA argues that the final GIS data sets BLM used to designate routes in the TMP decision map and assign maintenance levels to those routes are part of the "whole record" before the agency at the time of the challenged TMP decision, and therefore must be lodged with the court. A court must base its review of a final agency action under the Administrative Procedure Act based on the "whole record." 5 U.S.C. § 706. The "whole record" consists of "everything that was before the agency pertaining to the merits of its decision." *Portland Audubon Soc. v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993). Supplementation of the record is appropriate when the agency has relied on documents or materials not included in the administrative record. *Id.*

Here, I agree that the "whole record" includes the GIS data sets ONDA now moves to compel. Since the TMP decision maps delineating routes and the TP maps indicating the maintenance levels of those routes are present in the administrative record, AR 802-803, 10760-10761, the GIS data used to generate those maps were clearly "before the agency." 984 F.2d at 1548. There is also no doubt that those data pertained to the merits of BLM's decision, which made various route designations and applied the previously set TP route maintenance categories. AR 802-803, 9965. Therefore, supplementation of the administrative record is appropriate to

Page 4 - OPINION AND ORDER

include ONDA's requested GIS data sets.

None of BLM's arguments to the contrary are persuasive. Although ONDA's earlier communications with BLM and representations to the court suggested ONDA believed the administrative record to be complete, all these communications occurred *before* ONDA became aware that BLM had provided interim, rather than final, GIS data sets. ONDA therefore did not waive or forgo any objection to the incomplete GIS data.

Further, I disagree with BLM's suggestion that it need not provide the GIS data because the record as it stands is adequate. Not only are the cases BLM cites for this proposition inapposite, but the need for the parties to operate from a common basis of underlying geographical data is readily apparent. The claims before this court and the IBLA on remand dispute the condition and designation of over 500 miles of routes, which the parties debate in minute detail and which are only vaguely discernable in the graphical representations of maps appearing in the record. Although it appears that the parties handled exchanges of other GIS data through informal agreement without officially lodging the data in the administrative record, the months-long stalemate over these particular data sets unfortunately requires the court's intervention.

Moreover, BLM offers no support for its position that ONDA must compensate BLM for the estimated eight hours of staff time that gathering the data would require. Finally, I disagree that the missing GIS data requires this court to remand to the agency for further investigation or explanation. In fact, the case BLM cites in support of that argument nowhere addresses the proper remedy for the agency's failure to include in the administrative record materials that are already available. *See Florida Power & Light Co. v. Lorion*, 470 U.S.729, 744 (1985) (remand

Page 5 - OPINION AND ORDER

for additional investigation or explanation generally required only if the "record before the

agency does not support the agency action, if the agency has not considered all relevant factors,

or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the

record before it").

## II.     Motion to Supplement

ONDA also moves to supplement its amended complaint under Fed. R. Civ. P. 15(d) to

assert a challenge to BLM's June 13, 2011 CX decision as violative of the Steens Act, FLMPA,

and NEPA.  Under Rule 15(d), the court "may, on just terms, permit a party to serve a

supplemental pleading setting out any transaction, occurrence, or event that happened after the

date of the pleading to be supplemented." Fed. R. Civ. P. 15(d).  "Rule 15(d) is intended to give

district courts broad discretion in allowing supplemental pleadings." *Keith v. Volpe*, 858 F.2d

467, 473 (9th Cir. 1988).  Courts apply Rule 15(d) to further judicial economy and convenience

and liberally construe it absent a showing of prejudice to defendant. *Id.* at 473, 475.

While permitting leave to supplement is favored, Rule 15(d) cannot be used to introduce

a "separate, distinct and new cause of action." *Planned Parenthood of S. Ariz. v. Neely*, 130 F.3d

400, 402 (9th Cir. 1997) (internal citations and quotations omitted) (considering factors such as

whether the supplemental complaint challenged a different statute than the original suit, whether

final judgment had been entered, whether the court retained jurisdiction over the order of

judgment, whether the defendant's conduct sought to contravene the court's earlier order, and

whether supplementation promoted judicial efficiency by settling the entire controversy in one

action).  Thus, courts generally grant motions to supplement under Rule 15(d) when a matter is

still pending and final judgment has not yet been entered, although post-judgment

supplementation is also permitted when the court has retained jurisdiction over the matter and

where the challenged conduct involved attempts to contravene the court's earlier rulings. *Ctr.*

*for Biological Diversity v. Salazar*, No. CV 07-0038-PHX-MHM, 2010 WL 3924069, at \*4–3

(D. Ariz. Sept. 30, 2010).

