THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

OREGON NATURAL DESERT ASS'N,

                                      No. 3:09-cv-369-PK

       Plaintiff,

       v.                            **OPINION AND ORDER**

BRENDAN CAIN, Burns District Manager,
BLM, et al.,

       Defendants,

      and

HARNEY COUNTY,

       Defendant-Intervenor-
       Cross-Claimant.

**PAPAK, J.**

      Plaintiff Oregon Natural Desert Association (ONDA) seeks judicial review of two

final agency decisions concerning the designation of routes available for motorized travel in

the Steens Mountain Cooperative Management and Protection Area (CMPA): the decision of

the Interior Board of Land Appeals (IBLA), on remand from this court, to affirm the Bureau

of Land Management (BLM)'s adoption of the Steens Mountain Travel Management Plan

(TMP); and BLM's subsequent decision to issue the Steens Mountain Comprehensive

Recreation Plan. ONDA claims that these two decisions violate the Steens Mountain Cooperative Management and Protection Act of 2000 (the Steens Act), 16 U.S.C. §§ 460nnn - 460nnn-122; the Federal Land Policy and Management Act of 1976 (FLPMA), 43 U.S.C. §§ 1701-87; the Wilderness Act of 1964, 16 U.S.C. §§ 1131-36; and the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321-61. Third Am. & Suppl. Compl., ECF No. 244. Defendants are BLM; Brendan Cain, Burns District Manager, BLM; Rhonda Karges, Manager, Andrews Resource Area, BLM (I refer to these defendants collectively as BLM); and the IBLA. Harney County has intervened as a defendant, and asserts cross-claims against BLM under NEPA and the Steens Act.

In 2007, BLM issued the Travel Management Plan (TMP) decision at issue here. In 2008, ONDA appealed the TMP to the IBLA. In 2009, the IBLA affirmed the TMP decision almost in its entirety, reversing only the TMP's allowance of motorized traffic on Obscure Routes.

ONDA then filed this action seeking judicial review of the IBLA's decision. In 2011, on cross-motions for summary judgment, I remanded the case to the IBLA for further proceedings on seven of the nine issues raised by ONDA. *Oregon Natural Desert Ass'n v. McDaniel*, No. 09-cv-369-PK, 2011 WL 1654265, at *10 (D. Or. April 28, 2011), ECF No. 103 (O & O). I concluded that the IBLA's opinion was arbitrary and capricious because it had failed to address the seven issues "sufficiently to create a record for judicial review." *Id.* (footnote omitted). The most troubling issue for me was "the IBLA's complete failure to review the TMP's individual route determinations, the methodology BLM employed in conducting its route inventory, or the evidence presented by ONDA that BLM's route designations ignored the actual conditions on the ground." *Id.* I did not rule on the merits of ONDA's claims on the seven issues, leaving that for the IBLA to resolve on remand.[1]

On remand, after receiving additional evidence and briefing, the IBLA affirmed the

---

1 The O & O vacated the IBLA's decision, but on a motion for reconsideration, I ruled that vacating the decision was not necessary. *Oregon Natural Desert Ass'n v. McDaniel*, No. 09-cv-369-PK, 2011 WL 3841550 (D. Or. July 8, 2011), ECF No. 118.

TMP in its entirety. *Oregon Natural Desert Ass'n (On Judicial Remand)*, IBLA No. 2008-59-1, 185 IBLA 59, 2014 WL 7150267, ECF No. 203 (IBLA Sept. 30, 2014) (IBLA Op.). In affirming the TMP, the IBLA *sua sponte* vacated its prior reversal of BLM's designation of Obscure Routes as open to motorized travel.

In 2015, BLM issued the Comprehensive Recreation Plan (CRP). In preparing the CRP, BLM reexamined the Obscure Routes and decided to close many of the Obscure Routes to motorized travel.

ONDA now seeks judicial review of the 2014 IBLA decision and the 2015 CRP. For the following reasons, I conclude that the 2014 IBLA decision and BLM's 2015 CRP decision are supported by substantial evidence in the record, are not contrary to law, and are not arbitrary or capricious. I therefore deny ONDA's Motion for Summary Judgment and grant BLM's Cross-Motion for Summary Judgment. I deny Harney County's Motion for Summary Judgment. I deny the parties' motions to strike.

## LEGAL STANDARDS

### I. Legal Standard for Judicial Review of Final Agency Decisions

When reviewing a final agency decision under the Administrative Procedure Act (APA), the court determines whether the agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Before overturning an agency decision under the APA's deferential standard of review,

> the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

*Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971) (citations omitted), *abrogated in part on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977). The court presumes that the agency acted properly and affirms when "'a reasonable basis exists for its decision.'" *Nw. Ecosystem Alliance v. U.S. Fish & Wildlife Serv.*, 475 F.3d 1136, 1140 (9th Cir. 2007) (quoting *Independent Acceptance Co. v. California*, 204 F.3d 1247, 1251 (9th Cir.

2000) (citations omitted)). The plaintiff bears the burden of showing that an agency decision or action was arbitrary and capricious. *Kleppe v. Sierra Club*, 427 U.S. 390, 412 (1976).

