**Peter M. ("Mac") Lacy (OSB # 013223)**
Oregon Natural Desert Association
917 SW Oak Street, Suite 419
Portland, OR 97205
(503) 525-0193
lacy@onda.org

**Thomas C. Buchele (OSB # 081560)**
Earthrise Law Center
10015 SW Terwilliger Blvd.
Portland OR  97219
(503) 768-6736
tbuchele@lclark.edu

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| **OREGON NATURAL DESERT ASSOCIATION,** | No. 3:09-cv-369-PK |
| Plaintiff, | |
| v. | **OBJECTION TO BILL OF COSTS** |
| **JEFF ROSE**,[1] Burns District Manager, BLM, *et al*., | |
| Defendants, and | |
| **HARNEY COUNTY**, | |
| Defendant-Intervenor-Cross Claimant. | |

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Jeff Rose is substituted as Brendan Cain's successor as the Bureau of Land Management's Burns District Manager.

1

_____

## INTRODUCTION

Pursuant to Local Rule 54-1(b), the Oregon Natural Desert Association ("ONDA") objects to the Bill of Costs (ECF # 65) filed by defendants Jeff Rose *et al*. ("BLM"). In this close case of substantial public importance and posing difficult issues, these and all of the other equitable reasons identified by the Ninth Circuit weigh in favor of denying BLM's cost bill. Even if the Court were to consider it, the bill consists solely of the cost BLM paid to an outside contractor for the convenience of outsourcing "formatting" and "preparation" of an administrative record the agency was already required by law to prepare. Because that is not properly recoverable, because the record itself was extraordinarily difficult to work with and in any event contained thousands of pages of duplicative documents, and due to the public interest nature of this suit, the Court should exercise its discretion to reject BLM's petition and order each party to bear its own costs.

## ARGUMENT

### I.     LEGAL STANDARD

28 U.S.C. § 1920(4) permits recovery of "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." Federal Rule of Civil Procedure 54(d) "grants a federal court discretion to refuse to tax costs in favor of the prevailing party." *Crawford Fitting Co. v. J. T. Gibbons, Inc*., 482 U.S. 437, 442 (1987). Although Rule 54 creates a presumption in favor of awarding costs, this presumption can be overcome if there is a valid reason for requiring the parties to bear their own costs. *Ass'n of Mexican-Am. Educators v. Cal*., 231 F.3d 572, 591–93 (9th Cir. 2000) (*en banc*). In determining whether an award of costs should be denied, the Ninth Circuit has held that

> [a]ppropriate reasons for denying costs include: (1) the substantial public importance of the case, (2) the closeness and difficulty of the issues in the case, (3) the chilling effect on future similar actions, (4) the plaintiff's limited financial resources, and (5) the economic disparity between the parties. This is not "an exhaustive list of 'good reasons' for declining to award costs," but rather a starting point for analysis.

*Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1247–48 (9th Cir. 2014) (citing *Ass'n of Mex.-Am. Educators*, 231 F.3d at 592–93).

## II. THE COURT SHOULD DENY THE COST BILL BASED ON THE NINTH CIRCUIT'S EQUITABLE FACTORS

The Court should require the parties to bear their own costs because all of the equitable reasons identified by the Ninth Circuit are present here. First, this case has "substantial public importance." Steens Mountain is a nationally significant landscape and the lands at issue here are federally-managed, public lands that belong to all Americans. In 2000, Congress passed the Steens Act, charging the Department of the Interior to protect the "long-term ecological integrity of Steens Mountain for future and present generations." 16 U.S.C. § 460nnn-12(a). Interior includes Steens Mountain in its National Landscape Conservation System, established by Congress in 2009 to protect nationally significant places recognized for their outstanding cultural, ecological, and scientific values. *See* Omnibus Public Land Management Act of 2009, Pub. L. No. 111-11, 123 Stat. 991 (codified in scattered sections of 16 U.S.C.). Thus, although this Court after seven years of complex proceedings ultimately held Interior's travel plan decisions to be reasonable, ONDA's work on behalf of all Americans to protect this nationally-important place has been of "substantial public importance." It has only been through ONDA's litigation that Interior was spurred to conduct additional route surveys and, on remand following a summary judgment in ONDA's favor, to actually begin to address serious substantive and procedural flaws ONDA first highlighted during the public process more than a decade ago.

