**BILLY J. WILLIAMS, OSB # 901366**
United States Attorney
District of Oregon
**SEAN E. MARTIN, OSB # 054338**
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR 97204
Telephone: (503) 727-1010
sean.martin@usdoj.gov
        Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| **OREGON NATURAL DESERT ASS'N**, | Case No. 3:09-cv-00369-PK |
| Plaintiff, | **DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR INJUNCTION PENDING APPEAL** |
| v. | |
| **JEFF ROSE, Burns District Manager, Bureau of Land Management, _et al._,** | |
| Defendants, | |
| and | |
| **HARNEY COUNTY**, | |
| Defendant-Intervenor. | |

# TABLE OF CONTENTS

INTRODUCTION ................................................................1

PROCEDURAL AND FACTUAL BACKGROUND ...........................1

LEGAL BACKGROUND .....................................................3

I.    This Court's jurisdiction over a motion for an injunction pending
appeal ....................................................................3

II.    Standard for granting an injunction pending appeal ...............3

ARGUMENT ..................................................................5

I.    Plaintiff fails to establish a likelihood of irreparable harm ...................5

II.    Plaintiff does not establish serious questions on the merits...................9

    A. NEPA ........................................................... 10

    B. Steens Act ..................................................... 13

    C. FLPMA ........................................................ 14

    D. Wilderness Act ............................................... 18

III.    Plaintiff does not establish that the balance of hardships tips sharply in
its favor or that the public interest requires an injunction.................. 20

IV.    An appropriate bond is warranted........................................ 22

CONCLUSION ............................................................... 23

# TABLE OF AUTHORITIES

**Cases**

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) .......... 6

*Alliance for the Wild Rockies v. Pena*, 865 F.3d 1211 (9th Cir. 2017)............. 12

*Auer v. Robbins*, 519 U.S. 452 (1997) ............................................................... 18

*Caribbean Marine Services Co., Inc. v. Balrige*,
    844 F.2d 668 (9th Cir. 1988) ........................................................................ 6

*Center for Competitive Politics v. Harris*,
    784 F.3d 1307 (9th Cir. 2015) ...................................................................... 4

*Developmental Serv. Network v. Douglas*, 666 F.3d 540 (9th Cir. 2011).......... 5

*Golden Gate Restaurant Ass'n v. City and County of San Francisco*,
    512 F.3d 1112 (9th Cir. 2008) ................................................................... 3-4

*Lands Council v. McNair*, 537 F.3d 981 (9th Cir. 2008) ................................ 12

*McClatchy Newspapers v. Cent. Valley Typographical Union No. 46*,
    686 F.2d 731 (9th Cir. 1982) .................................................................... 3, 7

*ONDA v. McDaniel*, 405 Fed. App'x 197, 2010 WL 5018556
    (9th Cir. 2010) .................................................................... 12-13, 16

*ONDA v. Shuford*, No. 06-242-AA, 2007 WL 1695162
    (D. Or. June 8, 2007)............................................... 12,13, 16, 17, 21

*Munaf v. Geren*, 553 U.S. 674 (2008) ............................................................... 4

*Natural Resources Def. Council, Inc. v. Southwest Marine Inc.*,
    242 F.3d 1163 (9th Cir. 2001) ...................................................................... 3

*Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374
(9th Cir. 1985) ................................................ 5

*Oregon Natural Res. Council v. Marsh*,
Civ. No. 85–6433–E, 1986 WL 13440 (D. Or. 1986)........................................ 9

*Overstreet v. Thomas Davis Med. Ctrs., P.C.*,
978 F. Supp. 1313 (D. Ariz. 1997) ................................................ 9

*Protect Our Water v. Flowers*, 377 F. Supp. 2d 882 (E.D. Cal. 2004)............... 9

*S. Utah Wilderness Alliance v. Burke*,
981 F. Supp. 2d 1059 (D. Utah 2013) ........................................ 18

*Save Our Sonoran v. Flowers*, 408 F.3d 1113 (9th Cir. 2005) ........................ 22

*Sierra Forest Legacy v. Sherman*, 646 F.3d 1161 (9th Cir. 2011) ..................... 4

*Stop H-3 Ass'n v. Volpe*, 353 F. Supp. 14 (D. Hawaii 1972) ......................... 6, 9

*Tribal Village of Akutan v. Hodel*, 859 F.2d 662 (9th Cir. 1988) ..................... 3

