**Peter M. ("Mac") Lacy (OSB # 013223)**
Oregon Natural Desert Association
917 SW Oak Street, Suite 419
Portland, OR 97205
(503) 525-0193
lacy@onda.org

**Thomas C. Buchele (OSB # 081560)**
Earthrise Law Center
10015 SW Terwilliger Blvd.
Portland OR  97219
(503) 768-6736
tbuchele@lclark.edu

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

**OREGON NATURAL DESERT ASSOCIATION,**

             Plaintiff,

    v.

**JEFF ROSE**, Burns District Manager, BLM, *et al.*,

             Defendants,

    and

**HARNEY COUNTY,**

             Defendant-Intervenor-
             Cross Claimant.

No. 3:09-cv-369-PK

**REPLY IN SUPPORT OF MOTION FOR INJUNCTION PENDING APPEAL**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 1

    I.    STANDARD OF REVIEW ............................................................................... 1

    II.    LIKELIHOOD OF IRREPARABLE HARM .................................................... 2

    III.    "SERIOUS QUESTIONS" ON THE MERITS .................................................. 7

        A.    National Environmental Policy Act .................................................... 7

        B.    Steens Act .......................................................................................... 9

        C.    Federal Land Policy and Management Act ...................................... 11

        D.    Wilderness Act ................................................................................. 13

    IV.    BALANCE OF HARDSHIPS .......................................................................... 14

    V.    PUBLIC INTEREST ........................................................................................ 16

    VI.    NARROWLY TAILORED SCOPE ................................................................. 17

    VII.    NO BOND SHOULD BE REQUIRED ........................................................... 17

CONCLUSION ............................................................................................................... 17

## INTRODUCTION

After a decade of natural reclamation on routes enjoined from specified driving and maintenance, the threat of irreparable harm to the unique and nationally-significant environment of Steens Mountain is in fact greater today than it was in 2011 when this Court first enjoined BLM from conducting maintenance activities on specified roads, and in 2008 when the Board first enjoined designation of the agency's so-called Obscure Routes. BLM's merits-based arguments that these routes "exist" or serve "valid purposes" have no bearing on the crucial issue of irreparable harm: *i.e.*, whether—as this Court previously found—motorized use or mechanical maintenance would convert them from "obscure or non-existent routes . . . into permanent elements of the landscape." Nov. 6, 2012 Opinion & Order (ECF # 198) at 2. Indeed, the agency's overarching error in its response is in not acknowledging that ONDA is simply asking the Court to keep in place the exact same injunction that has been in place for seven years. Because BLM fails to rebut ONDA's showing that the threat of irreparable harm is even greater today, and because ONDA has shown at least "serious questions" going to the merits and that the other factors tip in ONDA's favor, including a balancing of hardships that tips sharply in ONDA's favor, the Court should issue an order that preserves the status quo by restoring the Court's existing driving and route maintenance injunction while this case is on appeal.

## ARGUMENT

### I.    STANDARD OF REVIEW

BLM misstates the Ninth Circuit's "serious questions" test. Citing two cases decided decades before the Supreme Court's decision in *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008) and the Ninth Circuit's subsequent decisions describing its "sliding scale" after *Winter*, BLM claims that a plaintiff that shows "serious questions" on the merits (as

opposed to that it is "likely to succeed" on the merits) must make a heightened showing of irreparable harm. BLM Resp. at 5 (citing *W. Land Exch. Proj. v. Dombeck*, 47 F. Supp. 2d 1216 (D. Or. 1999) and *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374 (9th Cir. 1985)).

      Under the Ninth Circuit's "serious questions" test, "[i]f a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) and *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). In other words, the factor that requires a stronger showing is the balancing of hardships, not irreparable harm. In any event, as ONDA explained, this case does in fact present a situation where the likely irreparable harm is greater today than it was when these routes were first enjoined from driving and maintenance in 2008 and subsequent years.