      Some district courts in this Circuit also import the Rule 15(a) standard when analyzing a

motion to supplement a complaint under Rule 15(d), examining whether the proposed

supplemental claim has merit, whether it could have been added earlier, whether it unduly

burdens the defendant, and whether it would likely extend or complicate the litigation. *See, e.g.,*

*Peterson v. California*, No. 1:10–cv–01132–SMS, 2011 WL 3875622, at \*5 (E.D. Cal. Sept. 1,

2011) (citing *Glatt v. Chicago Park District*, 87 F.3d 190, 193 (7th Cir. 1996)). No Ninth Circuit

case, however, explicitly applies the four factors courts routinely consider under Rule 15(a)–

undue delay, bad faith, futility, and prejudice – to motions brought under Rule 15(d).

      Here, although I agree with ONDA that a challenge to a categorical exclusion would

ordinarily be appropriate for supplementation under the present circumstances, I am persuaded by

BLM's argument that supplementing to include ONDA's new allegations would be futile because

of the unique nature of the categorical exclusion in this case. As an initial matter, I find that

ONDA's proposed supplementation does not run afoul of *Planned Parenthood* by alleging a

"separate, distinct and new cause of action." As ONDA points out, a challenge to the route

maintenance CX is at least related to the subject of the original complaint, which focused on the

designation of those routes, among others, under the TMP. *See Volpe*, 858 F.2d at 473 ("While

some relationship must exist between the newly alleged matters and the subject of the original

action, they need not all arise out of the same transaction.") Moreover, the proposed

Page 7 - OPINION AND ORDER

supplemental complaint adds allegations under the same statutes – NEPA, FLPMA, and Steens

Act – as the existing complaint. Finally, although this court has already adjudicated the motions

for summary judgment in favor of ONDA, it still retains jurisdiction over the temporary

injunction pending further proceedings on remand before the IBLA, and the CX on its face

pertains to maintenance of routes subject to that injunction.

The real problem is not that the CX challenge is too distinct from the original action to

fall under Rule 15(d), but paradoxically, that it is too similar. The CX decision states: "The

purpose of the proposal is to maintain safe road conditions within the CMPA boundary

highlighted in the attached Maps. Roads will be maintained with the existing disturbed areas

consistent with the assigned maintenance levels 2 and 3 described in the CMPA RMP/ROD (M-2

&3) and the Steens Mountain Travel Management Plan (TMP) . . . . This CX does not permit

new construction/realignment or road upgrading activities to a different intensity/maintenance

level." (P.'s Br., #165, Ex. A, at 1). Indeed, the Record of Decision ("ROD") adopting the final

RMP included a Transportation Plan ("TP") detailing route maintenance levels for various types

of routes. AR 10708-10709. The subsequent Travel Management Plan (TMP) adopted the TP's

route maintenance levels and assigned Maintenance Level 2 for routes added to the network in

the TMP. AR 9965. The TMP also recognized that implementation of the TMP would include

route maintenance. AR 10027. Accordingly, as BLM notes, the June 2011 CX does not newly

authorize any maintenance not already permitted by the TP and TMP. (D.'s Br., #171, at 8-10);

(Sixth Karges Decl., #172, Ex. A, at 2) (Letter from BLM to ONDA stating that "[t]he Burns

District BLM considers the CX to be well within the analysis and impacts analyzed in the RMP

TP and the TMP . . . . The BLM is implementing the TP and TMP; BLM is not undertaking a

new decision. . . . as an extra measure, BLM prepared the CX to ensure adequate NEPA analysis

already exists.  The BLM could have also used a Determination of NEPA Adequacy in lieu of the

CX, but the end result is the same because BLM has ensured that there is NEPA analysis.")

Indeed, there appears to be no dispute that the 133 miles of routes purportedly affected by the CX

decision are all within the CMPA and were already subject to maintenance levels adopted by the

TMP.

　　　　This is important for several reasons.  First, the CX is not really a new decision by the

BLM requiring exclusion from NEPA analysis and review.  Because the maintenance described

in the CX is already authorized by the TMP decision, the success of ONDA's CX challenge is

completely derivative of its claims challenging the TMP.  That is, if the TMP is found to violate

the Steens Act, FLPMA, and NEPA because it designates non-existent routes, then by definition

the CX will violate those same statutes because it relies on the TMP's mandate to maintain those

routes.

　　　　For the same reason, this particular CX is not a final agency action reviewable under the

APA.  *See* 5 U.S.C. § 704 (only final agency actions are reviewable).  In form, the CX

purportedly relies on a Department of Interior Exclusion category, codified at 43 C.F.R. §

46.210(f), to justify the proposed maintenance in the absence of a NEPA review.  However, that

maintenance had already been approved prior to the CX, most recently pursuant to BLM's TMP

environmental assessment.  Thus, I agree with BLM that this CX fails to satisfy the second

element of the accepted test for finality requiring the agency action be one that has some legal

consequences.  *Bennett v. Spear*, 520 U.S. 154, 177-178 (1997) (agency action is final if it is: (1)

"the 'consummation' of the agency's decisionmaking process"; and (2) an action "by which

Page 9 - OPINION AND ORDER

'rights or obligations have been determined,' or from which legal consequences will flow'").