The parties have filed cross-motions for summary judgment under Federal Rule of Civil Procedure 56. *See City & Cty. of San Francisco v. United States*, 130 F.3d 873, 877 (9th Cir. 1997) (summary judgment is "'an appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did'") (quoting *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 770 (9th Cir. 1985)). But when a court reviews an agency decision, the APA's legal standards, not those of Rule 56, govern. In this context, "summary judgment" is "simply a convenient label to trigger" judicial review. *Klamath Siskiyou Wildlands Ctr. v. Gerritsma*, 962 F. Supp. 2d 1230, 1233 (D. Or. 2013), *aff'd*, 638 F. App'x 648 (9th Cir. 2016).

## II. Standard of Review for IBLA Decisions

"Courts apply the same standard of review of IBLA decisions as for review of agency decisions generally." O & O at *9. This court may reverse the IBLA's decision only if the decision is arbitrary, capricious, not supported by substantial evidence, an abuse of discretion, or contrary to law. *Akootchook v. United States*, 271 F.3d 1160, 1164 (9th Cir. 2001). "This standard is narrow and a reviewing court may not substitute its judgment for that of the agency." *Geo-Energy Partners-1983 Ltd. v. Salazar*, 613 F.3d 946, 955 (9th Cir. 2010). The reviewing court carefully searches the full record "'to determine whether it contains such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and whether it demonstrates that the decision was based on a consideration of relevant factors.'" *Akootchook*, 271 F.3d at 1164 (quoting *Hjelvik v. Babbitt*, 198 F.3d 1072, 1074 (9th Cir. 1999)).

## BACKGROUND

The Steens Mountain Cooperative Management and Protection Area (CMPA) "is a high desert area ranging from aspen and juniper woodlands to sagebrush shrublands and grasslands, punctuated by perennial and intermittent streams, springs, and riparian areas." IBLA Op. at 65 (footnote omitted). The CMPA, which BLM manages, comprises more than

420,000 acres of public land, as well as almost 67,000 acres of private land. *Id.* Steens

Mountain, a 9,773-foot high mountain, is "the centerpiece of the CMPA." *Id.*

"The fundamental purpose of the Steens Act is 'to conserve, protect, and manage the

long-term ecological integrity of Steens Mountain for future and present generations.'" *Id.* at

64 (quoting 16 U.S.C. §§ 460nnn(5)). The Steens Act restricts motorized and mechanized

travel on federal lands in the CMPA, "generally prohibiting off-road vehicle use and restricting

vehicle use to designated existing roads and trails (with limited exceptions) and precluding the

construction of new roads or trails (with limited exceptions)." *Id.* at 65 (citing 16 U.S.C. §§

460nnn-22). The Steens Act requires that BLM create "a comprehensive plan for the

long-range protection and management of the Federal lands included in the [CMPA]," 16

U.S.C. § 460nnn-21(b), including, "as an integral part, a comprehensive transportation plan for

the Federal lands included in the [CMPA], which shall address the maintenance, improvement,

and closure of roads and trails as well as travel access," 16 U.S.C. § 460nnn-22(a). The Steens

Act also closed about 100 miles of routes.

In 2005, BLM adopted the Steens Mountain CMPA Resource Management Plan

(RMP). In developing the RMP, BLM prepared an Environmental Impact Statement, taking

public comments. *See* AR 11052-12237. The RMP included an abbreviated Transportation

Plan (TP), "which provided guidance regarding the maintenance, improvement, use, and

accessibility of roads and trails in the CMPA. The TP also provided for a site-specific on-the-

ground route inventory, which would update and map all existing routes in the CMPA." IBLA

Op. at 66. BLM began preparing a comprehensive Travel Management Plan, seeking to

determine "'how best to manage travel in the CMPA while protecting resources including

wilderness characteristics, providing for 'reasonable' access to private lands, providing for

sustainable livestock grazing, providing recreation opportunities, and otherwise meeting RMP

land management objectives.'" *Id.* (quoting Environmental Assessment at 3, AR 9955)

(footnote omitted).

In 2007, this court addressed ONDA's challenge to the Steens Mountain RMP. *Oregon*

*Natural Desert Ass'n v. Shuford*, No. 06-cv-242-AA, 2007 WL 1695162 (D. Or. June 8, 2007)

(*Shuford*), *aff'd sub nom. Oregon Natural Desert Ass'n v. McDaniel*, 405 F. App'x 197 (9th Cir. 2010). In *Shuford*, this court denied ONDA's motion for summary judgment except as to ONDA's challenge to the TP. This court held that the TP

> violated the Steens Act for several reasons. First, the plan did not include a "comprehensive management system for travel over roads, ways, and trails." [*Shuford*, at *18.] Second, the plan explicitly provided for an additional environmental assessment and travel management plan, including further field inventories and need determinations, in order to complete the comprehensive transportation plan mandated by the Steens Act. Finally, the plan as it existed did not "describe or include a plan for managing different types of travel over specific areas, roads, routes or trails." [*Shuford*, at *19.] Thus, the plan failed to address travel on hiking trails, an unambiguous requirement of the statute.