3

Second, the "closeness and difficulty of the issues in the case" also weigh in favor of denying BLM's costs bill. Not only did it take more than seven years to resolve this case, but ONDA won significant rulings each step of the way. In 2011, this Court ordered preliminary injunctive relief in ONDA's favor, in force for almost seven years, which has protected more than 100 primitive or nonexistent routes, stretching nearly 100 miles, from being driven on or mechanically maintained while the case was pending. *See* ECF ## 160, 175, 197, 198, 238 (injunction orders and modifications, including expansion of the injunction in 2015). This Court issued a summary judgment in ONDA's favor in 2011, and remanded to Interior's Board of Land Appeals to address myriad issues the Board had failed to consider when it first approved BLM's travel plan. ECF # 103. And prior to that, the Board had agreed with ONDA in 2008 and again in 2009 that BLM's designation of Obscure Routes violated the Steens Act's prohibitions on off-road motorized travel and creation of new vehicle routes, and FLPMA's non-impairment requirement. AR 53–57, 209–10. Through these rulings, ONDA in fact achieved much of the relief it sought for almost a decade. *See* Second Fenty Decl. (filed herewith) ¶¶ 3–5.

Third, awarding costs to BLM here would have a "chilling effect on future similar actions." ONDA is a non-profit organization that seeks to further the public interest through this litigation. Second Fenty Decl. ¶¶ 3–5 (describing why ONDA brought suit and what it has achieved so far), ¶¶ 6–8 (describing ONDA's legal and other, complimentary program work), ¶¶ 2, 9–14 (describing ONDA's non-profit status and the effect of the government imposing its costs on ONDA's work on behalf of the public interest); *see also* First Fenty Decl. (ECF # 55) at ¶¶ 3–12 (describing the organization). Costs should not be imposed against parties who bring suit in good faith because "the taxation of costs works as a penalty, which should not be imposed unless the loser can fairly be expected to have known at the outset that his position lacked

4

substance." *Rural Housing Alliance v. U.S. Dep't of Agric.*, 511 F.2d 1347, 1349 (D.C. Cir. 1974). Based on the success ONDA achieved throughout most of the litigation, ONDA's positions clearly did not "lack substance." This is a case in which the Court should avoid the "regrettable effect of discouraging potential plaintiffs" who seek to enforce policies of public concern. *Ass'n of Mexican-Am. Educators*, 231 F.3d at 593; *see also Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1022 (9th Cir. 2003) (noting the "chilling effect" of imposing costs on losing public interest plaintiffs).

Next, ONDA's "limited financial resources" and "the economic disparity between" ONDA and the vast U.S. Department of the Interior both weigh in favor of denying BLM's cost bill. ONDA is an Oregon non-profit entity with just seventeen employees. It has limited financial resources and does not budget for this unusual type of government request. Second Fenty Decl. ¶¶ 9–14 (explaining, among other things, that almost all of ONDA's budget goes to program services, and that this is only the second time in ONDA's 30+ year history in which an agency defendant has filed a cost bill); *see also* Third Amended Complaint (ECF # 244) ¶¶ 12–13 (describing plaintiff); *In Re Or. Natural Desert Ass'n*, No. 3:02-mc-00006 (D. Or. Jan. 30, 2017) (ECF # 45, Chief Judge Mosman's order granting ONDA an exemption from PACER fees based on petitioner's stated non-profit, public interest status); *Wild Wilderness v. Allen*, No. 6:13-cv-523-TC, Order (ECF # 58) (D. Or. July 23, 2014) (denying costs, explaining that because agency was "required to create an administrative record for any administrative action it takes, *see, e.g.*, 5 U.S.C. §§ 556(e), 557(c)" it should not be permitted "to recoup costs of a record it is required by law to create").