*United States v. El-O-Pathic Pharmacy*, 192 F. 2d 62 (9th Cir. 1951) ............ 6

*W. Land Exch. Project v. Dombeck*, 47 F. Supp. 2d 1216 (D. Or.1999)............ 5

*WildEarth Guardians v. Montana Snowmobile Ass'n*,
790 F.3d 920 (9th Cir. 2015) ........................................ 18

*Wild Fish Conservancy v. Salazar*, 628 F.3d 513 (9th Cir. 2010) .................. 10

*Winter v. Natural Resources Defense Council, Inc.*,
555 U.S. 7 (2008) ................................................ 4

## TABLE OF AUTHORITIES (cont'd)

**Statutes**

16 U.S.C. § 460nnn-12(b) ............................................................ 21

16 U.S.C. § 460nnn-22(b)(1) ....................................................... 13

**Rules**

Federal Rule of Appellate Procedure 8(a)(1) ...................................... 3

Federal Rule of Civil Procedure 62(c) ............................................... 3

**Regulations**

43 C.F.R. § 8342.1 .................................................................... 17

43 C.F.R. § 8342.2 .................................................................... 17

## INTRODUCTION

As Defendants explain below, Plaintiff fails to establish appropriate grounds for the extraordinary equity of an injunction pending appeal.  This Court should deny Plaintiff's motion.

## PROCEDURAL AND FACTUAL BACKGROUND

In April 2009, Plaintiff brought this action challenging the Bureau of Land Management's ("BLM") travel management in the Steens Mountain Cooperative Management and Protection Area ("CMPA").   ECF 1.  In April 2011, this Court ruled in Defendants' favor on the merits of two issues, and remanded seven other issues for further review by the Interior Board of Land Appeals ("IBLA") without ruling on the merits of those issues.  ECF 103 at 53; ECF 329 at 2.

In 2011, pending the IBLA remand, this Court adopted the BLM's temporary route-maintenance injunction proposal and rejected Plaintiff's proposal.  ECF 160.  Under the temporary injunction, BLM was not to maintain a total of 26 miles of routes, and BLM was restricted to limited/spot maintenance for another 64 miles of routes.  *Id*. at 3.  The injunction was subject to an exception for maintenance related to wildfire management.  *Id*. at 4.  This Court addressed this maintenance injunction in several 2012 rulings, but did not add further routes.  ECF 175, 197, 198.

Page 1 -     DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR
             INJUNCTION PENDING APPEAL; *ONDA v. Cain, et al.;* Case
             No. 3:09-CV-00369-PK

After the IBLA in 2014 reached its decision on remand, Plaintiff challenged that decision and BLM's separate 2015 decision adopting a Steens Mountain Comprehensive Recreation Plan ("CRP"). ECF 329 at 3. In the CRP, BLM re-assessed each "Obscure Route" and decided to close many to public motorized travel. ECF 329 at 3. For other Obscure Routes, BLM documented route existence and valid public uses, and accordingly left those open as "Primitive Routes" for public motorized travel. CRP AR 1447. BLM also left open one Obscure Route as a way recommended for all-terrain vehicles. CRP AR 1441.

In 2015, this Court modified the temporary injunction by barring motorized travel and mechanical maintenance by the general public on all Obscure Routes (Primitive Routes) within the CMPA. ECF 238.

Finally, after hearing cross-motions for summary judgment on Plaintiff's remaining claims in late 2017, this Court granted summary judgment to Defendants on all claims and dismissed this action. ECF 329, 330. This Court's dismissal effectively "dissolved" the temporary injunction. Plaintiff's motion at 3.

On March 30, 2018, Plaintiff filed its motion for injunction pending appeal. ECF 338.

## LEGAL BACKGROUND

### I.    This Court's jurisdiction over a motion for an injunction pending appeal.

Once a notice of appeal is filed, the district court is divested of jurisdiction over the matters being appealed. *Natural Resources Def. Council, Inc. v. Southwest Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001). However, the district court retains the inherent power during the pendency of an appeal to act to preserve the status quo to ensure the effectiveness of the eventual judgment.  *See id.*; *Tribal Village of Akutan v. Hodel*, 859 F.2d 662, 663 (9th Cir. 1988).  To this end, Federal Rule of Civil Procedure 62(c) allows a district court to "restore" an injunction during the pendency of an appeal, "on terms for bond or other terms that secure the opposing party's rights." But Rule 62(c) "does not restore jurisdiction to the district court to adjudicate anew the merits of the case." *McClatchy Newspapers v. Cent. Valley Typographical Union No. 46*, 686 F.2d 731, 734 (9th Cir. 1982).