## II.    LIKELIHOOD OF IRREPARABLE HARM

      ONDA has shown that restoring this Court's long-standing preliminary injunction is necessary to protect the environment. In particular, the underlying environmental concern of overgrown routes being converted to permanent roads on the ground is the same or greater today as it was in 2008 when the Board granted (AR 202) ONDA's stay petition, in 2011 when this Court granted (ECF # 160) ONDA's motion for preliminary injunction, and in 2015 when this Court expanded the injunction (ECF # 238) to include Obscure Routes the Board had resurrected on remand. This is so because by virtue of either not being maintained or not driven for so many

years, they have continued to become naturally reclaimed on the ground. BLM fails to rebut this showing of likely irreparable harm.

First, BLM points to the Court's decision that "valid routes under the Steens Act" may include those that "exist" as a matter of record even if they no longer exist on the ground. *See* BLM Resp. at 6; *see also id.* at 7 ("there is record evidence of each route's existence"). But the definition of a "road" is a disputed legal issue. It has nothing to do with whether driving on or mechanically maintaining these places on the ground will result in environmental damage. In fact, BLM's concession here that some of its roads "are no longer apparent on the ground" (BLM Resp. at 6) underscores ONDA's showing that harm is likely to these reclaimed roads if they are unprotected during the pendency of ONDA's appeal.

Regardless of the definition of a road, mechanical maintenance or motorized use on the overgrown routes covered by the Court's preliminary injunction would irreparably harm the environment, as this Court found seven years ago when it described that "the potential expansion of non-existent routes into roads poses the threat of weed infestation and habitat fragmentation." July 8, 2011 Opinion & Order (ECF # 118) at 11. "[S]ince it is undisputed that roads damage and fragment sage-grouse habitat, the creation of *additional* roads will necessarily increase the threat to sage-grouse habitat." *Id*. BLM recognized this, as well, when it then, at the Court's direction, identified routes it conceded should be included in the Court's maintenance injunction in 2011. *See* ECF # 147 (BLM injunction proposal).

Today, these concerns over impacts of motorized travel networks to Greater sage-grouse in particular are even greater. For example, in its recent sage-grouse-focused amendments to the underlying land use plan for Steens Mountain, BLM decided to apply a disturbance buffer barring "[u]pgrading primitive routes" within four miles of leks. *See* Oregon Greater Sage-

Grouse Approved Resource Management Plan Amendment[1] at 2-7 to 2-8 ([Management Decision] SSS-9 and Table 2-3); *see also* AR 11024 (BLM map showing locations of leks scattered throughout the CMPA). The plan amendment also directs BLM to "[r]educe disturbance to Greater Sage-grouse by evaluating or modifying OHV/ORV designations and route selection in accordance with minimization criteria." *Id*. at 2-30 (Objective TTM 2). It directs BLM to consider closing "duplicative, parallel, or redundant" routes where "resource and/or user conflicts outweigh the purpose and need for the route." *Id*. at 2-31 (MD TTM-1). And it includes as "best management practices" that the agency should "[a]llow primitive roads to be reclaimed naturally." *Id*. at C-11.

Next, BLM argues that each route covered by the injunction has a valid "purpose." BLM Resp. at 7. Again this has nothing to do with whether driving on it or conducting mechanical maintenance activities like continuous blading or vegetation removal will result in irreparable harm to the environment. And BLM already conceded in its 2011 injunction proposal that these routes, despite their claimed valid purposes, nevertheless were appropriate for inclusion in the Court's narrowly tailored injunction in order to avoid irreparable harm to Steens Mountain.