BLM articulated these points quite clearly in its responsive briefing. Yet ONDA completely neglected to address them in its reply. Instead, ONDA cited other cases holding that a categorical exclusion issued in the absence of an NEPA environmental assessment or impact statement is a final agency action subject to judicial review. *See, e.g., Sierra Club v. Bosworth*, 510 F.3d 1016, 1026 (9th Cir. 2007). ONDA's silence on the crucial issue of whether this peculiar CX decision gives rise to separate cognizable claims for relief is telling. I concur with BLM that ONDA's proposed supplemental pleading will prejudice BLM by requiring it to litigate a challenge to the CX here that is not, in fact, a final agency action.[1]

## III.    Motion to Modify Injunction

Last, ONDA moves to modify the court's earlier temporary injunction (#162) to extend maintenance restrictions to an additional 54.7 miles of routes within the scope of the CX decision. In light of the fact that ONDA already had the opportunity to challenge maintenance of these routes in the context of this court's earlier injunction, I conclude that ONDA's proposed modification revisiting those routes is unjustified. However, given the recent revelation that ONDA relied on inaccurate GIS data provided by BLM in fashioning its previous injunction proposal, I acknowledge that some modification of my previous injunction may be in order concerning routes that were not reflected in the interim data set provided by BLM.

As a threshold matter, the parties disagree over whether ONDA's motion is truly a motion to modify the court's injunction under Rule 54(b) or a motion for reconsideration of the

---

[1] Given my conclusion, I need not address BLM's argument that the motion to supplement should also be denied because the IBLA possesses primary jurisdiction over all matters concerning CMPA route designations.

Page 10 - OPINION AND ORDER

injunction order under Rule 59(e).   Federal Rule of Civil Procedure 54(b) permits a district court

to modify an interlocutory order such as a preliminary injunction at any time before entry of final

judgment. *Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1124 (9th Cir. 2005).

By contrast, Federal Rule of Civil Procedure 59(e) requires that a motion to alter or amend an

order, such as this court's August 25, 2011 temporary injunction order, must be filed no later

than 28 days after the entry of the order.  Fed. R. Civ. P. 59(e); *Credit Suisse*, 400 F.3d at 1124

n.6.  In determining whether to treat ONDA's motion as one for modification under Rule 54 or

reconsideration under Rule 59, courts must look to substance of the motion.  400 F.3d at 1124.

"[A] motion that merely seeks to relitigate the issues underlying the original preliminary

injunction order is subject to Rule 59(e)'s [time] limit, while a motion that in substance is based

on new circumstances that have arisen after the district court granted the injunction may be filed

at any time before entry of a final judgment." *Id.*

For example, in *Credit Suisse*, the district court entered a preliminary injunction barring

plaintiff from arbitrating his employment dispute before the American Arbitration Association

because the employer's dispute resolution program required him to arbitrate before a different

body, the National Association of Securities Dealers.  400 F.3d at 1121-1122.  After the court

entered the preliminary injunction, but before the NASD appointed a panel to arbitrate plaintiff's

case, the California Judicial Counsel adopted heightened ethics standards for arbitrators that were

inconsistent with NASD's own rules, prompting NASD to at first suspend appointment of

arbitrators and then restart arbitrations in California only provided that employees like plaintiff

waived the new ethics standards.  *Id.* at 1122.  Plaintiff moved for the court to reconsider the

preliminary injunction because the recent developments undermined his right to a timely

Page 11 - OPINION AND ORDER

arbitration under the Federal Arbitration Act, and the district court denied his motion on the merits. *Id.* at 1123. The Ninth Circuit held that the district court properly considered plaintiff's motion as timely filed because plaintiff's motion was "based on circumstances that occurred after the court granted the preliminary injunction" and was therefore a motion to vacate the injunction based on changed circumstances. *Id.* at 1125.

ONDA contends that its collection and analysis of new field data after this court's injunction order constitute changed circumstances sufficient to justify modification of the injunction. ONDA also represents that BLM's provision of incomplete GIS data slowed its own data gathering and analysis process, implying perhaps that had BLM provided accurate data, ONDA would have been able to offer the current evidence in support of its original injunction proposal. ONDA, however, presents no declarations to that effect and does not explain how reliance on interim data hindered its ability to present the current evidence to the court by the August 12, 2011 deadline. Indeed, ONDA's argument is belied by the fact that it conducted some data gathering now presented to the court only *after* that August 12, 2011 deadline. If anything, the more likely cause for the delay in ONDA's new proposal is the time-consuming nature of documenting and analyzing route conditions and the relatively short timeline for injunction proposals set by the court.