O & O at *6 (citations omitted). After *Shuford* remanded the TP to BLM, this court denied ONDA's request to vacate the TP, finding "no harm to the public interest." *Oregon Natural Desert Ass'n v. Shuford*, No. 06-cv-242-AA, ECF No. 243, slip op. at 8 (D. Or. July 8, 2008) (noting that the Steens Act "contains little guidance" on "the substance that must be contained in a transportation plan"). Shortly after this court decided *Shuford*, BLM rescinded the RMP so that it could issue a new RMP incorporating this court's guidance.

Meanwhile, in April 2007, BLM issued an Environmental Assessment (EA) for the TMP. In the EA, BLM considered four alternatives, "maximize use," "minimal change," "reduced use," and "proposed action." BLM based the "minimal change" alternative primarily on ONDA's advice and comments.

In November 2007, BLM issued the TMP decision, which designated 555 miles of routes as Base Routes, defined as routes "currently open to motor vehicle travel." O & O at *4. The 555 miles of Base Routes included 36 miles of Obscure Routes, defined as routes "hard to locate on-the-ground." *Id.*

ONDA appealed the TMP decision to the IBLA. In 2009, the IBLA affirmed the TMP except as to the TMP's allowance of motorized travel on Obscure Routes. ONDA appealed the IBLA's 2009 decision to this court, leading to the O & O issued in 2011 and the subsequent remand. In 2014, the IBLA issued its decision affirming the TMP in its entirety. In 2015, BLM issued its CRP decision.

## DISCUSSION

ONDA contends that the 2014 IBLA decision affirming the TMP and the BLM's 2015 CRP decision violate the Steens Act, FLPMA, the Wilderness Act, and NEPA. ONDA's claims focus primarily on whether BLM properly designated routes in the Steens Mountain Comprehensive Management and Protection Area that should be open to motorized travel. As explained below, I affirm the IBLA decision, which resolved the remanded issues in a comprehensive opinion that reviewed the voluminous evidence and thoroughly analyzed the complex legal issues.

## I. ONDA's Steens Act Claims

In the O & O, I remanded two issues concerning the BLM's alleged violations of the Steens Act: whether BLM violated the Steens Act's prohibition of off-road motorized travel, 16 U.S.C. § 460nnn-22(b), by designating routes that did not exist as open to motorized travel; and whether BLM violated the Steens Act's prohibition on constructing new motorized roads or trails, 16 U.S.C. § 460nnn-22(d), by approving maintenance of routes that did not exist to allow motorized travel. ONDA now contends that the IBLA acted arbitrarily and capriciously in ruling for BLM on these issues. ONDA also contends that BLM's CRP decision violates the Steens Act.

ONDA argues that IBLA's interpretation of the Steens Act does not deserve *Chevron*[2] deference but only the lower level of deference described in *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001). *See* Pl.'s Reply-Resp. 26-27 & n.6. ONDA distinguishes my prior ruling that *Chevron* deference applies to the IBLA's statutory interpretation of the Steens Act, O & O at *12, arguing that the IBLA's *sua sponte* decision to reinstate the Obscure Routes does not deserve such deference. Adhering to my prior ruling, I agree with BLM that *Chevron* deference applies to IBLA's statutory interpretations of the Steens Act. In any event, my rulings would be the same under the less deferential *Mead* standard.

---

2 *Chevron U.S.A., Inc. v. Nat. Res. Defense Council*, 467 U.S. 837 (1984).

## A. BLM's Methods for Inventorying Routes

The parties dispute whether the IBLA correctly affirmed the TMP's inventory of routes designated for motorized travel. I find that the IBLA comprehensively addressed the "overriding factual issue" of "the accuracy and completeness of BLM's route inventory." IBLA Op. at 76. The IBLA concluded, "Based on our careful review of the administrative record presented to the Court and as supplemented on judicial remand, we are persuaded that BLM's November 2007 [Decision Record] was based on a complete and accurate inventory of the 555 miles of routes designated as open to motorized vehicle use in the CMPA." *Id.* at 77.

### 1. ONDA's Objections to the Route Inventory

ONDA claims that the IBLA's affirmance of BLM's methods for inventorying routes was arbitrary and capricious.[3] ONDA contends that BLM conducted incomplete surveys, using ground-based surveys for only about 100 miles of the 555 miles designated as open to motorized travel. ONDA also contends that BLM's Route Analysis Forms (RAFs) and post-decision declarations submitted during remand proceedings were incomplete because the RAFs covered only about 45 miles of the 121 miles of routes that ONDA had identified as being of concern, and did not address any Obscure Routes. ONDA also contends that the RAFs did not address whether the routes existed on the ground, and included almost no ground-based photographs. ONDA contends that BLM failed to address the thousands of photographs ONDA provided during the EA NEPA process.

As to the Obscure Routes issue, ONDA contends that the IBLA's *sua sponte* decision to reverse its prior decision and to reinstate Obscure Routes as open to motorized travel was arbitrary and capricious because no new evidence in the record supported that decision. ONDA also contends that the IBLA's reinstatement of the Obscure Routes violated the Steens Act's prohibition against driving cross-country and against establishing new roads in the CMPA. ONDA also attacks the IBLA Opinion's ruling that a route may exist as a matter of record, even if the route cannot be found on the ground.

---

3 In its reply brief, ONDA cites NEPA as the basis for its objection to the route inventory. Pl.'s Reply 13. I will address ONDA's objection as a claim under the Steens Act and NEPA.