Finally, this case is distinguishable from the only other time in ONDA's thirty-plus year history that it has faced a cost bill from the government. In *ONDA v. Cain*, No. 2:12-cv-1551-PK

(D. Or. filed Aug. 28, 2012), this Court awarded BLM only $228.17 of the $1,326.97 the agency had requested. Applying the Ninth Circuit standard set out in *Association of Mexican-American Educators*, this Court explained that *Cain* was not an "extraordinary" case in which it would be "inappropriate or inequitable" to award costs. June 23, 2014 Opinion & Order (ECF # 73) at 4. The Court found that ONDA's claims in that case "held little weight and many of its arguments amounted to little more than a mere disagreement with BLM's decision." *Id*. at 4–5.

By contrast, ONDA's claims here were strong enough that, as noted, it won injunctive relief and merits rulings before the Board in 2008 and 2009, a summary judgment from this Court in 2011, and preliminary injunctive relief from this Court in 2011, which the Court then expanded in 2015. A public interest plaintiff in an environmental case will always "disagree" with the agency decision it has decided to challenge. But the important, substantive rulings ONDA achieved over the course of a decade of legal proceedings in this case demonstrate that ONDA's claims were strong—indeed, "likely to succeed" in the Board's and the Court's injunction analyses—going well beyond "mere disagreement" and weak legal claims. *See also* Second Fenty Decl. ¶¶ 3–5 (explaining ONDA's considerations in deciding to bring this challenge, and how ONDA's ongoing surveys are showing how much "sensitive wildlife values and wilderness values" on Steens Mountain have improved during the course of the lawsuit).

In sum, because all of the equitable reasons identified by the Ninth Circuit are present here, the Court should deny BLM's cost bill and require the parties to bear their own costs for this litigation.

### III. ALTERNATIVELY, THE COURT SHOULD DENY THE COST BILL BECAUSE BLM'S COSTS ARE EXCESSIVE AND INAPPROPRIATE

Even if the Court were to consider BLM's Bill of Costs, most of the agency's requested costs do not qualify for an award, and the administrative record BLM produced was so

convoluted and duplicative that BLM failed to carry its burden to properly document and establish the amount of compensable costs. Under FRCP 54(d)(1), the Court may tax only those costs enumerated by statute. *Crawford Fitting Co.*, 482 U.S. at 444–45. "[T]axable costs are limited by statute and are modest in scope" and "limited to relatively minor, incidental expenses." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012); *see also Kalitta Air LLC v. Cent. Texas Airborne Sys. Inc.*, 741 F.3d 955, 958 (9th Cir. 2013) (noting Supreme Court's "close reading of the statute" and stating "we construe § 1920 narrowly"). "Congress meant to impose rigid controls on cost-shifting in federal courts. Thus, a prevailing party's costs are limited to those allowable under 28 U.S.C. § 1920." *Crawford Fitting Co.*, 482 U.S. at 444. "Items proposed by winning parties as costs should always be given careful scrutiny." *Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 235 (1964); *see also Oetiker v. Werke*, 104 F.R.D. 389, 394 (D.D.C. 1982) (costs incurred "for the convenience of counsel" not taxable).

The labor required to "prepare" the administrative record by sorting, indexing, and paginating records—most of which were already in electronic format to begin with—onto CDs or DVDs is not taxable under § 1920. *See Country Vintner of N. Carolina, LLC v. E. & J. Gallo Winery, Inc.*, 718 F.3d 249, 260 (4th Cir. 2013) (organizing and coding of administrative record or electronic files generally is not amongst the statutorily allowed costs); *In re Online DVD-Rental Antitrust Litig.* ("*Netflix*"), 779 F.3d 914, 925–26 (9th Cir. 2015) ("we find persuasive the reasoning of . . . the Fourth Circuit in *Country Vintner*, and [w]e are also guided by the Supreme Court's reiteration, in *Taniguchi*, of the limited reach of § 1920"); *see also, e.g.*, *Tahoe Tavern Prop. Owners Ass'n v. U.S. Forest Serv.*, No. CIV. S-06-407 LKK/GGH, 2007 WL 1725494, at *2 (E.D. Cal. June 14, 2007) ("The labor costs associated with preparing the administrative

record, however, are not included within any of these six categories [of section 1920]; accordingly, they are not compensable to the prevailing party under Rule 54(d)(1)").