Pursuant to Federal Rule of Appellate Procedure 8(a)(1), to obtain an order restoring an injunction pending appeal, "[a] party must ordinarily move first in the district court."

### II.    Standard for granting an injunction pending appeal.

In deciding a motion for an injunction pending appeal, courts apply the same standard used to decide a motion for preliminary injunction. *See Golden*

*Gate Restaurant Ass'n v. City and County of San Francisco*, 512 F.3d 1112, 1115 (9th Cir. 2008). Such an injunction is an "extraordinary and drastic remedy" that is never awarded as of right. *Munaf v. Geren*, 553 U.S. 674, 688–90 (2008) (citations and quotation omitted).

In seeking an injunction, the moving party bears the "heavy burden of making a 'clear showing' that it [is] entitled to" such relief. *Center for Competitive Politics v. Harris*, 784 F.3d 1307, 1312 (9th Cir. 2015) (citing *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008)).

The rules for injunctive relief are not altered by the invocation of environmental statutes such as the National Environmental Policy Act ("NEPA"). In NEPA cases, "An injunction should issue only if the traditional four factor test is satisfied," and "no thumb on the scales is warranted." *Sierra Forest Legacy v. Sherman*, 646 F.3d 1161, 1184 (9th Cir. 2011) (citation omitted).

According to the Supreme Court, the party seeking an injunction must establish that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of extraordinary equity, that the balance of equities tips in its favor, and that an injunction is in the public interest. *Winter*, 555 U.S. at 20. The Ninth Circuit has "glossed that standard" by providing for "a 'sliding scale' approach" which allows a plaintiff to obtain an

injunction where it has only shown serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest. *Developmental Serv. Network v. Douglas*, 666 F.3d 540, 544 (9th Cir. 2011) (internal quotes and citations omitted).

## ARGUMENT

### I.    Plaintiff fails to establish a likelihood of irreparable harm.

Two threshold facts highlight that a finding of irreparable harm is unwarranted here.  First, Plaintiff concedes it is unlikely to succeed on the merits, arguing only that there are "serious" questions on the merits of its appeal.  Plaintiff's motion at 7.  Therefore, Plaintiff must – but cannot – establish an especially convincing showing of likely irreparable harm.  "[T]he required degree of irreparable harm increases as the probability of success decreases." *W. Land Exch. Project v. Dombeck*, 47 F. Supp. 2d 1216, 1217 (D. Or. 1999) (quoting *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1376 (9th Cir. 1985)).  Second, Plaintiff fails to argue -- much less establish -- that maintenance or motorized travel on limited routes will moot its appeal.  This undermines its request for extraordinary equity. "Traditionally, the irreparable injury contemplated by Rule 62(c) is that

which will make the appeal moot." *Stop H-3 Ass'n v. Volpe*, 353 F. Supp. 14,

18 (D. Hawaii 1972) (citing *United States v. El-O-Pathic Pharmacy*, 192 F. 2d

62, 79 (9th Cir. 1951)).

Aside from these threshold issues, Plaintiff fails to show a likelihood of

irreparable harm.  In seeking extraordinary equity, the moving party "must

establish that irreparable harm is likely, not just possible." *Alliance for the*

*Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  "Speculative

injury does not constitute irreparable injury sufficient to warrant granting a

preliminary injunction."  *Caribbean Marine Services Co., Inc. v. Balrige*, 844

F.2d 668, 674 (9th Cir. 1988).

Plaintiff argues there is a likelihood of irreparable harm, because the

routes at issue are "nonexistent" and "completely reclaimed by nature."

Plaintiff's motion at 4.  To support this argument, Plaintiff relies on isolated

photos of certain routes.  ECF 339 (Eighth Miller Declaration).  But

Plaintiff's argument runs roughshod over this Court's central recognition that

valid routes under the Steens Act may include those that appear on old maps,

or are noted in reports by local ranchers or other owners, but are no longer

apparent on the ground for the entire length of the route.  ECF 329 at 10-11.