BLM states it has no plans to maintain these routes in 2018. BLM Resp. at 8. Yet the agency refuses to stipulate to this as ONDA proposed during conferral on this motion. Because BLM will not enter into a court-approved, and therefore enforceable, stipulation, ONDA's only recourse is to secure such assurance through a court order restoring the injunction. On top of that, BLM makes no promise whatsoever to uphold or enforce the driving closure on the Obscure Routes brought into the Court's expanded injunction in 2015. *See* Karges Decl. (ECF # 344) ¶ 8

---

[1] *Available at* https://www.blm.gov/or/energy/opportunity/finaleis.php (last visited Apr. 24, 2018).

(stating only that BLM has no current plans "to maintain" Obscure Routes in 2018—but saying nothing about motorized use); *see also* July 8, 2011 Opinion & Order at 12 (although it was "unlikely . . . that BLM currently maintains the allegedly illusory routes that are most concerning to ONDA, . . . the prospect of future maintenance activities on those routes is precisely what motivates ONDA to seek this injunction").

BLM promises to provide "advance notice" if it decides to conduct maintenance on these routes. BLM Resp. at 8. But the agency was required to do so even prior to this Court's 2011 injunction order, based on the still-binding settlement agreement this Court had approved in the "Burnt Car Road" lawsuit. *Or. Natural Desert Ass'n v. Suther*, No. 3:09-cv-862-PK, Order of Dismissal (ECF # 57) (D. Or. Aug. 27, 2010). Under Section III.1 of that Settlement Agreement, which is included in this case's administrative record at RAR 21744, "As long as the current Resource Management Plan for the Andrews/Steens Resource Area is in effect, BLM will provide at least 30 days' notice to the public of the BLM's intent to perform maintenance on Level 2 roads within the CMPA." *See also* July 8, 2011 Opinion & Order at 10 (concluding that BLM's reliance on the "new maintenance policies instituted" following the Burnt Car Road incident was "[not] persuasive").

BLM states it has no plans to update its "public maps" to feature the Obscure Routes. *See* BLM Resp. at 8. Yet, maps showing the locations of the Obscure Routes are already in the public record. CRP 1644–57 (published maps in CRP decision); CRP 1552, 1558 (Table 11 listing location of one Obscure Route open to public ATV use, and Table 13 listing locations of ten Obscure Routes open to public use); AR 803 (published map in TMP decision). And, though none appear to be in the record here, ONDA is aware that BLM's public recreation maps *do* show the locations of the other, unmaintained routes.

5

Finally, BLM argues there is no "emergency" that requires an injunction. BLM Resp. at 8. The standard is not whether there is an "emergency." It is whether there is a "likelihood" of irreparable harm if the Court's injunction is not restored pending appeal. *Winter*, 555 U.S. at 20.[2] In the absence of restoring this Court's long-standing injunction, the harm to these overgrown routes that would result from maintenance or motorized use on them is the type of "environmental injury" that "is often permanent or at least of long duration, *i.e.*, irreparable" and which the Supreme Court and Ninth Circuit have held satisfies this prong. *See, e.g.*, *Alliance for the Wild Rockies*, 632 F.3d at 1135 (citing *Lands Council v. McNair*, 537 F.3d 981, 1004 (9th Cir. 2008) and explaining that "actual and irreparable injury" like the plaintiff's described harm to its "members' ability to 'view, experience, and utilize' the areas in their undisturbed state" satisfies the irreparable injury requirement articulated in *Winter*); *see also* July 8, 2011 Opinion & Order at 11 (describing the threat of "potential expansion of non-existent routes into roads" including weed infestation and habitat fragmentation that will increase the threat to sage-grouse—and therefore "long-term ecological integrity" on Steens Mountain). Harney County's position that its citizens are eager to use the reclaimed routes on Steens Mountain if the injunction is dissolved underscores the likelihood of irreparable harm to the reclaimed routes if the injunction is not restored pending ONDA's appeal. Harney Cnty. Resp. at 7.