I find that ONDA's recent completion of new data gathering and analysis does not amount to the type of changed circumstances that may form the basis for a motion to modify an injunction. Unlike the post-injunction developments in *Credit Suisse* which were completely outside the plaintiff's control, here ONDA determined when it collected and analyzed field data supporting its injunction proposal. In fact, ONDA has sought injunctive relief since the

Page 12 - OPINION AND ORDER

beginning of this case, and explicitly moved for an injunction in June 2011. Admittedly, the court's order of July 8, 2011 first raised the prospect that ONDA would have to provide an injunction proposal more narrowly tailored than its original recommendation banning mechanical maintenance in the CMPA altogether. But ONDA itself suggested the August 12, 2011 deadline for injunction proposals. Now ONDA argues that the deadline came too soon and the court should revise its injunction as to some of the routes within the CMPA that were also the subject of the CX decision. Moreover, ONDA does not indicate that the actual conditions of the various routes have changed since this court's August 2011 injunction order. It is only ONDA's knowledge and documentation of those conditions that have evolved. Consequently, I agree with BLM's characterization of ONDA's current motion as an attempt at the proverbial "second bite at the apple" by presenting new evidence and argument on a question that the court has already decided, without the requisite intervening change in circumstances. Under *Credit Suisse*, ONDA's motion is substantively a motion for reconsideration under Rule 59(e), and is therefore untimely.

Even if this court were to consider ONDA's motion, the same result would obtain for very similar reasons. The district court "has the authority to alter the effect of an injunction in light of changes in the law or the circumstances . . . ." *Mariscal-Sandoval v. Ashcroft*, 370 F.3d 851, 859 (9th Cir. 2004); *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000) ("A party seeking modification or dissolution of an injunction bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction."). ONDA does not identify any new case law or statutes that compel a different injunction. Instead, ONDA argues that its August 2011 proposal contained its "best approximation of CX routes that should

Page 13 - OPINION AND ORDER

have been included in the Court's injunction," whereas its current proposal included field data and analysis that reveal that the maintenance approved by the CX "*would* have a *significant impact* on about 54.7 miles or routes . . . not included in the existing injunction." *Id.* (P.'s Br., #165, at 13-14) (emphasis in original). Nothing new has occurred concerning the routes themselves that was not previously available to ONDA, except that now ONDA has gathered further documentation to support its position.

The interim GIS data issue discussed above raises a different concern. Although ONDA does not explicitly seek to modify the court's injunction on that ground, I anticipate such a request may be forthcoming after the data is lodged in the administrative record. ONDA noted some "18 miles of discrepancies between the March 2010 data and the TMP decision map," raising the possibility that the TMP actually designated significantly more or different routes than ONDA was led to believe. (Becker Decl., #170, ¶9.) It is logical, therefore, that ONDA's August 2011 proposal would not have addressed routes present in BLM's final GIS data set that did not appear in the interim data set. BLM's provision of the final data set will be tantamount to a changed factual circumstance over which ONDA had no control, potentially justifying a motion for modification of the injunction. From ONDA's perspective, receiving the final data set will effectively redefine the scope of the TMP decision.

Thus, after BLM provides the final GIS data sets pursuant to this order, ONDA may choose to file an additional brief: (1) identifying any previously-undisclosed routes that now are known to be within the scope of the TMP; (2) identifying which of those routes are alleged to be obscure or non-existent; and (4) identifying which of those routes should be subject to no maintenance or limited maintenance; (3) justifying those proposed expansions of the court's

maintenance injunction. BLM will be afforded an opportunity to respond to ONDA's proposals and this court will consider the arguments and modify its temporary injunction accordingly. The court, however, will not revisit its injunction decisions as to any routes that were previously identified to ONDA in the interim GIS data set.

## CONCLUSION

For the foregoing reasons, ONDA's motion for leave to supplement its complaint (#161) is denied, ONDA's motion to modify the court's earlier temporary injunction (#162) is denied, and ONDA's motion to compel (#163) is granted. BLM is ordered to lodge in the administrative record the GIS data delineated in ONDA's motion to compel, at no cost to ONDA. Additionally, after BLM lodges the requested GIS data, ONDA may file a renewed motion to modify the court's temporary injunction pertaining only to routes designated by the TMP that were previously undisclosed by BLM in its interim GIS data sets.

Dated this 31st day of May, 2012.

Honorable Paul Papak
United States Magistrate Judge