## 2. BLM's Route Inventory Was Reasonable

After considering ONDA's objections to the IBLA's affirmance of BLM's route
inventory, I conclude that the IBLA's decision was not arbitrary or capricious. The IBLA
reasonably concluded that BLM was not required to survey all possible routes on the ground,
but instead could rely on "other reliable evidence that can be used to determine the existence of
a route, whether that evidence consists of aerial photographs taken of the land in question at or
near the critical date, first-hand accounts by members of the public who visited the land in
question at or around the critical time, or other appropriate evidence." IBLA Op. at 86-87
(footnote omitted).

The IBLA "considered ONDA's ground-level geo-referenced photographs and aerial
photographs of various routes," but noted that "this evidence suffers from the fact that
ONDA's documentation does not concern all the challenged routes, and even where it does
concern such routes, the data is limited in nature." *Id.* at 87-88. The IBLA stated that ONDA
had provided "only a few ground-level photographs for each of the challenged routes, and each
of the photographs shows only a relatively short stretch of that route, i.e., the segment where
the route is obscure to some degree." *Id.* at 88. The IBLA found that "most of these
photographs disclose the existence of routes, although they have become partially obscured by
vegetative growth and weathering." *Id.*

ONDA argues BLM's own wilderness handbooks require on-the-ground surveys to
establish the existence of a route. I agree with BLM that even if the handbooks cited by
ONDA required the exhaustive procedures ONDA advocates, the handbooks are not binding
on BLM. *See, e.g., Moore v. Apfel*, 216 F.3d 864, 868-69 (9th Cir. 2000) (provision in agency
litigation manual was not binding on agency because it "creates no substantive rights" and
instead "provides [agency] staff with internal procedures").

The IBLA Opinion states that although BLM "did not survey all of the routes
designated as open to motorized travel on the ground," "BLM's methodology for determining
routes to be designated was appropriate to the task, and yielded complete and accurate results
regarding existing routes from which it could be determined whether they were, in appropriate

instances, in existence on October 30, 2000, in the case of the CMPA, or October 21, 1976, in the case of the [Wilderness Study Areas]." IBLA Op. at 90.[4] ONDA has not shown that the Steens Act or NEPA requires that BLM conduct an arduous, time-consuming, and expensive route-by-route analysis if other methods are sufficient to conduct the inventory.

The IBLA Opinion stated that because almost all of the public lands in the CMPA are covered by about 40 grazing allotments, "most of the allegedly nonexistent or obscure routes reportedly provide access to the grazing permittees, for the purposes of monitoring and maintaining fences, reservoirs, and other rangeland improvements, and to BLM, for the purposes of rangeland monitoring, maintaining grazing improvements, and grazing management." IBLA Op. at 91 (footnote omitted). In responding to ONDA's argument that routes may be visible in aerial photographs but difficult or impossible to follow on the ground, the IBLA ruled that the issue was not "whether the routes at issue may be easily followed, only whether they exist. If they can be discerned from the air, we conclude that they exist." IBLA Op. at 87 n.31. The IBLA reasoned that the Steens Act gives BLM discretion to designate existing routes, and that the statute "does not define what is meant by an existing route. It does not exclude routes that have become overgrown or otherwise naturally reclaimed, but whose line may be traced on the ground, or exclude routes that have been infrequently used in the past." IBLA Op. at 87 (footnote omitted). The IBLA's interpretation of the Steens Act as applied to the existence of a route is reasonable and entitled to deference.

The IBLA also ruled that the Steens Act does not exclude "routes that exist only as a matter of record." *Id.* The IBLA stated that the Steens Act "prohibit[s] any '*off road*' motorized travel or the creation of any '*new* road or trail for motorized or mechanized vehicles,' except in limited circumstances. A new route is clearly one that never existed, but has now been brought into existence, by construction or use." *Id.* (quoting 16 U.S.C. § 460nnn-22(b) and (d) (emphasis added)). "Routes that exist only as a matter of record" include routes that appear on old maps, are noted in reports by local ranchers or other land owners, or

---

[4] October 20, 2000 is the effective date of the Steens Act. October 21, 1976 is the effective date of FLPMA.

are visible in aerial photographs, but are no longer apparent on the ground for the entire length

of the route. The IBLA Opinion explained its reasoning:

> So long as a route existed as a matter of record, the fact that it has become
> overgrown or otherwise has been reclaimed by natural processes, which affects
> the degree to which it might be restored to full use by blading or other means,
> does not render it a new route or its use a "*de facto* construction of new road."
> Nor does BLM's authorization of blading or other maintenance of a route that
> existed as the time of enactment of the Steens Act, either on the ground
> (although obscure) or as a matter of record (although apparently nonexistent),
> even where it dramatically improves the ability to follow the route on the
> landscape, constitute impermissible new construction. The use of any such
> route is not properly characterized as "off-road" within the meaning of the Act.

IBLA Op. at 102 (citation omitted). I conclude that the IBLA's interpretation of the Steens

Act's application to routes that exist only as a matter of record is entitled to deference.