BLM fails to explain, as required by Local Rule 54-1 and 28 U.S.C. § 1924, why it should be awarded costs for "preparing" thousands of pages of documents. These are materials that were *already* in electronic format because the agency was required by law, *see* 5 U.S.C. §§ 556(e), 557(c), to create a record—whether those decisions were later challenged in court or not—for its travel plan decisions. *See City of Alameda v. Nuveen Mun. High Income Opportunity Fund*, Nos. C 08-4575 SI, C 09-1437 SI, 2012 WL 177566, at *1 (N.D. Cal. Jan. 23 2012) (party seeking costs bears the burden of "establish[ing] the amount of compensable costs and expenses to which it is entitled"); *Cain*, June 23, 2014 Opinion & Order (ECF # 73) at 5 ("BLM offers no explanation as to how each of these activities qualifies as making copies or why these activities were necessary for preparation of the administrative record"); *Delehant v. United States*, No. 3:10-cv-178-AC, 2012 WL 6455808, at *1 (D. Or. Dec. 13, 2012) ("Simply filing a list of charges without supporting documentation is not 'appropriate documentation'" under LR 54-1 and 28 U.S.C. § 1924).

Still other documents in BLM's administrative record have multiple Bates number stamps on them, meaning that the agency simply added new numbers to materials that it had already prepared and used in prior lawsuits. *See, e.g.*, SAR 1737–3981 (more than 2,000 pages of ONDA's September 2002 wilderness inventory report, with Bates stamps from a prior case); SAR 34–1681 (more than 1,600 pages of BLM's wilderness inventory reports, also with Bates stamps from a prior case). That sort of double-billing is inconsistent with the Supreme Court's and Ninth Circuit's "narrow" construction of § 1920. *See Taniguchi*, 566 U.S. at 573; *Kalitta Air LLC*, 741 F.3d at 958.

BLM's attempt to recoup $1,888.16 for a record it prepared internally for the Department of the Interior's own Board of Land Appeals on remand is similarly inappropriate. *See* Bill of Costs at 4 (invoice for costs Interior incurred preparing a record for its Board, not for this Court). The taxation of costs statute gives courts the authority to award costs incurred "in the case." *See* 28 U.S.C. § 1920. ONDA should not have to pay for project record materials Interior assembled and provided to its own, internal appeals board in order to patch up BLM's and the Board's earlier unlawful decisions. *See, e.g.*, Apr. 28, 2011 Opinion & Order (ECF # 103) at 45–46 (this Court noting Board's "utter failure to seriously consider ONDA's contention that BLM's route inventory and the resulting TMP were flawed" and how "the BLM before [the Board] failed to address ONDA's ground-level photographs"). The proceedings before the Board on remand were internal Department of the Interior proceedings, not District Court proceedings. The Board is a delegated administrative body acting for the Secretary of the Interior. *See* 43 C.F.R. § 4.1 (describing Interior's Office of Hearings and Appeals, which includes the Board, as "an authorized representative of the Secretary" that may decide matters "as fully and finally as might the Secretary").

Finally, large chunks of the administrative record in this case are duplicative.[2] For example, BLM charges for including in the record briefs and declarations that had already been filed in the Court docket. *See, e.g.*, RAR 22033–22110 (duplicate copy of Declaration of Dr. Gelbard, already in the record at ECF # 57) and RAR 22143–22151 (duplicate copy of Declaration of Mark Sherbourne, already in the record at ECF # 69). And BLM's Remand Administrative Record includes a *full copy* of the initial Administrative Record and

---

[2] ONDA's opening summary judgment brief (ECF # 295) at page *ix* provides a Key to Administrative Record Citations that summarizes the various components of the record lodged by BLM, piece by piece, throughout the course of nearly eight years.