As this Court emphasized, IBLA reasonably interpreted the Steens Act such

that the Act "does not exclude routes that have become overgrown or

6

otherwise naturally reclaimed." *Id.* at 10.  Plaintiff would re-litigate the facts and turn on its head this Court's adjudication of the merits of the route-existence claims.  This is inappropriate, as Rule 62(c) does not restore jurisdiction to the district court to re-adjudicate the case's merits.  *See McClatchy*, 686 F.2d at 734.

Further, for each route identified in Plaintiff's motion (through the Eighth Miller Declaration), there is <u>undisputed evidence of route utility for valid purposes</u> including hunting, wildlife viewing, and access to camping sites.  And there is record evidence of each route's existence:

| Route | Record Evidence of Utility and Existence |
|---|---|
|  |  |
| OR-10 | CRP AR 2728-80, 1447, 1498 |
| OR-4 | CRP AR 2724-33, 1447, 1491 |
| OR-6 | CRP AR 2737-55, 1447, 1491-92 |
| OR-17 | CRP AR 2803-08, 1447, 1494 |
| OR-11 | CRP AR 2781-87, 1447, 1493 |
| OR-28 | CRP AR 2852-54, 1441, 1499 |
|  | ECF 224 ¶ 3 (sworn evidence of utility) |
| OR-29 | CRP AR 2855-57, 1447, 1499 |
|  | ECF 224 ¶ 3 (sworn evidence of utility) |
| BLM Route 103 | ECF 344-1 at 1 |
|  | CRP AR 180-83, 1382 |
| BLM Route KKK | CRP AR 1333-37 |
| BLM Route 112 | CRP AR 188-95, 1392 |

| BLM Route 998 | CRP AR 323-26, 1384 |
|---|---|
| BLM Route 57 | CRP AR 80-83 |
| BLM Route 102 | ECF 344-1 at 5-7<br>CRP AR 176-79, 1382 |
| BLM Route BC18 | ECF 344-1 at 4<br>CRP AR 1155-58, 1384 |
| BLM Route BC15 | ECF 344-1 at 2-3<br>CRP AR 1151-54 1384 |
| Route SMW15 | CRP AR 1373-76, 1388, 1390 |
| Route 114 | CRP AR 198-204 |
| Route 63 | CRP AR 87-89, 1381 |

Plaintiff fails to establish that a court injunction is needed to "protect the environment" from irreparable harm.  Plaintiff's motion at 4.  That is because BLM has no plans to maintain any of the routes at issue in 2018, except if there is an emergency like a wildfire. ECF 344, Declaration of Rhonda Karges ¶ 8.  Further, BLM already provides the public with at least 30 days' advance notice of its intent to maintain the primitive types of routes at issue.  *Id*. ¶ 9. BLM has done so for years and will continue to do so.  *Id*. Therefore, Plaintiff's argument rings hollow that routes, without an injunction, "will suffer the same fate as Burnt Car Road."  Plaintiff's motion at 6.  Nor does BLM have any immediate plans to update its public maps to feature any of the former "Obscure Routes." ECF 344, Declaration of Rhonda Karges ¶ 6. There is simply no emergency that threatens actual, rather than

speculative, irreparable harm.

For these reasons, this Court should deny Plaintiff's motion.

## II.    Plaintiff does not establish serious questions on the merits.

Plaintiff also fails to establish that there are serious questions on the merits that warrant granting it extraordinary equity.

An injunction may be granted when a district court has ruled on an "admittedly difficult legal question." *Oregon Natural Res. Council v. Marsh*, Civ. No. 85–6433–E, 1986 WL 13440, *1 (D. Or. 1986) (declining to grant injunction pending appeal). *Accord Overstreet v. Thomas Davis Med. Ctrs., P.C.*, 978 F. Supp. 1313, 1314 (D. Ariz. 1997); *Protect Our Water v. Flowers*, 377 F. Supp. 2d 882, 884 (E.D. Cal. 2004) (denying injunction pending appeal). Injunctions pending appeal are appropriate "where the trial court is charting a new and unexplored ground and the court determines that a novel interpretation of the law may succumb to appellate review." *Stop H–3*, 353 F. Supp. at 16.

Here, the questions presented to this Court were not legally difficult, and there is no showing that this Court was charting new and unexplored ground or making a novel interpretation of the law. Instead, this Court applied well-established judicial review standards under the Administrative Procedure Act, and the familiar principle that an agency receives deference in

interpreting a statute it is charged with administering.  ECF 329 at 3-4, 7.