///      ///      ///

///      ///      ///

---

[2] BLM also repeats the phrase "extraordinary equity" a number of times in its brief—but that phrase never appears in *Winter* (or any other injunction case that ONDA can find), which explains why BLM never places quotation marks around it. *See* BLM Resp. at 1, 4, 5, 6, 9. *Winter* simply explained that a plaintiff must show a likelihood, rather than merely a possibility, of irreparable harm because a "preliminary injunction is an extraordinary remedy never awarded as of right." 555 U.S. at 24 (quoting *Munaf v. Geren*, 553 U.S. 674, 689–690 (2008)).

### III.    "SERIOUS QUESTIONS" ON THE MERITS

ONDA asks the Court to evaluate whether there are "serious questions" going to the merits, rather than a "likelihood of success" on the merits, in recognition of the Court's ruling that Federal defendants acted lawfully when BLM issued, and the Board approved, the agency's motorized travel plans for Steens Mountain. Rather than ask this Court to now essentially declare that it is "likely" to be reversed on appeal, ONDA argues the Court need only recognize that there are at least "serious questions" going to the merits on appeal. This is consistent with Judge Mosman's articulation as to why it makes sense for district courts to retain flexibility with regard to evaluating likelihood of success. "As between the two, a district court at the preliminary stage is in a much better position to predict the likelihood of harm than the likelihood of success." *Alliance for the Wild Rockies*, 632 F.3d at 1139 (Mosman, J., concurring). Not unlike how a motion for preliminary injunction early in a case typically comes before the court "on an accelerated schedule" and absent the "clarity and development that will come later at summary judgment or trial," a motion for injunction pending appeal also leaves it "almost inimical to good judging to hazard a prediction about which side is likely to succeed" on appeal. *Id*. This is why "the *better* question to ask is whether there are serious questions going to the merits." *Id*. As a practical matter, too, this Court granted summary judgment to ONDA in 2011 on claims nearly identical to those on which it denied summary judgment in 2018—indicating that these are close questions which satisfy the "serious questions" threshold.

#### A.  National Environmental Policy Act

ONDA demonstrated that there are "serious legal questions" on appeal about whether BLM established an accurate environmental baseline and whether it should have prepared an environmental impact statement ("EIS"). BLM responds that it "summarized" materials that

were submitted to it during the public process for the TMP and this is enough to establish an accurate baseline under NEPA. BLM Resp. at 10–11. But all BLM did in the EA is state that "Alternative C is primarily based on input received from ONDA." AR 9967. Nowhere in BLM's description of that alternative (AR 9968–69), nor anywhere else in the EA, did the agency ever disclose or discuss that the "input received"—*i.e.*, detailed inventory reports collected and presented according to BLM's own published methodology, and containing information like ground-based photos that was completely lacking in the agency's own sparse field inventory— fundamentally disputed BLM's assumption that all 555 miles of proposed routes exist on the ground. *See, e.g.*, *Or. Natural Desert Ass'n v. Rasmussen*, 451 F. Supp. 2d 1202, 1212–13 (D. Or. 2006) (holding that BLM has "a responsibility to provide accurate information regarding any changes to the wilderness characteristics" in an area affected by its actions).

And, at the time it released that EA for public review, BLM had not yet adopted its subsequent litigation position that it could *also* legitimately designate routes that exist "only as a matter of record." *See* AR 788 (TMP Decision Record stating that "[t]his decision designated existing routes that can continue to be used by the public"); *see also Or. Natural Desert Ass'n v. BLM*, 625 F.3d 1092, 1120–21 (9th Cir. 2010) (where BLM "never purported to have developed" an alternate methodology and "never advanced such a position in the EIS itself," that *post hoc* rationalization was not entitled to deference). This misled the public and precluded informed decisionmaking. *See Or. Natural Desert Ass'n v. Jewell*, 840 F.3d 562, 570 (9th Cir. 2016) (assumption based on "extrapolation" from different project site "materially impeded informed decisionmaking and public participation").