The IBLA's opinion also resolved the ambiguity in the Steens Act's prohibition of off-

road motorized travel, which I noted in the O & O remanding this action:

> The Steens Act, however, contains a strange textual ambiguity. While [16
> U.S.C.] § 460nnn–22(b)(1)(A) prohibits motorized "off road" travel, §
> 460nnn–22(b)(1)(B) permits motorized travel on "roads and trails" designated
> by the transportation plan. Thus, in the same breath, the Steens Act bans
> motorized vehicles on anything but "roads," yet permits motorized vehicles on
> "trails." This inherent contradiction undercuts the IBLA's reasoning based on
> the definitions of Obscure Routes, and ONDA's proposed extension of that
> reasoning to Historical Routes. Even if a route characterized as a Historical
> Route is hard to locate on the ground and thus cannot be a "road," it could
> potentially be a "trail" which BLM can designate for motorized travel under §
> 460nnn–22(b)(1)(B). It is not my role to harmonize these apparently
> contradictory provisions of the Steens Act or to conduct a judicial review of the
> IBLA's determination that opening Obscure Routes violated the Steens Act.

O & O at *14.

On remand, the IBLA concluded that "since the statute clearly meant to allow BLM to

designate roads and trails as open to motorized travel, the prohibition against motorized off-

road travel logically can only mean that motorized travel *that does not occur on either a road

or a trail* is prohibited." IBLA Op. at 98 (footnote omitted). Based on this conclusion, the

IBLA ruled that "to the extent Obscure Routes constitute trails, their designation as open to

motorized travel does not violate the statutory prohibition of motorized off-road travel." *Id.* at

99. After resolving the statutory ambiguity, the IBLA concluded that it had erred in its

previous opinion when it ruled that BLM had improperly designated Obscure Routes as open to motorized travel. *Id.* I find that the IBLA's decision on this issue is a reasonable interpretation of the Steens Act.

ONDA contends that regardless of whether BLM classifies a route as a "road" or "trail," ONDA's photographs show that driving or mechanical maintenance on Obscure Routes "will involve cross-country travel that crushes vegetation and establishes new roads." Pl.'s Reply-Response 28. BLM responds that most of the Obscure Routes ONDA challenges are classified as "ways" in the Wilderness Study Area, where mechanical maintenance is prohibited. BLM also notes that many routes in the CMPA are primitive and maintained "by use more than equipment," so safety and use dictate the maintenance provided, and correcting drainage issues is the focus of primitive route maintenance. Defs.' Reply 5. The IBLA noted that although BLM is prohibited from authorizing the construction of new trails for motorized or mechanized use "where a route never existed," BLM "may authorize the use of trails for motorized or mechanized use where an exiting road has been naturally reclaimed to the point that it becomes an *existing trail.*" IBLA Op. at 100-01.

ONDA also argues that the IBLA Opinion improperly affirmed BLM's authorization of motorized travel on about 9 miles of ATV routes. ONDA contends that these ATV routes "will have to be mechanically reconstructed . . . [because] [o]therwise even motorists on an ATV . . . will have to drive around large rocks and eroded gullies--*i.e.*, drive cross-country . . . ." Pl.'s Reply-Response 28. The IBLA determined, however, that ATV routes "are not routes that 'have been *destroyed* by landslides and natural erosion events,'" but rather are "routes that have been *affected* by landslides and natural erosion events to the point that they are no longer safe for full-sized vehicles." IBLA Op. at 102 (quoting ONDA's brief) (emphasis added by the IBLA). BLM states that ONDA's own photographs show the ATV routes on the ground, and argues that these existing ATV routes may be maintained to ensure safety and avoid undue harm. I find that BLM's designation of ATV routes as open to motorized travel is reasonable and does not violate the Steens Act.

I conclude that the IBLA Opinion affirming BLM's inventory of routes is supported by

substantial evidence and is not arbitrary or capricious. I therefore affirm the IBLA's ruling that the TMP did not violate the Steens Act. I also conclude that the CRP does not violate the Steens Act.

## II. ONDA's FLPMA Claim

In the O & O, I remanded the issue whether BLM has violated FLPMA's non-impairment mandate for Wilderness Study Areas, 43 U.S.C. § 1782(c), by designating as open to motorized travel Historical Routes or other routes that either did not exist or came into existence after FLPMA's 1976 effective date. I stated in the O & O, "FLPMA requires BLM to manage the [Wilderness Study Areas] 'in a manner so as not to impair the suitability of such areas for preservation as wilderness, subject, however, to the continuation of existing mining and grazing uses and mineral leasing in the manner and degree in which the same was being conducted on October 21, 1976.'" O & O at *15 (quoting 43 U.S.C. § 1782(c)).

I noted in the O & O, "While ONDA repeatedly objected to an extension of public motorized access, it conceded that continued motorized use by grazing permittees was proper, even if that use was not documented in BLM's late-1970's Wilderness EIS." O & O at *16. Furthermore, I stated that "[i]f indeed the TMP only allows grazing permittees to continue their pre-FLPMA access over what are now termed Historical Routes, I cannot see how those Historical Routes violate the FLPMA, especially since ONDA repeatedly conceded that 'recollected' historic use by permittees would not run afoul of the FLPMA." Id. at *16. However, I noted that ONDA could argue on remand that the TMP either establishes Historical Routes that were not used by grazing permittees before the enactment of FLPMA, or improperly permits the general public to travel on Historical Routes previously used only by grazing permittees.