Supplemental Administrative Record—meaning BLM is trying to double charge for 18,156 pages of material. *See* ECF # 215-1 (the RAR index, showing that the RAR includes the AR and the SAR, in their entirety, at RAR pages 02681–20837).

BLM also charges for more than 2,000 pages of largely duplicative iterations of Route Analysis Forms ("RAFs") it dumped into the record. *See, e.g.*, SUPP 249–307 (RAFs for Obscure Routes), RAR 0005–1326 (batch of RAFs submitted to Board), RAR 1386–2038 (many of those same RAFs). BLM's decision to *not* seek costs for still more duplicative copies of the RAFs in the Comprehensive Recreation Plan segment of the administrative record suggests the agency at least partly recognizes the unfairness of trying to recoup costs for duplicate materials. *See* CRP 0001–1419 (more RAFs in CRP administrative record); CRP 2715–2893 (more of same RAFs); CRP 3963–4143 (more of same); CRP 4144–4328 (more of same); CRP 4353–4727 (more of same); *see also* Martin Decl. ¶ 4 (BLM "declines" to seek costs for CRP administrative record). On top of this duplication in different parts of the record, versions of almost all of these RAFs had already been filed with this Court in 2011. Fifth Decl. of Rhonda Karges (ECF # 137) & RAF Exhibits (ECF ## 138–146).

In its Bill of Costs and accompanying declarations, BLM makes no attempt to identify exactly how many thousands of pages of these kinds of duplicative and prior-prepared documents there are in the record. *See* Martin Decl. (ECF # 332) ¶¶ 2–4 (simply stating BLM "incurred costs" for "formatting and preparing" administrative record). With only these types of "generic statements," BLM fails to meet its burden to properly document and establish the amount of compensable costs. *See Netflix*, 779 F.3d at 928 ("generic statements on the invoices are unhelpful in determining whether those costs are taxable"); *City of Alameda*, 2012 WL 177566, at *1 (agency's burden).

These problems are emblematic of the fact that the administrative record for which BLM seeks to recoup its costs in preparing was, simply put, a mess that made this case far more difficult than it needed to be. As the Court observed in 2011, "[t]he inventory data provided by BLM in the administrative record is incomplete, hard to understand, and made more inscrutable by the sheer number of different routes, designations, and maps." Apr. 28, 2011 Opinion & Order (ECF # 103) at 43 n.13. BLM had to correct or supplement its administrative record a number of times after ONDA identified missing documents, improperly withheld documents, and other problems such as pagination errors and illegible materials. *See, e.g.*, Notice of Proposed Case Management Schedule (ECF # 270) at 3 (describing same).[3] ONDA should not have to reimburse BLM for an administrative record that had to be completed and corrected so many times.

In short, even if this were not a close and difficult case involving matters of substantial public importance and a non-profit, public interest plaintiff advocating for protection of public lands that belong to all Americans, where the Court should accordingly exercise its discretion to order the parties to bear their own costs based on those equitable factors alone, BLM's cost bill nevertheless is excessive and includes outsourced, non-qualifying, and duplicative items that are not taxable under the law and for which BLM has failed to meet its burden to properly document and establish any reasonable amount of compensable costs.

---

[3] *See also* Defendants' Notice of Lodging of Addition to Supplemental Administrative Record (ECF # 48); May 31, 2012 Opinion & Order (ECF # 175) (ordering BLM to complete administrative record with improperly withheld GIS materials); Sept. 23, 2016 Order (ECF # 280) (ordering BLM to submit further withheld documents for *in camera* review); Dec. 5, 2016 Opinion & Order (ECF # 283) (ordering BLM to produce improperly withheld administrative record documents); Defendants' Notice of Lodging Supplemental Administrative Record (ECF # 284); Defendants' Notice of Lodging Corrected Supplemental Administrative Record (ECF # 288).

## **CONCLUSION**

For these reasons, the Court should deny BLM's Bill of Costs.

DATED this 13th day of March, 2018.        Respectfully submitted,

s/ Peter M. Lacy

_____

Peter M. Lacy
Oregon Natural Desert Association

Of Attorneys for Plaintiff