Review of whether agency decisions violated environmental statutes, under

the "arbitrary and capricious" standard, did not present novel legal issues.

Under the APA, instead, the court reviews whether the agency "articulate[d]

a rational connection between the facts found and the conclusions made."

*Wild Fish Conservancy v. Salazar*, 628 F. 3d 513, 529 (9th Cir. 2010)

(internal quotation omitted).

Aside from this problem, Plaintiff fails to establish serious questions on

the merits of its claims under NEPA, the Steens Act, the Federal Land Policy

and Management Act ("FLPMA"), and the Wilderness Act.

## A. NEPA

Regarding NEPA, Plaintiff argues there are serious questions on the

merits of its "environmental baseline" claim, because it disagreed with BLM

and IBLA that the routes designated by the Travel Management Plan

("TMP") already existed.  Plaintiff's motion at 8.  But Plaintiff fails to even

reference this Court's analysis and decision on this claim (ECF 329 at 16), or

explain how this Court's decision was legally difficult or novel.  As this Court

explained, IBLA rationally concluded that BLM's Environmental Assessment

("EA") "formulated and fully considered" an alternative based on Plaintiff's

route inventory and recommendations.  *Id*.  As this Court explained, the EA

summarized the material offered both "in support of and in opposition to" the designation of routes for motorized travel, and therefore adequately disclosed the baseline. *Id.* Plaintiff fails to establish how there are serious questions, under the arbitrary and capricious standard, with this Court's ruling for Defendants.

Plaintiff also argues there are serious questions on the merits of its NEPA claim that an EIS was required for BLM's TMP because of "highly controversial" environmental effects. Plaintiff's motion at 9-10. But it fails to establish that its input to BLM during the NEPA process establishes a strong case for a substantial scientific controversy. Plaintiff fails to acknowledge -- much less rebut – IBLA's finding that Plaintiff's use of certain BLM handbooks for its methodology was unsupported in the context of the Steens Act's allowance for motorized travel on roads and trails. RAR 22292 (n.26), 22304-05. As IBLA found, no applicable BLM guidance requires a ground-based photo inventory to establish existence of primitive routes. RAR 22292. *See also* RAR 1349, 1353. BLM's 1978 wilderness inventory handbook, SAR 1-18, addresses procedures for inventorying areas for potential wilderness designation. It does not lay out protocols for assessing routes. SAR 5. The same is true for BLM's 2001 wilderness handbook, RAR 21919-71. Further, the record establishes the 2001 handbook was formally rescinded in 2003.

SAR 3982-83.  It had no bearing on BLM's route methodology for the TMP.

As for a 2011 BLM roads handbook, RAR 21811-53, that was not issued until

four years after the TMP decision and is hardly a basis to find the TMP

decision was arbitrary and capricious.  Nor does it address trails.  Nor, as

this Court recognized, are such agency handbooks binding on BLM.  ECF 329

at 9.

Further, Plaintiff's "EIS-required" NEPA claim is premised on a

quintessential "battle of the experts" about the appropriate standard for

assessing route existence.  In APA review, a court is not to entertain such a

battle. *Lands Council v. McNair*, 537 F.3d 981, 1000 (9th Cir. 2008) (en

banc), *overruling on other grounds recognized by Alliance for the Wild Rockies

v. Pena*, 865 F.3d 1211 (9th Cir. 2017).  And Plaintiff's view is at odds with

the methodology accepted by IBLA.  *See, e.g*., RAR 22292, 22294.  Here, the

role of the court is "simply to ensure that the [agency] made no clear error of

judgment that would render its action arbitrary and capricious*." Lands

Council*, 537 F.3d at 993 (internal quotation omitted).

Moreover, the essence of Plaintiff's "dueling methodology" argument

has already been considered and rejected by this Court and the Ninth Circuit

with specific regard to the CMPA.  *ONDA v. Shuford*, No. 06-242-AA, 2007

WL 1695162 at * 8 (D. Or. June 8, 2007), *aff'd sub nom. ONDA v. McDaniel*,

405 Fed. App'x 197, 2010 WL 5018556 (9th Cir. 2010) (memorandum disposition).  In that case, this Court held that BLM "is under no obligation to agree with ONDA's assessment of routes," and refrained from substituting its judgment for that of BLM.  *Shuford*, 2007 WL 1695162 at * 8.