BLM characterizes the EIS issue as nothing more than a "battle of the experts" under which the Court must defer to BLM's choice of survey methodology. BLM Resp. at 11–12. The

agency fails to grapple with the differences between this case, which presents a "scientific controversy" over the dramatically different environmental effects of using roads that exist on the ground versus those that exist only on a map, and *Wild Wilderness*, in which there was no dispute over the size or location of a proposed parking lot and "only small disputes" over its effects. *Wild Wilderness v. Pierce*, 871 F.3d 719, 728 (9th Cir. 2017). Here, there are substantial disputes over the "size" and "locations" of roads on the ground, and therefore significant disputes about the effects of those roads. These disputes "cast[] serious doubt upon the reasonableness of" BLM's existing-roads assumption. *Nat'l Parks & Conservation Ass'n v. Babbitt*, 241 F.3d 722, 736 (9th Cir. 2001).

Likewise, BLM is silent about the fact that in the 42 years since FLPMA was enacted in 1976, the Department of the Interior has never defined a road as something that exists only on paper. *See* SAR 004 (BLM "uses the one definition found in the [FLPMA] legislative history, exactly"). And the agency persists (BLM Resp. at 12–13) in mischaracterizing the issues and holding in *Shuford*, which only dealt with the presence or absence of wilderness areas for purposes of reviewing the effects of a 1.6 million acre land use plan. *See* ONDA Motion for Inj. Pending Appeal (ECF # 338) at 13 (and references therein). Whether or not BLM "agrees" with ONDA's "assessment of routes" (BLM Resp. at 13), the agency still must, under NEPA, take a "hard look" at the environmental impacts of its route and maintenance designations. *See, e.g.*, *ONDA*, 625 F.3d at 1122 ("It is fairly debatable issues of this kind that NEPA was designed to bring out in the open, for analysis and discussion in the service of sound decisionmaking.").

**B.  Steens Act**

ONDA explained that there are "serious legal questions" on appeal about whether BLM's route and maintenance designations violate the Steens Act's prohibitions against off-road driving

and establishment of new roads. BLM complains (BLM Resp. at 13) that ONDA never contested the Board's interpretation of the term "road," but that is wrong. *See, e.g.*, ONDA MSJ (ECF # 295) at 22 ("The Steens Act and BLM's long-standing definition of what is a 'road' make clear that Congress intended to limit motorized travel to routes that actually existed on the ground at the time the Act passed in 2000."); ONDA MSJ Reply-Resp. (ECF # 313) at 26–29 (further explaining why Board's "as a matter of record" definition is inconsistent with the plain language of the Steens Act and Congress's intent). And the agency fails to address this Court's prior ruling that Congress is presumed to have chosen its words purposefully in proscribing certain types of motorized travel in the Steens Act. *Or. Natural Desert Ass'n v. BLM*, 143 F. Supp. 3d 1064, 1071 (D. Or. 2015).

BLM repeats its "trails" argument (BLM Resp. at 13), but does not address how authorizing driving and mechanical maintenance on a route that exists only on paper can be consistent with the Act's ban on what—if there is no path on the ground—can only constitute driving cross-country. *See* ONDA MSJ Reply-Resp. at 27–28.

BLM points out that it may consider aerial photos and local interviews in preparing its travel plan for Steens Mountain. BLM Resp. at 14. But the agency is silent as to why its failure to consider ground-based survey information, provided to it during the NEPA process and which showed that some of its proposed routes do not exist, is not a "fail[ure] to consider an important aspect of the problem" and leading to "an explanation for its decision that runs counter to the evidence before the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (failures which render an agency decision arbitrary and capricious).