On remand, the IBLA determined that the TMP allows only grazing permittees to use Historical Routes in Wildlife Study Areas. ONDA argues that if a route has become "overgrown--in effect, 'closed' by nature-- then BLM cannot now designate it as open in the Steens Mountain travel plan." Pl.'s Mot. 39. BLM responds that accepting ONDA's position would in effect punish permittees who do not use an Historical Route frequently enough to

keep it visible on the ground. I agree with BLM that closing overgrown Historical Routes would not be consistent with FLPMA.

ONDA also argues that BLM has not properly documented Historical Routes in Wilderness Study Areas (WSAs). ONDA contends that BLM relied on inadequate evidence of grazing routes, such as the recollection of Dick Jenkins, a rancher, and reports submitted by Harney County. ONDA contends that BLM's Wilderness EIS does not disclose several "pioneered routes" that BLM now contends were in existence when FLPMA was enacted in 1976. However, as discussed above, I agree with the IBLA that BLM's inventory methods were reasonable.

As to the 2015 Comprehensive Recreation Plan (CRP), ONDA argues that the CRP violates FLPMA's non-impairment provision because BLM did not close all of the Obscure Routes potentially reopened by IBLA's 2014 ruling. ONDA argues that these Obscure Routes have been "naturally reclaimed" and no longer exist on the ground.

BLM responds that these routes are not open to the public, and will be used only by grazing permittees, landowners, and BLM and its contractors, and will be maintained only by the passage of vehicles, absent a site-specific NEPA analysis for safety or resource concerns. BLM argues that it is required to provide access for grandfathered grazing, and the Steens Act requires it to provide reasonable access to non-federal lands. I conclude that BLM may designate these routes as open for motorized travel so long as they are used only by grazing permittees and other authorized users.

ONDA also argues that the 2007 Travel Management Plan (TMP) violates a FLPMA regulation, 43 C.F.R. § 8342.1(a)-(c), on minimizing impacts to soil, vegetation, wildlife, air, water, and cultural resources. Pl.'s Mot. 41-42. ONDA contends that the Environmental Assessments for the TMP and the CRP "contain no route-specific discussion in any of their sections addressing these resources." Pl.'s Mot. 42. Because this claim was not included in O & O's list of seven issues to be resolved on remand, BLM argues that ONDA is in effect asking this court to remand a new FLPMA issue to be addressed by the IBLA for the first time, flouting finality and the efficient use of judicial resources. BLM also argues that ONDA's

FLPMA minimization argument fails because the Steens Mountain Resource Management Plan (RMP) previously established off-road vehicle designations, and ONDA litigated and lost a minimization challenge against the RMP designations. *Shuford*, 2007 WL 1695162, at *14. I conclude that even if ONDA may bring a claim that was not included in the issues for remand, ONDA has not shown that it is entitled to prevail on the merits of its FLPMA minimization claim.

### III. ONDA's Wilderness Act Claim

In the O & O, I remanded the issue whether BLM violated the Wilderness Act's non-impairment mandate for wilderness areas by designating as open to motorized travel Historical Routes or other routes that either did not exist or came into existence after the Steens Act's 2000 effective date. *See* 16 U.S.C. § 1133(b). As noted above, on remand, the IBLA ruled that Historical Routes could be used only in limited circumstances by "grandfathered" grazing permittees.

The IBLA had a rational basis for its ruling that the five Historical Routes[5] specified by ONDA could be used only for limited grazing purposes. By interviewing permittees, BLM could reasonably determine the need for, and the existence of, Historical Routes used for salting and reservoir checking. I find no error in the IBLA's determination that the Historical Routes at issue "existed when the [Wilderness Area] was created on October 30, 2000, and on October 21, 1976." IBLA Op. at 115. I conclude that because these Historical Routes exist, and are used only for limited purposes, ONDA has not shown that BLM has violated the Wilderness Act's non-impairment mandate.

### IV. ONDA's NEPA Claims

ONDA claims that BLM violated NEPA by inadequately assessing the environmental baseline and by failing to prepare an Environmental Impact Statement (EIS). NEPA is a

---

5 In the O & O, I noted that "ONDA and BLM's current briefing on ONDA's Wilderness Act claim primarily concerns . . . whether five specific routes (either Historical Routes or Grazing Permit Routes) designated by the TMP violate the Wilderness Act." O & O at *17. Because the IBLA on remand addressed only these five specific routes, on review of the IBLA's decision it would not be appropriate for this court to resolve the merits of any other such routes ONDA challenges now. *See* O & O at *21.

procedural statute that does not mandate particular results, but rather sets a review process to "ensure that federal agencies take a hard look at the environmental consequences of the proposed action." *Sierra Club v. Bosworth*, 510 F.3d 1016, 1026 (9th Cir. 2007).

## A. Inaccurate Baseline Information

ONDA contends that BLM failed to evaluate and disclose an accurate environmental baseline. "The establishment of a 'baseline is not an independent legal requirement, but rather, a practical requirement in environmental analysis often employed to identify the environmental consequences of a proposed agency action.'" *Oregon Natural Desert Ass'n v. Jewell*, 840 F.3d 562, 568 (9th Cir. 2016) (quoting *American Rivers v. FERC*, 201 F.3d 1186, 1195 n.15 (9th Cir. 1999)).