Plaintiff fails to establish how there are serious questions, under the arbitrary and capricious standard, with this Court's NEPA ruling for Defendants.

## B. Steens Act

Plaintiff argues there are serious questions on the merits of its Steens Act claims because IBLA supposedly made an unprecedented interpretation of the word "road."  Plaintiff's motion at 10-11.  But Plaintiff never articulated this argument prior to this Court's ruling on the merits, and it is therefore no grounds for a viable appeal.

Plaintiff's argument also fails because the IBLA was addressing trails, not just "roads," and the Steens Act allows motorized travel on both roads and trails.  In its summary judgment briefing, Plaintiff did not dispute that IBLA appropriately determined that motorized travel is allowed on both roads and trails under the Steens Act, 16 U.S.C. § 460nnn-22(b)(1).  Instead, Plaintiff conceded the Steens Act allows motorized travel on both kinds of routes.  *See* ECF 313, Plaintiff's reply at 28 ("Whether BLM classifies" any

route "as a 'road' or a 'trail' matter not."); *id* at 27 (stating the Steens Act only prohibits "cross-country driving") (emphasis deleted).

Plaintiff fails to explain why it was irrational for IBLA or BLM to take into account aerial photos or the recollections of local land users, landowners, BLM staff and grazing permittees in documenting trails and roads. RAR 22295-96. Further, Plaintiff conceded it would accept the "recollected" use accounts as evidence for certain routes. ECF 103 at 31 n.7, 32. This debunks Plaintiff's new-found insistence that the Steens Act only allows for motorized travel on "roads" that were improved by mechanical means.

Plaintiff fails to establish how there are serious questions, under the arbitrary and capricious standard, with this Court's Steens Act ruling for Defendants.

### C. FLPMA

Plaintiff argues there are serious questions on the merits of its FLPMA "non-impairment" claim because BLM designated supposedly nonexistent "Obscure Routes" in Wilderness Study Areas ("WSA"). Plaintiff's motion at 11-12.

Plaintiff's argument fails, given its own position in this case. In summary judgment, Plaintiff argued that "contemporaneous (Oregon Wilderness EIS) evidence" is what was required to designate such routes.

14

ECF 313, Plaintiff's reply at 32.  And that is precisely the evidence that BLM
and IBLA recognized for the designation of WSA Obscure Routes.  CRP AR
1478, 1488, 1498, 1500.  As IBLA recognized in its 2014 ruling, the WSA
Obscure Routes were "identified in the original WSA inventory," and "[a]ll
Obscure Routes in WSAs were identified . . . as part of the original WSA
inventories conducted in the early 1980s."  RAR 22314, 22315 (citing AR 9963
and AR 786); AR 9964.[1]

Plaintiff also argues that a BLM handbook prohibits actions that
would cause regression of a WSA's values, if wilderness values have
improved since 1976.  But it fails to establish serious questions on a FLPMA
claim, because it cites no evidence that wilderness values have improved in
any WSA or that any WSA route has become naturally reclaimed as
compared to its condition in 1976.  Further, Plaintiff mischaracterizes the
BLM handbook in the context of primitive routes. The handbook restricts
the re-establishment of primitive routes, if such routes "have been closed
and rehabilitated." RAR 21984.  Here, BLM had not closed and
rehabilitated any of the WSA routes it designated.

---

[1]     According to the Oregon Wilderness EIS, it relied on the work done in
the earlier WSA inventories.  *See* SAR 51/RAR 15741.

Plaintiff also argues there are serious questions on the merits of its FLPMA "minimization criteria" claims, Plaintiff's motion at 12-13.  But with regard to the TMP, no FLPMA minimization-criteria issue was identified to this Court prior to the 2011 remand, nor remanded to IBLA by this Court in its specific remand instructions, nor briefed by the parties or addressed by IBLA before its 2014 remand ruling.  Further, the TMP decision did not comprise the off-road vehicle designations for the CMPA that would trigger the minimization criteria.  Instead, the Steens Resource Management Plan ("RMP") had already made those designations.  AR 10849-50 (RMP provisions establishing the off-highway vehicle designations for the CMPA), 10010 (TMP EA statement recognizing the designations occurred at the RMP level).  And prior to this action, Plaintiff litigated and lost its minimization criteria-based argument against those very RMP designations.  *Shuford*, 2007 WL 1695162 at * 14, *aff'd*, *McDaniel*, 405 Fed. App'x 197.