///        ///        ///

///        ///        ///

### C.  Federal Land Policy and Management Act

ONDA explained why there are "serious legal questions" on appeal as to whether BLM's designation of nonexistent routes in WSAs will unlawfully impair wilderness character and whether BLM's failure to apply the minimization criteria violated FLPMA. BLM claims it identified all the Obscure Routes "in the original WSA inventory" (BLM Resp. at 15), but it only provides record citations to general statements claiming routes "were documented" in 1979—not to any actual evidence. Even if there were such evidence, if the routes have become overgrown since that time then BLM's wilderness handbook prohibits the agency from reestablishing them today. RAR 21983–84.[3]

BLM misleads the Court by claiming that the handbook only restricts reestablishment of routes that "have been closed and rehabilitated." BLM Resp. at 15. In fact, the quoted sentence states in full, "For example, if primitive routes have been closed and rehabilitated the BLM will not permit them to be reestablished." RAR 21984. And as the sentence which precedes that makes crystal clear, "If wilderness characteristics have improved since 1976 for a particular WSA . . . it is the policy of the BLM to not allow actions that would cause the regression of the WSA to its 1976 . . . condition." RAR 21983–84. And further down that same page, BLM provides another example, this one more relevant to the facts here:  "cross country vehicle use

---

[3] The Court is incorrect that the handbook is "not binding" on BLM. Feb. 13 Opinion & Order (ECF # 329) at 9 (citing *Moore v. Apfel*, 216 F.3d 864 (9th Cir. 2000)). The internal agency manual at issue in *Moore* "was not promulgated in accordance with the procedural requirements imposed by Congress for the creation of binding regulations and was not intended to be binding." *Id*. at 869. By contrast, BLM's wilderness management handbook at issue here *is* enforceable because it is expressly incorporated into the governing land use plan, the CMPA RMP (at AR 10455). *Ecology Ctr. v. Castaneda*, 574 F.3d 652, 660 (9th Cir. 2009) ("where an otherwise advisory document has been clearly incorporated into a Forest Plan or other binding document, its requirements become mandatory"); *see also* 43 U.S.C. § 1732(a) (BLM shall manage the public lands "in accordance with the land use plans developed" pursuant to FLPMA).

off boundary roads or existing primitive routes is surface disturbing [and therefore violates the non-impairment standard] because the tracks created by the vehicle leave depressions or ruts compact the soils and trample or compress vegetation." RAR 21984.

BLM argues ONDA waived its minimization criteria issue because it was not briefed before the Board on remand. *See* BLM Resp. at 16. The Court rejected that argument. Feb. 13, 2018 Opinion & Order at 15 (declining to rule on BLM's waiver argument and instead ruling on the merits of this claim).

Next, BLM argues the minimization criteria apply only for "landscape-scale designations" at the land use plan level. BLM Resp. at 16–17. That is incorrect. The plain language of the executive orders and BLM's regulations make clear that the criteria apply *both* to designations of landscape-scale *areas* available for cross-country off-road vehicle travel and to subsequent designations of *specific routes* open to motorized use. Exec. Order 11644, § 3(a) (referencing "specific areas and trails"); 43 C.F.R. § 8342.1 ("[a]reas and trails"). In its travel planning manual, BLM acknowledges that it must apply the criteria "in making individual road, primitive road, and trail designation decisions." BLM Manual 1626 – Travel and Transportation Management, at 1-15.[4] Courts have made clear that "[t]he analysis of the minimization criteria must take place at the route specific level, not in some general sense." *S. Utah Wilderness Alliance v. Burke*, 981 F. Supp. 2d 1099, 1105 (D. Utah 2013) (reviewing a travel management plan prepared as part of a resource management plan, just as is the case here).

BLM next argues that in any event it already applied the criteria in the Andrews-Steens Resource Management Plan. That too is wrong. As Judge Aiken previously concluded, BLM had considered the broad-scale "areas" designated in the RMP "as open, limited or closed to the use

---

[4] *Available at* https://www.blm.gov/media/blm-policy/manuals (last visited Apr. 24, 2018).

of off-road vehicles." *Or. Natural Desert Ass'n v. Shuford*, 2007 WL 1695162, *14 (D. Or. June 8, 2007) (citing 43 C.F.R. §§ 8340.0-1, 8342.2). But BLM did not apply the minimization criteria to *specific routes* designated within those areas, instead expressly deferring that task to the Travel Management Plan process. AR 10847; *see also Shuford*, 2007 WL 1695162, at *17 (citing same); SAR 4962–63 (BLM land use planning handbook explaining agency can defer designation of specific routes to a subsequent travel planning process, as it did here for Steens Mountain).