ONDA contends that BLM provided inaccurate information about the existence of routes to the public and the IBLA, leading the IBLA "to believe that the [Travel Management Plan and the Comprehensive Recreation Plan were[6]] merely formalizing 'an existing network' of roads that were already there, not approving motorized use and mechanical maintenance that would . . . result in new disturbance tantamount to cross-country driving and creation of new roads." Pl.'s Reply-Response 17. The IBLA on remand rejected ONDA's NEPA baseline argument. The IBLA concluded that the EA formulated and fully considered "Alternative C," which used ONDA's route inventory and TMP recommendations. I agree with the IBLA that "in summarizing the material offered in support of and in opposition to the designation of 555 miles of routes as open to motorized travel, the EA adequately established the environmental baseline for purposes of BLM's consideration of the likely impacts of the proposed TMP decision." IBLA Op. at 121.

As to the CRP, BLM argues that the CRP adequately explained each Obscure Route that it considered for closure but decided to open. I conclude that BLM acted reasonably in designating a limited number of Obscure Routes as open to motorized travel. I note that Harney County's motion challenges BLM's decision to close some of the Obscure Routes,

---

6 I agree with BLM that ONDA's reference to "the TMP-CRP" inaccurately conflates two independent final agency decisions.

discussed below.

### B. Failure to Prepare an EIS

ONDA contends that BLM improperly failed to create an EIS that would address routes that ONDA asserts "have been naturally reclaimed into the landscape and therefore no longer exist, and routes that are causing resource damage, such as crossing streams or creating erosion problems." Pl.'s Reply-Response 18. NEPA requires agencies considering "major Federal actions significantly affecting the quality of the human environment" to prepare an EIS. 42 U.S.C. § 4332(2)(C). To determine whether an EIS is required, an agency may first prepare a less extensive EA, as occurred here. 40 C.F.R. § 1501.4(b). If the EA finds that the proposed action will significantly affect the environment, the agency then must prepare an EIS. *W. Watersheds Project v. Abbey*, 719 F.3d 1035, 1050 (9th Cir. 2013). If the proposed action is found to have no significant effect, the agency may issue a FONSI "accompanied by a convincing statement of reasons to explain why a project's impacts are insignificant." *Sierra Club*, 510 F.3d at 1018 (quotation marks and citation omitted).

To determine whether the potential environmental effects of an agency action are significant, agencies must evaluate "both context and intensity." 40 C.F.R. § 1508.27. In assessing intensity or "severity of impact," agencies look to the applicable regulatory factors. 40 C.F.R. § 1508.27(b). A court may find a substantial effect based on just one of the "intensity" factors. *Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 865 (9th Cir. 2004). Courts in this district have held that even if no single factor justifies an EIS, an agency may still be required to prepare an EIS when the factors are considered cumulatively. *See, e.g., Cascadia Wildlands v. U.S. Forest Serv.*, 937 F. Supp. 2d 1271, 1283-84 (D. Or. 2013).

Here, ONDA contends that NEPA requires BLM to prepare an EIS based on the following three factors:

> (3) Unique characteristics of the geographic area, such as proximity to historic or cultural resources, park lands, prime farmlands, wetlands, wild and scenic rivers, or ecologically critical areas.

> (4) The degree to which the effects on the quality of the human environment are

likely to be highly controversial.

(5) The degree to which the possible effects on the human environment are highly uncertain or involve unique or unknown risks.

40 C.F.R. § 1508.27(b)(3), (4), and (5).

As to unique characteristics, ONDA contends that opening more than 500 miles of routes to motorized travel may have a significant impact. ONDA cites the potential of motorized travel on the designated routes to fragment sage-grouse habitat, and to cause the spread of noxious weeds.

BLM responds that the EA's analysis of effects on wildlife, including the sage-grouse, was "tiered" to the 2007 EIS prepared with the Steens RMP, which discussed the potential fragmentation issue. The IBLA noted, "BLM concluded, in its EA and DR, that designating the 555 miles of routes as open to motorized travel was not likely to significantly fragment wildlife habitat or otherwise adversely affect wildlife or wildlife habitat." IBLA Op. at 126. The IBLA also noted, "While the motorized use of individual roads and trails will undoubtedly affect sage-grouse, we are not persuaded, given the distribution of roads throughout the 496,136-acre CMPA, which generally provides year-long habitat, and the exclusion of motorized travel during most of the critical breeding season, that the TMP decision may cumulatively impact sage-grouse in a significant manner." IBLA Op. at 127. Conversely, the IBLA stated, "If BLM were to close existing routes to motorized travel, this action would concentrate motor vehicle use on a smaller number of routes, potentially increasing impacts to sage-grouse and other aspects of the human environment." *Id.* As I ruled when addressing a similar issue in *Oregon Natural Desert Ass'n v. Cain*, 17 F. Supp. 3d 1037, 1056 (D. Or. 2014), BLM may reasonably rely on a study indicating that "[f]ragmentation by rarely-traveled dirt roads has not been found to be a negative influence on lek[7] persistence, nor has presence of secondary roads." (Citation and quotation marks omitted.)