Similarly, with regard to the CRP, there are no serious questions on a FLPMA minimization-criteria claim, because those FLPMA regulations apply to larger-scale designations of lands available to off-road vehicles, and acts by BLM through which such areas or trails are "located."  43 C.F.R. § 8342.1.  As BLM explained in its earlier briefing, the CRP decision did not comprise an off-road vehicle "designation" under the regulations, because the regulations apply at the broad RMP level, rather than for smaller, stepped-down projects

such as the CRP.  ECF 322, Defendants' reply at 52-55.  Under the regulations, designating an area or trails for off-road vehicles occurs at the RMP level.  *See* AR 10849 (Steens RMP provision, citing the minimization criteria regulations and "designating" the CMPA for off-highway vehicles).

Moreover, Plaintiff in an earlier lawsuit already challenged the underlying RMP's designations with regard to off-road vehicles.  *Shuford*, 2007 WL 1695162 at * 14.  There, this Court recognized "designation of OHV use on public lands occurs at the RMP level," citing the minimization regulations, and concluded BLM "considered a reasonable range of closed and limited road designations."  *Id.*

The CRP was an effort by BLM to consider whether to alter the status of routes.  *See* CRP AR 1424 (noting one of the CRP's goals was to manage recreation "in conformance with" the existing off-road vehicle designation from the underlying RMP); CRP AR 1503, 1504, 1505 (BLM's responses to comments, provided with the CRP decision, stating designations were already made as a part of the RMP in earlier CMPA planning).

BLM's interpretation of its own regulations is due deference, as that interpretation tracks the RMP-level applicability identified in the regulations.  43 C.F.R. § 8342.2(a), (b). An agency's interpretation of its own regulations "is controlling unless plainly erroneous or inconsistent with the

regulation[s]." *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (citations and quotation marks omitted).

Plaintiff's motion relies on *S. Utah Wilderness Alliance v. Burke*, 981 F. Supp. 2d 1059 (D. Utah 2013), and *WildEarth Guardians v. Montana Snowmobile Ass'n*, 790 F.3d 920 (9th Cir. 2015), but those cases illustrate the minimization regulations apply only for overall land-use plans, rather than a much more limited decision such as the CRP. *Burke* applied the minimization regulations to a BLM RMP and its accompanying travel plan, and *WildEarth* applied minimization regulations to a revised Forest Plan (the U.S. Forest Service equivalent of an RMP).

Plaintiff fails to establish how there are serious questions, under the arbitrary and capricious standard, with this Court's FLPMA ruling for Defendants.

## D. Wilderness Act

Plaintiff argues there are serious questions on the merits of its Wilderness Act claim with regard to routes that are available only to "grandfathered" grazing permittees but not the general public. Plaintiff's motion at 13-14; ECF 329 at 15.

Plaintiff does not dispute the merits of this Court's ruling in Defendants' favor for the five routes that Plaintiff specified to IBLA in the remand proceedings. Indeed, Plaintiff told BLM in formal comments that it

supported historic use by ranchers in the Wilderness Area.  *See* AR 12936.

Instead, Plaintiff argues there are serious merits questions, because this Court did not address sixteen permittee-only routes in reviewing the 2014 IBLA decision.  But this is a straightforward matter of failure to exhaust, waiver and/or estoppel, rather than a difficult or novel question under the Wilderness Act.  Five specific Wilderness Area routes were remanded by this Court and briefed to IBLA.  As this Court noted in 2011, Plaintiff disputed whether "five specific routes" violated the Wilderness Act. ECF 103 at 34-35.  Plaintiff's opening brief on the IBLA remand identified and argued just those five routes in its Wilderness Act claim – routes 4, 141, 142, 143, and 144.  RAR 21904-05.  Plaintiff presented nothing on the IBLA remand regarding additional routes for its Wilderness Act claim.  Plaintiff was therefore barred from litigating its Wilderness Act claim on newly targeted routes, because IBLA in formal adjudication relied on Plaintiff's representation the five routes comprised the grazing routes disputed in the Wilderness Act claim.  *See* RAR 22322 (IBLA's 2014 ruling, noting Plaintiff challenged five grazing routes in the Wilderness); ECF 103 at 41 ("[I]t would be inappropriate to resolve the merits of an issue the IBLA did not even address.").

Plaintiff fails to establish how there are serious questions with this Court's Wilderness Act ruling for Defendants.