### D.  Wilderness Act

ONDA showed that there are "serious legal questions" on appeal as to whether BLM's designation of twenty-one Historical Routes in the Steens Mountain Wilderness Area violates the prohibition against impairment of the Area's wilderness character. In particular, ONDA pointed to the sentence in its administrative appeal where it expressly told the Board that it challenged all "12.8 miles of Historical Routes in the Steens Mountain Wilderness Area." RAR 21767. It was arbitrary and capricious of the Board to refuse to review sixteen of the twenty-one routes covered by those 12.8 miles.

BLM complains that ONDA "presented nothing" to the Board about those sixteen routes. BLM Resp. at 19. That is not in fact true. ONDA explained to the Board that BLM defined the Historical Routes as "currently hard to locate and/or were not identified during the [WSA] inventory process." RAR 21893 (quoting AR 9964); *see also* RAR 21903 (indicating that the same non-impairment argument applies for Historical Routes in Wilderness under the Wilderness Act, as applies for those in WSAs under FLPMA). ONDA pointed out BLM's concession in the EA that "[n]ot all Historical Routes within the CMPA have been mapped." RAR 21899 (quoting AR 9964). In response, BLM addressed Historical Routes 4, 141, 142, 143,

and 144, and ignored the rest, telling the Board there was only "specific record evidence" for

those five routes. RAR 2090. BLM fails now to explain what more ONDA needed to do other

than raise the issue that there was no evidence in the administrative record to support designation

of these Historical Routes. BLM's failure to point to evidence that these sixteen routes exist, and

the Board's failure to address them despite the fact that ONDA clearly raised the issue, present

"serious questions" as to lawfulness of BLM's designation, and the Board's approval, of

Historical Routes in the Steens Mountain Wilderness Area. *Motor Vehicle Mfrs.*, 463 U.S. at 43

(agency action arbitrary and capricious if it "entirely failed to consider an important aspect of the

problem").

## IV.    BALANCE OF HARDSHIPS

ONDA established that the balance of equities tips sharply in its favor. BLM does not

appear to dispute that cross-country or mechanical maintenance on overgrown or nonexistent

routes would, at least as a general matter, result in "permanent" or "long duration"—that is,

"irreparable"—environmental damage. In fact, neither BLM nor Harney County articulates any

particularized hardship from continuing the injunction that neither has sought to lift over the

course of the past seven years.

Rather, BLM merely argues it is "speculation" that motorists searching for overgrown

routes will end up driving cross-country. BLM resp. at 20. BLM's local Field Manager states she

is "not aware that any off-route travel 'searching for routes' has occurred in the CMPA." Karges

Decl. (ECF # 344) ¶ 7. But BLM's own administrative record undermines her claim. For

example, as ONDA pointed out to both BLM and the Board, eight of the eleven Historical

Routes BLM designated in the TMP within the Bridge Creek Wilderness Study Area ("WSA"),

were illegally "pioneered" by motorists driving off of or beyond the three routes that BLM had

identified and designated in its original wilderness inventory for that area. *See* RAR 21802–03, 21852, 21901–02 (ONDA briefs to Board, and record citations therein). BLM cannot with a straight face claim it is "not aware" of "off-route travel" on Steens Mountain.