As to noxious weeds, BLM notes that the Steens EIS has already addressed this issue for

---

7 "Lek" is an area where sage-grouse gather for courtship display.

the majority of routes in the RMP, finding that while the motorized travel would introduce and spread weeds, management policies would limit the overall spread. In *Cain*, I concluded that BLM had reasonably found that "its [road] maintenance activities would not contribute to the spread of noxious weeds." 17 F. Supp. 3d at 1054-55. The IBLA noted that ONDA has shown "only a difference of professional opinion regarding likely impacts, which is not sufficient to establish a NEPA violation." IBLA Op. at 129. I agree that when specialists' views conflict, the agency "must have discretion to rely on the reasonable opinions of its own qualified expert even if, as an original matter, a court might find contrary views more persuasive." *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, 378 (1989); *see also Cain*, 17 F. Supp. 3d at 1056 (BLM could properly prefer the opinion of its weed expert over that of ONDA's expert).

As to the controversial effects factor, ONDA argues that "nothing could be more 'highly controversial' than BLM's assumption of 556 miles of 'existing' roads, when contrasted with the ONDA inventories and the comments of 20,000 citizens who urged BLM to consider that information and to reduce motorized use on Steens Mountain." Pl.'s Reply-Response 24 (emphasis deleted). In this context, however, "controversial" "refers to disputes over the size or effect of the action itself, not whether or how passionately people oppose it." *Wild Wilderness v. Allen*, 871 F.3d 719, 728 (9th Cir. 2017). BLM notes that "'many commenters asked the BLM to preserve the remaining vehicular routes.'" Defs.' Reply 33 (quoting AR 798). I agree with BLM that the controversy over motorized travel does not rise to a level that would require BLM to prepare an EIS.

As to the uncertainty factor, ONDA argues that the possible effects of BLM's travel plan are highly uncertain because BLM's inventory and methods are so unreliable. Because I have found that BLM did not act unreasonably in creating the route inventory, I disagree that the effects of the TMP and CRP are so uncertain as to require an EIS. *See In Defense of Animals v. U.S. Dep't of Interior*, 751 F.3d 1054, 1070 (9th Cir. 2014) (agency need not prepare EIS unless effects of project are "highly uncertain" (internal quotation and citation omitted)). Rather than authorizing a new activity with an uncertain effect, the TMP instead authorized a continuation of the use of already existing routes. *See* IBLA Op. at 131 (in the EA, BLM "expressly

determined that the likely impacts of designating the routes as open to continued motorized travel was not likely to impact any aspect of the human environment in a highly uncertain manner, because they had been in existence for quite some time"). I conclude that the IBLA reasonably determined that BLM was not required to prepare an EIS for the TMP based on significant impact, controversy, or uncertainty. For the same reasons, I conclude that BLM did not violate NEPA in deciding not to prepare an EIS for the CRP decision.

## V. BLM's and Harney County's Cross-Motions for Summary Judgment

BLM and Harney County have filed cross-motions for summary judgment on Harney County's cross-claims against BLM under the Steens Act and NEPA. Harney County claims that BLM violated its duty under the Steens Act to consult with the advisory council and the public when deciding whether "to permanently close an existing road in the [Cooperative Management and Protection Area (CMPA)] or to restrict the access of motorized or mechanized vehicles on certain roads." 16 U.S.C. § 460nnn-22(c); *see* 16 U.S.C. § 460nnn-51 (defining role of advisory council). Harney County objects to BLM's procedures leading up to the CRP decision to close some Obscure Routes.

BLM contends that it adequately consulted with Harney County about the closures, and Harney County lacks standing to raise this objection. Based on the record, I agree with BLM that it complied with the Steens Act and NEPA in the procedure it used to issue the CRP. Harney County has not shown it was unable to adequately consult on BLM's decision to close some of the Obscure Routes. I need not address standing.

## VI. Motions to Strike

### A. BLM's Motion to Strike

I deny BLM's motion to strike the Seventh Declaration of Chris Miller. Miller's declaration, with attached tables and photographs, gives ONDA's views on the routes it contends should be closed to motorized travel.

### B. ONDA's Motion to Strike

I deny ONDA's motion to strike the Declaration of Stacy Fenton and the attached map. Fenton states the map shows that Miller's declaration indicates more than 30 miles of routes "of

concern" that were never previously cited by ONDA as problems.

## CONCLUSION

ONDA's Motion for Summary Judgment, ECF No. 295, is DENIED. Harney County's Motion for Summary Judgment, ECF No. 293, and Cross-Motion for Summary Judgment, ECF No. 309, are DENIED. The Government's Cross Motion for Summary Judgment as to Harney County's Motion, ECF No. 300, is GRANTED. The Government's Cross-Motion for Summary Judgment as to ONDA's Motion, ECF No. 304, is GRANTED. The Government's Motion to Strike, ECF No. 301, and ONDA's Motion to Strike Notice, ECF No. 324, are DENIED as moot.

IT IS SO ORDERED.

Dated this 13th day of February 2018.

Honorable Paul Papak
United States Magistrate Judge