### III.    Plaintiff does not establish that the balance of hardships tips sharply in its favor or that the public interest requires an injunction.

As Plaintiff acknowledges, it must establish that the balance of hardships tip sharply in its favor, because it does not attempt to establish a likelihood of success on the merits.  Plaintiff's motion at 3-4, 14.

But the hardships do not tip sharply in Plaintiff's favor.  Denying its motion will not moot the issues in its appeal.  Nor does the public interest require an injunction.  It is pure speculation that motorists "searching for routes" will "end up driving cross-country" within the CMPA.  Plaintiff's motion at 14.  BLM is not aware that such illegal user behavior has occurred on the CMPA.  ECF 344, Declaration of Rhonda Karges ¶ 7.  Plaintiff cites a 2007 BLM analysis regarding Obscure Routes, Plaintiff's motion at 15-16, but ignores that BLM comprehensively revisited these routes in its 2015 CRP and found that keeping some open was in the public interest.  *See* CRP AR 1447.

Plaintiff fails to explain how a continued <u>maintenance</u> injunction would prevent off-route driving, when those restricted-maintenance routes (2011 temporary injunction routes) would continue to remain open to motorized

20

travel under the requested injunction.  Barring BLM from maintaining open routes could, instead, negatively affect travel safety and natural resources by preventing erosion control and other important restorative management on at least the 26 miles of proposed "no maintenance" routes.  ECF 112, Declaration of Joan Suther ¶¶ 10-11; ECF 115, Declaration of Eric Haakenson ¶ 3 and Exhibits A through I (photos of damaged CMPA routes requiring maintenance): ECF 151, Declaration of Connie Pettyjohn ¶¶ 8-9; ECF 155, Declaration of David S. Swisher ¶¶ 6-8.

Nor does the balance of hardships tip sharply to Plaintiff, because it mischaracterizes the valid uses of the CMPA.  The Steens Act requires that BLM accommodate multiple uses of the CMPA.  Plaintiff fails to account for the fact the Steens Act directs BLM to "promote grazing, recreation, historic, and other uses that are sustainable" and IBLA's interpretation that these uses "plainly require access into the CMPA."  RAR 22341 (citing 16 U.S.C. § 460nnn-12(b)).  And Plaintiff fails to account for this Court's finding that "BLM must manage the [CMPA] so as to provide a sustained level of livestock grazing." *Shuford*, 2007 WL 1695162 at * 13.

Here, the routes at issue serve the various multiple uses of the CMPA, in allowing for dispersed camping, hunting, wild horse viewing, and grazing monitoring and management. *See*, *e.g.*, CRP AR 1447.  Plaintiff's requested

injunction would tip the scales towards its own interests, at the expense of CMPA opportunities for other members of the public – especially the local residents of Harney County for whom the CMPA is literally their back yard.

That BLM has no 2018 maintenance plans for the routes at issue, and a longstanding 30-day advance notice policy of its intent to maintain such routes, establish that there are no "hardships" on Plaintiff warranting emergency injunctive relief.  If future BLM maintenance plans someday concern Plaintiff, it has every right to pursue appropriate relief with the agency and in court if it believes necessary.  But it is a mistake to pre-emptively "lock up" dozens of (at least 26) miles of open routes from maintenance, when resource and travel safety conditions can and do change without warning.

### IV.    An appropriate bond is warranted.

Federal Rule of Civil Procedure 62(c) allows a district court to restore an injunction pending an appeal, "on terms for bond or other terms that secure the opposing party's rights."  If Plaintiff claims it is unable to post even a nominal bond, it has the burden to demonstrate an undue hardship. *See Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005).

Plaintiff makes no showing that it is unable to post even a nominal bond.  According to its public filings, Plaintiff in 2016 enjoyed annual revenue

of more than $1.5 million and had net assets of nearly $2.1 million.  ECF 337 at 10.

Here, Plaintiff seeks an injunction that will likely persist for several years.  This will complicate CMPA management and restrict valid access to these public lands.  Plaintiff must post an appropriate bond as security.

## CONCLUSION

For these reasons, this Court should deny Plaintiffs' motion.

DATED this 13th day of April, 2018.

> BILLY J. WILLIAMS
> United States Attorney
> District of Oregon
>
>
> */s/ Sean E. Martin*
> SEAN E. MARTIN
> Assistant U.S. Attorney