BLM suggests it would be a hardship on the agency if it cannot maintain these routes for "travel safety," "erosion control," and "other important restorative management." BLM Resp. at 21. Yet, the agency cites some of its own 2011 declarations in which BLM staff conceded that these very routes should be included in the Court's injunction. *See id.* (citing ECF ## 151, 155). And, as ONDA noted, neither BLM nor Harney County has ever once in seven years asked the Court to lift or otherwise modify the injunction—suggesting the agency and County are suffering no hardship whatsoever in foregoing maintenance of these routes. In 2014, for example, BLM informed this Court that the agency "will not pursue lifting the existing injunction[] until Feb. 1, 2016, so as to allow time to brief and obtain a ruling on the merits of ONDA's challenge to the IBLA's ruling on remand." Joint Status Report (ECF # 205) at 2. Of course, BLM and Harney County never filed a motion to lift the injunction on February 1, 2016, nor at any other time in the two-plus years since then.

Simply put, the balance of harms is between the likely alteration of routes that are currently obscure or non-existent into permanent features on a protected landscape on one hand, and the generic appeals to administrative convenience and desire for access to the enjoined routes by BLM and Harney County on the other. Because neither BLM nor Harney County has articulated a particularized hardship from continuing the injunction that neither has sought to lift, the balance of harms tips sharply in ONDA's favor.

///      ///      ///

///      ///      ///

V.    **PUBLIC INTEREST**

ONDA showed that the public interest in preserving this nationally-significant and specially-protected landscape and ensuring BLM complies with the law before fully implementing its travel plan for Steens Mountain weigh in favor of restoring the Court's long-standing and narrowly-tailored injunction. BLM responds that it must "accommodate multiple uses" on Steens Mountain. BLM Resp. at 21. But, as ONDA pointed out, FLPMA's "multiple use" mandate that generally governs management of most BLM-administered public lands, 43 U.S.C. § 1732(a), is superseded in the Steens Act, which provides that the singular purpose of the CMPA is not multiple use, but rather to "conserve, protect, and manage the long-term ecological integrity of Steens Mountain for future and present generations." 16 U.S.C. § 460nnn-12(a).

Yes, multiple uses are allowed on Steens Mountain, but only if any approved activity complies with the fundamental mandate to conserve "long-term ecological integrity." Again, the injunction includes routes BLM itself proposed, still leaves far more other routes open to driving and maintenance, and explicitly recognizes BLM's retained authority to travel anywhere in the CMPA for administrative purposes or to respond to an emergency. *Id.* § 460nnn-22(b)(2)(A). In short, there is no "critical public interest that would be injured by the grant of preliminary relief." *Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 596 F.3d 1098, 1114–15 (9th Cir. 2010). Accordingly, the public interest is furthered by restoring this Court's existing injunction while the Ninth Circuit considers the merits of ONDA's appeal.

///       ///       ///

///       ///       ///

///       ///       ///

## VI.    NARROWLY TAILORED SCOPE

BLM does not dispute ONDA's showing that the scope of the injunction remains narrowly tailored to the harm involved—likely in recognition that the 2011 portion of the injunction comes from BLM's own proposal.

## VII.    NO BOND SHOULD BE REQUIRED

ONDA explained why no bond should be required in this public interest case seeking to protect the environment, and where BLM has not sought in seven years to lift or otherwise modify the injunction. BLM urges the Court to require a bond, but fails to specify what its "rights" are that would result in any damages or costs from a reinstatement of the injunction pending ONDA's appeal. *See* BLM Resp. at 22. BLM also argues that the restoration of the injunction will "complicate" management of the CMPA but provides no example of how any such complication has resulted from the Court- and Board-imposed injunctions over the past seven to ten years. *See id.* at 23.

## CONCLUSION

For these reasons, the Court should restore the preliminary injunction barring motorized use and/or mechanical maintenance on specified routes described in this Court's orders at ECF ## 160, 175, 197, 198, 238.

DATED this 24th day of April, 2018.               Respectfully submitted,

s/ Peter M. Lacy
_____
Peter M. Lacy
Oregon Natural Desert Association

Of Attorneys for Plaintiff