**Peter M. ("Mac") Lacy (OSB # 013223)**
Oregon Natural Desert Association
2009 NE Alberta St., Suite 207
Portland, OR 97211
(503) 525-0193
lacy@onda.org

**Thomas C. Buchele (OSB # 081560)**
Earthrise Law Center
10015 SW Terwilliger Blvd.
Portland OR  97219
(503) 768-6736
tbuchele@lclark.edu

**David H. Becker (OSB # 081507)**
Law Office of David H. Becker, LLC
4110 SE Hawthorne Blvd. # 168
Portland, OR 97214
(503) 388-9160
davebeckerlaw@gmail.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **OREGON NATURAL DESERT ASSOCIATION,** | |
| Plaintiff, | No. 3:09-cv-369-JR |
| v. | **DECLARATION OF PETER M. LACY** |
| **JEFF ROSE**, Burns District Manager, BLM, *et al.*, | |
| Defendants, | |
| and | |

**HARNEY COUNTY**,

       Defendant-Intervenor-
       Cross Claimant.
_____

I, Peter M. Lacy, state and declare as follows:

   1.  The following matters are personally known to me and, if called as a witness, I would and could truthfully testify thereto. I make this declaration in support of the Oregon Natural Desert Association's ("ONDA") application for an award of costs, fees, and other expenses under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 *et seq*.

   2.  I have served as lead counsel in this matter from its inception in 2007. I contemporaneously compiled the hours I spent litigating this matter. I attach my time records to this declaration as **Exhibit A**—including, at page 1, a table providing an overview of all of the costs, fees, and other expenses sought. **Exhibit B** to this declaration includes the time records for the other attorneys and law clerks that worked on this case on behalf of ONDA—with the exception of co-counsel David Becker and Thomas Buchele, whose time and expense records are attached to their respective declarations, and fee counsel Stephanie Parent, Karl Anuta, Lauren Rule, and Stephen Bloch, whose time records are likewise attached to their respective declarations. **Exhibit C** to my declaration includes a record of ONDA's costs and other expenses.

   3.  Throughout this case, I have exercised professional judgment in recording time, including by eliminating unnecessary, redundant, or duplicative entries. As lead attorney, I have also supervised all other attorneys and law clerks that have worked on this case and have reviewed their time records prior to making this declaration. After carefully reviewing my time entries for this case, as well as the entries for my co-counsel, outside attorneys, and law clerks, it

is my opinion that the total hours ONDA seeks through this petition is reasonable given the amount of work performed and the result obtained.

4.      I am entitled to market rates above the EAJA statutory rate because of my unique expertise and experience in environmental law and litigation, administrative law, and federal courts practice. The specialized knowledge and skills I possess were necessary for this case and were not available to ONDA at the EAJA rate.

## QUALIFICATIONS

5.      I obtained a Bachelor of Arts degree from Washington & Lee University in 1996 with a dual major in Geology and Anthropology. I obtained a Master of Science degree in Geography from the University of Wisconsin-Madison in 1998. I graduated *cum laude* in 2001 from Lewis & Clark Law School, where I earned the Environment and Natural Resources Law Certificate, received the Bernard O'Rourke Award for published work, and was named to the Cornelius Honor Society. During law school, I clerked for Senior District Judge Owen M. Panner in the U.S. District Court for the District of Oregon, from June 2000 to August 2000, in Portland, Oregon.

6.      I am an active member of the State Bar of Oregon, and I am admitted to practice law in the U.S. District Court for the District of Oregon and the U.S. Court of Appeals for the Ninth Circuit. I have also been admitted to practice *pro hac vice* in the U.S. District Court for the District of Columbia.

7.      I am Senior Attorney for the Oregon Natural Desert Association. Founded in 1989, ONDA is a non-profit, public interest organization whose mission is to protect, defend, and restore forever Oregon's high desert. It is the only conservation organization dedicated exclusively to protecting eastern Oregon's native deserts. In addition to campaigns focused on

protecting millions of acres of public land in eastern Oregon through special designations or other conservation management, and restoration projects engaging hundreds of volunteers every year to remove barbed-wire fences, plant trees and take other actions restore and reconnect fragmented and degraded habitats for wildlife and fish, ONDA also uses strategic litigation in complex environmental and natural resource cases to help accomplish its mission. After clerking for ONDA as a law student starting in 1999, I was hired as a staff attorney in 2001. I was promoted to the position of senior attorney when ONDA hired a second attorney in 2005.

8.      During my 19 years of practice, I have developed expertise in environmental and public interest litigation, administrative law and process, trial and appellate court practice and procedure, fee recovery, and also client counseling unique to my role as long-time in-house counsel for ONDA. I am lead or co-counsel on all of ONDA's active litigation, including actions in federal district and appellate courts, the Oregon Supreme Court, and administrative actions pending before government agencies or administrative bodies. I list in **Exhibit D** to this declaration notable cases for which I have served either as lead or co-counsel for ONDA, to demonstrate the variety of federal environmental laws and agency decisions or projects on which I have worked for ONDA and its partners over the years.

9.      I have been an invited speaker on environmental law and public interest litigation issues at continuing legal education programs and seminars, including giving presentations on the EAJA and other fee-shifting provisions of federal law. Most recently, I spoke at the Oregon State Bar Environmental and Natural Resource Section's annual litigation update CLE in October 2019, where I focused part of my presentation on this case. I also have given presentations to high school, graduate, and law school students about my work for ONDA, and have published articles on relevant topics in environmental law. *See, e.g.*, Peter M. Lacy,

*Conservation, Ecology, and Legal Status of the Greater Sage-Grouse*, Oregon State Bar,

Environmental & Natural Resources Law Section, *E-Outlook* Issue 1 (2019); Peter M. Lacy, *The*

*(Legal) Plight of the Greater Sage-Grouse*, The Federal Lawyer, June/July 2018, at 32–37, 73–

74 (recent publications on Greater sage-grouse conservation issues).

10.      My cases have involved the National Environmental Policy Act ("NEPA"), the

Federal Land Policy and Management Act ("FLPMA"), the National Forest Management Act

("NFMA"), the Wild and Scenic Rivers Act ("WSRA"), the Endangered Species Act ("ESA"),

the Wilderness Act, the Steens Mountain Cooperative Management and Protection Act ("Steens

Act"), and other federal statutes and regulations. Central to my practice as an environmental

litigator is a comprehensive understanding of administrative law, including the Administrative

Procedure Act ("APA") and the Freedom of Information Act ("FOIA"), which itself revised the

public disclosure section of the APA in 1966. 5 U.S.C. § 1002 (1964) (enacted in 1946, amended

in 1966, and now codified at 5 U.S.C. § 552). *See* Exhibit D (case list).

11.      I note in particular that I have litigated many cases involving the Steens Act.

Between ONDA's exclusive focus on public lands in eastern Oregon's high desert, and the fact

that my career with ONDA began just as the Steens Act was passed into law, I have, to my

knowledge, litigated or been involved in every federal court action that has ever involved a claim

under this unique conservation law. *See* Exhibit D (identifying more than a dozen legal actions

involving Steens Mountain and the Steens Act). I have also handled scores of administrative

actions (regulatory protests and appeals) and public comment submissions involving Steens

Mountain and the Steens Act, on issues ranging from livestock grazing to vegetation

management, from land exchanges to private lands access, from mining and energy development

4

to feral horse control, and from land speed record tests to permits for filming television commercials.

12.    In addition to ONDA, I have represented many other public interest environmental organizations that have joined ONDA as co-plaintiffs or -appellants in federal and state courts and administrative actions. These include American Rivers, Audubon Society of Portland, Cascadia Wild, Center for Biological Diversity, Central Oregon Audubon Society, Central Oregon LandWatch, Committee for Idaho's High Desert, Defenders of Wildlife, Friends of Living Oregon Waters, Forest Guardians, Great Old Broads for Wilderness, Greater Hells Canyon Council, Humane Society of the United States, Klamath Siskiyou Wildlands Center, National Parks and Conservation Association, National Wildlife Federation, Northwest Environmental Defense Center, Oregon Sierra Club, Oregon Trout, Oregon Wild, Oregon Wildlife Federation, Rest the West, Sierra Club, Siskiyou Regional Education Project, Soda Mountain Wilderness Council, Southern Oregon Forest Coalition, and Western Watersheds Project.

13.    My work with these groups over the years on a wide variety of public land, water, wildlife, and pollution control projects has reaffirmed my conviction that meaningful public participation, which leads to and is necessary for informed agency decisionmaking, always and without exception begins with the public having fair and timely access to full and accurate government information—including government agencies' evaluation of that information. Informed public participation and "democratic decisionmaking" by federal agencies are the core purposes of NEPA. *See Or. Natural Desert Ass'n v. Bureau of Land Mgmt.*, 625 F.3d 1092, 1099 (9th Cir. 2010) (describing NEPA's "democratic decisionmaking structure"). That was at the heart of this case, in which the Ninth Circuit held that the Bureau of Land Management ("BLM")

and the Interior Board of Land Appeals ("IBLA") violated NEPA by failing to establish and disclose baseline environmental conditions about proposed roads on Steens Mountain, failing to disclose route analyses and photographs to the public during the public comment periods, and arbitrarily changing a long-standing definition of a "road" in a late stage of the administrative proceedings.

## OTHER COUNSEL AND CONSULTANTS

14.    As senior attorney for ONDA and lead counsel in this action, I have supervised or been closely involved in ONDA's legal and other staffing decisions throughout this case. In this section, I will briefly describe in-house and outside counsel (besides Mr. Becker and Mr. Buchele, who submit their own declarations) who assisted with the litigation, and the consultants who played key roles in ONDA's success.

## ONDA Legal Fellow

15.    **Emily Feenstra (J.D. 2014)** served as an ONDA Legal Fellow and worked on this case in 2014–2015. I attach as part of Exhibit B to this declaration Ms. Feenstra's time and expense records for her work on the case.

16.    Ms. Feenstra is admitted to practice law in the State of Oregon and the Federal District Court for the District of Oregon. In 2014, Ms. Feenstra graduated from Washington & Lee University Law School. She was a Washington & Lee Moot Court Client Counseling winner (2013) and finalist (2012) and ABA Regional Competition semi-finalist (2012), as well as a Washington & Lee Moot Court Negotiations semi-finalist (2012). During law school, Ms. Feenstra also gained practical experience clerking for the International Criminal Court, Office of Public Counsel for the Defense of the Registry in The Hague, The Netherlands in 2013, clerking for the Egyptian-American Rule of Law Association in Washington, D.C. in 2012, and serving as

a research intern for the Meiklejohn Civil Liberties Institute in Berkeley, California, also in 2012.

17.    Ms. Feenstra worked as an ONDA Legal Fellow from September 2014 through February 2015. During that time she represented ONDA, under my supervision, on a number of projects and cases including this one. Also during that time, I served as Ms. Feenstra's attorney mentor under the Oregon State Bar's *New Lawyer Mentoring Program*. Following her fellowship with ONDA, Ms. Feenstra accepted a position with the Bend-based law firm, DeKalb and Associates, specializing in criminal defense law. Today, she works for the Alaska Attorney General's Office, Alaska Department of Law, Civil Division.

18.    ONDA seeks $195/hour for Ms. Feenstra's work on this case in 2014 and 2015. This Court has approved that rate for Ms. Feenstra. *Or. Natural Desert Ass'n v. Bureau of Land Mgmt.*, 223 F. Supp. 3d 1147, 1154 (D. Or. 2016). My time records show that I assigned most of the hours spent researching and preparing ONDA's Second Amended Complaint to Ms. Feenstra. It is not surprising that as a new attorney she spent more time than I might have done— but that is also why ONDA billed her at only $195/hour. That amendment was important because it took into account the five years and multiple final agency actions since the lawsuit was initiated in 2009.

## Outside Counsel

19.    I engaged the services of attorneys Kristin Ruether and Michael Goetz to assist me with discrete segments of this litigation.

      a.    **Kristin Ruether (J.D. 2005)** worked on this case as an ONDA staff attorney up through 2007, and then again in 2013–2014 as outside counsel, when she worked for Advocates for the West, a Boise, Idaho-based public interest law

firm. Based on her years as a staff attorney for ONDA, she is very familiar with Steens Mountain and ONDA's factual and legal concerns with the challenged travel plan. Ms. Ruether is currently an Immigration Associate at International Rescue Committee in Boise, Idaho. I note that because of the small number of billable hours Ms. Ruether spent on this matter in 2007, ONDA does not include that time in this fee request. ONDA seeks $285–$295/hour for Ms. Reuther's work on this case in 2013 and 2014. These are reasonable rates for an attorney of her experience and specialized expertise in environmental law and litigation.

b. **Michael Goetz (J.D. 2013)** worked on this case in 2015–2016 as outside counsel. I engaged Mr. Goetz for the discrete task of undertaking a detailed review and comparison of multiple sets of Route Analysis Forms that the BLM had lodged in various installments of the administrative record. This was an important task because one of the great challenges of this case was making sense of how multiple BLM and IBLA decisions, plans, and records— including multiple iterations of agency Route Analysis Forms—fit together. Mr. Goetz currently works as General Counsel for the Oregon Citizen' Utility Board in Portland, Oregon. ONDA seeks $130/hour for Mr. Goetz's work on this case in 2015 and 2016. The work he performed, while important to ONDA's case, was more akin to the type of task that might ordinarily be assigned to a law clerk or paralegal—and Mr. Goetz's work therefore is not billed at his attorney rate. ONDA's total fees were $9,000 less by having Mr.

Goetz perform this time-consuming work at $130/hour, rather than having me do it at $390/hour or $400/hour.

20.    I also engaged the services of five respected public interest attorney colleagues to help me prepare during two separate moot argument sessions in the week prior to arguing ONDA's successful appeal before the Ninth Circuit in March, 2016.

a.    **Stephanie Parent (J.D. 1992)** is an attorney with the Center for Biological Diversity's Environmental Health program in Portland, Oregon, working to reduce pesticides and other toxic chemicals in our environment. She has practiced environmental law for 28 years and has litigated many wildlife and public lands cases. Earlier in her career, Ms. Parent was the managing attorney and clinical professor with the environmental litigation clinic at Lewis & Clark Law School, an Assistant Attorney General with the Oregon Department of Justice, and a trial attorney with the U.S. Department of Justice. She holds a law degree from Lewis & Clark and a bachelor of science from the University of Wisconsin-Madison.

b.    **George Kimbrell (J.D. 2004)** is the Legal Director for the Center for Food Safety, in Portland, Oregon, overseeing all of the organization's legal work. In addition to representing CFS in federal litigation, Mr. Kimbrell's legal, legislative, and policy work involves pesticides, genetically engineered organisms, animal factory pollution, food labeling, foodborne illness, organic standards, and aquaculture. He was counsel in the first U.S. Supreme Court case on the regulation of genetically engineered crops, *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010), and also teaches food and

agriculture law as an adjunct professor at Lewis & Clark Law School. Mr. Kimbrell is a former clerk for Judge Ronald M. Gould of the U.S. Court of Appeals for the Ninth Circuit.

c. **Elizabeth Potter (J.D. 2010)** is a staff attorney at Advocates for the West in Portland, Oregon. She represents conservation organizations, a tribe, and individuals in federal and state cases involving conflicts over public lands, wildlife, and natural resources. Prior to joining Advocates for the West in 2015, Ms. Potter worked as an associate attorney at Smith and Lowney, a public interest environmental and consumer law firm based in Seattle. There, she handled an assortment of Clean Water Act and Endangered Species Act citizen suits, and state permit and land use appeals. Ms. Potter earned her J.D. and LL.M. in Environmental and Natural Resources Law from Lewis & Clark Law School, and her B.A. in Environmental Studies with a Biology Concentration from Denison University.

d. **Ralph Bloemers (J.D. 1998)** is a senior staff attorney with Crag Law Center, a non-profit law firm in Portland, Oregon. Mr. Bloemers works on public lands issues involving forests, fire, and climate. He has worked on complex natural resources, water law, land use and real estate matters since 2001, including the passage of Wilderness legislation and the removal of two dams from rivers in the Columbia Gorge. Prior to that, Mr. Bloemers worked at Stoel Rives, LLP, in Portland, on corporate securities, venture finance and intellectual property transactions. While in law school he worked on land acquisition and conservation easements for The Nature Conservancy and land

use enforcement for 1000 Friends of Oregon. He has taught Forest Law & Policy at Lewis & Clark Law School, and served on the Governor's Federal Forestlands Advisory Committee. He holds a law degree from Willamette University College of Law and a Bachelor of Science from the University of Colorado at Boulder.

e. **Ryan Shannon (J.D. 2015)** is a staff attorney for the Center for Biological Diversity in Portland, Oregon. He focuses on Endangered Species Act litigation. Before joining the Center in 2017, Mr. Shannon was a legal fellow with Earthrise Law Center at Lewis & Clark Law School in Portland. He earned his law degree from Lewis & Clark and received a bachelor's degree in politics and philosophy from University of California, Santa Cruz.

21.    I also engaged the services of four respected public interest attorneys—**Karl Anuta (J.D. 1986)**, **Stephanie Parent (J.D. 1992)**, **Lauren Rule (J.D. 2001)**, and **Stephen Bloch (J.D. 1997)**—to provide declaration testimony in support of ONDA's application for costs, fees, and other expenses under EAJA. Each of these attorneys describes their qualifications in their declarations filed concurrently with ONDA's application. Attorney time for service as fee counsel is recoverable, as is time for counsel who serve as moot panelists. *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 823–24 (9th Cir. 2009) (attorney time spent in a consulting role that is an "integral part of the litigation process" is recoverable); *Pollinator Stewardship Council v. EPA*, 2017 WL 3096105, *13 (9th Cir. June 27, 2017) ("attorneys reasonably spent significant time conducting two moot courts in preparation for oral argument in a case as important as this one").

//

11

**Law Clerks**

22.     ONDA also benefitted from the efforts of student law clerks. These clerks assisted with legal research, review of evidence and the administrative record, drafting pleadings, and other legal tasks: Madeline Munson, Jessica Winn, Kya Marienfeld, Max Brunke, Paul Ruprecht, and Megan Lemire. Ms. Munson, Ms. Marienfeld, Mr. Brunke, Mr. Ruprecht, and Ms. Lemire were 2L or 3L students at Lewis & Clark Law School when they worked on this matter. Lewis & Clark has a national reputation as one of the nation's top environmental law programs. Each of these clerks had completed extensive environmental law coursework prior to and during their work on this matter. Ms. Winn was a rising 3L at the highly-respected Washington & Lee University School of Law, in Lexington, Virginia, when she worked on this matter for ONDA in 2016. In addition, ONDA was assisted by law clerks at the Earthrise Law Center, whose work is described in Mr. Buchele's declaration.

23.     I undertook a full review of all of ONDA's law clerks' time sheets and eliminated or reduced time that I considered to be unnecessarily duplicative, inefficiently spent, or not directly related to this litigation. For example, I eliminated 21.1 hours of time spent by law clerk Marienfeld, and 4.6 hours of time spent by law clerk Lemire, for work on issues I deemed to be only tangentially related to the litigation. Similarly, I eliminated 20.0 hours of time spent by law clerk Ruprecht for field investigation of a couple BLM-proposed routes on Steens Mountain where ONDA had questions about their current physical condition.

**Consultants**

24.     ONDA also engaged the services of three scientific, technical and strategic consultants, each of whom provided discrete work that was important to our ultimate success.

a. **Dr. Jonathan Gelbard, Ph.D.**, is a professional ecologist who undertakes research, development, and advocacy for conservation, climate change, regenerative agriculture, and sustainable business solutions. ONDA needed Dr. Gelbard's expert declaration [57] to describe the threats of the Travel Plan to the ecological structure and function of Steens Mountain. Dr. Gelbard focused in particular on the establishment and spread of noxious weeds through motorized road networks and the concomitant effects to ecological integrity on the mountain. This was an issue the Ninth Circuit cited as one of the bases for holding unlawful and vacating the challenged plans. *Or. Natural Desert Ass'n v. Rose*, 921 F.3d 1185, 1191 (9th Cir. 2019) (noting that the NEPA analyses "contain only a cursory analysis of the project's impact on noteworthy aspects of the Steens Mountain Area, such as . . . the spread of noxious weed infestations"). Dr. Gelbard founded his consulting firm, Conservation Value, Inc., located in East Bay Hills, California, in 1995.

b. **Dr. Craig Miller, M.D.**, is an experienced GIS analyst and former emergency room physician. In coordination with ONDA's attorneys and conservation staff, Dr. Miller prepared multiple declarations in this case, including before the Ninth Circuit [App. ECF 15-4], this Court [56, 122, 167, 186, 196, 220, 296, 339], and the IBLA (multiple declarations which appear in the administrative record at AR 307, RAR 21854, and RAR 22113).[1] Dr. Miller's declarations included detailed

---

[1] Federal defendants lodged the administrative record in multiple installments in this case. All citations to the record in materials filed in support of ONDA's fees motion follow the citation format shown in the table ONDA provided with its opening summary judgment brief in 2017. *See* ECF 295 at *ix* ("Key to Administrative Record Citations").

maps, spatial analyses, tables, photographs, satellite images, and GIS data, which were essential to ONDA's efforts to evaluate and explain to this Court and the Court of Appeals the potential impacts of the proposed route designations at issue in this case. This included analyses of potential impacts that ONDA contended BLM and the IBLA had failed to undertake and disclose to the public during multiple NEPA and other administrative processes. It is no exaggeration to say that, if not for Dr. Miller's work, ONDA would not have secured the injunctions that it did and would not have ultimately prevailed in this case. His work was critical to (1) ONDA's ground-based route inventory work, (2) our earliest evaluation of BLM's proposed route network and environmental review, (3) our framing of the case in the complaint and subsequent motions and briefings, (4) our ability to engage in detailed settlement discussions, (5) our ability to secure and expand upon a preliminary injunction that was in place for nearly a decade, (6) our ability to make sense of an ever-changing and highly complex BLM route network, and (7) our ability to demonstrate to this Court and to the Ninth Circuit the scope of ONDA's concerns with BLM's incomplete and inaccurate route inventory—that is, the agency's incomplete baseline that was the reason the Ninth Circuit ultimately reversed and vacated the challenged plans. Dr. Miller provides a further declaration filed concurrently with ONDA's application, re-capping the scope and complexity of his work in this case.

c. **Bill Marlett**, a highly respected, experienced consultant who has spent multiple decades tracking public land management in eastern Oregon. Mr. Marlett is one of the conservation community leaders who, as founding Executive Director of

ONDA in the late 1980s, then helped write the Steens Act prior to its passage by

Congress in 2000. Mr. Marlett provided limited but necessary advice concerning

potential settlement discussions and key political-legal strategic decisions. He also

served as an important source for ONDA's attorneys' research and strategy on

legal issues unique to the special land management framework in place on Steens

Mountain. *See* AR 295–300 (Marlett declaration, submitted to the IBLA, that

BLM included in the administrative record for this case, and further describing

Mr. Marlett's background and experience with Steens Mountain).

25.    The rates charged by ONDA's consultants (Dr. Gelbard at $125/hour, Dr. Miller

at $100/hour, and Mr. Marlett at $100 to $125/hour) are reasonable for the types of expertise

each brought to the case. The EAJA provides that the amount of fees and other expenses "shall

be based upon prevailing market rates for the kind and quality of the services furnished." 28

U.S.C. § 2412(d)(2)(A). BLM has agreed to these and similar rates in prior settlement

agreements—for example, agreeing to Dr. Miller's rate of $100/hour and Mr. Marlett's rate of

$100/hour in *ONDA v. Freeborn*, 3:06-cv-1311-MO/11-35143/12-35759 (via Stipulation and

Order Regarding Plaintiffs' Motion for Attorney Fees and Costs, ECF 180, approved Dec. 4,

2013); agreeing to Dr. Miller's rate of $100/hour and Mr. Marlett's rate of $300/hour in *ONDA*

*v. BLM*, 3:08-cv-01271-KI (via Stipulation and Order Regarding Plaintiff's Motion for Attorney

Fees and Costs, ECF 104, approved Apr. 17, 2012); and agreeing to Dr. Miller's rate of

$100/hour in *ONDA v. BLM*, 3:03-cv-01017-JE/05-35931/07-35728 (via Order and Settlement

Agreement, ECF 129, approved Sept. 27, 2010). And BLM has agreed to similar rates for expert

ecologists like Dr. Gelbard—for example, agreeing to a rate of $125/hour for ecologist Dr. David

Dobkin in both the 06-1311 and 08-1271 cases. The District of Oregon approved a rate of

$100/hour for Mr. Marlett for work performed up through 2012, in *Oregon Natural Desert Ass'n v. Vilsack*, No. 2:07-cv-1871-HA, 2013 WL 3348428, *7 (D. Or. July 2, 2013) (also awarding $200/hour for an expert stream geomorphologist and $130/hour for an expert hydrologist).

## HOURS REQUESTED

26.     As noted, I contemporaneously compiled the hours I spent litigating this action. I attach my time and expense sheet records to this declaration as Exhibit A. Throughout this case, I have exercised professional billing judgment in recording my time. In carefully reviewing my time records in preparing this fee petition, I eliminated or reduced time spent on, among other things, media work, unnecessarily duplicative work, and other tasks. I note, however, that some such work may be compensable. I reduced certain tasks that I performed and which were necessary to the case, but which, in a larger firm, are ordinarily performed by paralegals or law clerks, to the paralegal/law clerk rate. I have not charged for purely clerical tasks. ONDA does not have a paralegal or other administrative assistant, but we do sometimes retain student law clerks.

27.     I have spent more than 2,200 hours on this case, to date. Based on my billing judgment review, however, I "no charged" nearly 100 hours of my time for certain tasks I found to be unnecessarily duplicative, purely clerical, or not directly related to the litigation (as described above).

28.     I have also carefully reviewed the contemporaneous time records of Ms. Ruether, Ms. Fenestra, Mr. Goetz, Ms. Parent, Mr. Kimbrell, Ms. Potter, Mr. Bloemers and Mr. Shannon (Exhibit B), as well as those of fee counsel Mr.Anuta, Ms. Parent, Ms. Rule and Mr. Bloch (attached to their declarations). I am very comfortable representing that the hours requested by

these attorneys are reasonable. These attorneys spent limited amounts of time on discrete, but necessary, tasks in assisting me in successfully litigating this case.

29.     As lead attorney, I also reviewed the contemporaneous time records of my current co-counsel, Mr. Becker and Mr. Buchele. I agree with their assessments, described in their accompanying declarations, that the hours they request are reasonable and that there was no unnecessary duplication of effort among counsel. If anything, we formed a highly efficient and effective legal team. I appreciate that the targeted, accurate, and exceptional assistance they provided to me not only helped ONDA win this case, but ultimately saved time and money.

30.     I note that Mr. Becker and I, in particular, have a well-established reputation as a highly efficient and effective legal team. We have worked together successfully on many legal actions for ONDA over the course of more than fifteen years now. As then-Chief Judge Haggerty noted in one fee award decision:

> [T]he court does not believe that they spent too much time on this case. . . . This is not a case where multiple senior partners at a high priced firm are driving up fees unnecessarily. This was an environmental case and justified the use of attorneys learned in environmental law. All in all, the fees are not particularly high given the size and duration of this case. It is safe to say that if a large firm had handled this case, the fees would have been an order of magnitude larger.

*Vilsack*, 2013 WL 3348428, at *5. I believe the same thing has proven to be true once again in this case.

## **HOURLY RATES**

31.     In the Ninth Circuit, the EAJA rate of $125 per hour is adjusted upward to account for cost-of-living increases since 1996. Based on this calculation, that court publishes

the "Statutory Maximum Rates Under the Equal Access to Justice Act" on its website.[2] *See also*

*Thangaraja v. Gonzales*, 428 F.3d 870, 876–77 (9th Cir. 2005) (describing how to calculate cost-

of-living increases using CPI-U data from the Bureau of Labor Statistics). The rates over the last

ten years are: $172.24 for 2009; $175.06 for 2010; $180.59 for 2011; $184.32 for 2012; $187.02

for 2013; $190.06 for 2014; $190.28 for 2015; $192.68 for 2016; $196.79 for 2017; $201.60 for

2018; and $205.25 for 2019.

32.      In addition to the cost-of-living adjustment, EAJA provides that a court may

award enhanced rates if a "special factor, such as the limited availability of qualified attorneys

for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). In the Ninth

Circuit, enhanced rates are justified if three requirements are satisfied: "First, the attorney must

possess distinctive knowledge and skills developed through a practice specialty. Secondly, those

distinctive skills must be needed in the litigation. Lastly, those skills must not be available

elsewhere at the statutory rate." *Love v. Reilly*, 924 F.2d 1492, 1495 (9th Cir. 1991). The Ninth

Circuit recognizes that "[e]nvironmental litigation is an identifiable practice specialty that

requires distinctive knowledge." *Id.*

33.      I possess the distinctive knowledge and specialized skills necessary to claim a

practice specialty in environmental and natural resources law and litigation. Since beginning my

practice in 2001, I have worked exclusively in this field. I have handled many cases on behalf of

ONDA and other clients involving application of NEPA, the APA, and other relevant statutes for

projects and management plans authorized by federal agencies. This case required my

---

[2] U.S. Court of Appeals for the Ninth Circuit, *Statutory Maximum Rates Under the Equal Access
to Justice Act*, https://www.ca9.uscourts.gov/content/view.php? pk_id=0000000039 (last visited
Mar. 12, 2020).

particularized knowledge of these statutes as they apply to public land management at the administrative, trial and appellate court levels.

34.    In light of my distinctive knowledge and skill, and my reputation and expertise, my requested rates are:

| YEAR | RATE | YEARS' EXPERIENCE |
|------|------|-------------------|
| 2020 | $470 | 19 |
| 2019 | $455 | 18 |
| 2018 | $440 | 17 |
| 2017 | $415 | 16 |
| 2016 | $400 | 15 |
| 2015 | $390 | 14 |
| 2014 | $375 | 13 |
| 2013 | $350 | 12 |
| 2012 | $335 | 11 |
| 2011 | $320 | 10 |
| 2010 | $310 | 9 |
| 2009 | $295 | 8 |
| 2008 | $272.50 | 7 |
| 2007 | $250 | 6 |

35.    Since I started practicing environmental law in 2001, I have become familiar with the work and billing practices of many attorneys who practice environmental law in the Pacific Northwest and throughout the districts that make up the Ninth Circuit. I regularly review relevant court decisions, undertake my own independent research, and correspond with colleagues regarding the market rates for lawyers with similar skill and experience.

36.    Based on my work on and review of this case, and my personal knowledge of attorney billing practices, I believe that the hourly rates I list above are very reasonable for

attorneys of comparable skill and experience for this type of case in Portland, Oregon. If

anything, the rates I am requesting are somewhat below Portland market rates that are charged by

attorneys of comparable skill and experience.

37.    This Court has awarded me these requested rates on a number of occasions over

the years, including in:

> *Oregon Natural Desert Ass'n v. Bureau of Land Mgmt.*, 223 F. Supp. 3d 1147,
> 1154–55 (D. Or. 2016) (deeming reasonable my hourly rates of $335/hour to
> $400/hour for 2012 to 2016, in EAJA fee award).

> *Oregon Natural Desert Ass'n v. Vilsack*, No. 2:07-cv-1871-HA, 2013 WL
> 3348428, *5 (D. Or. July 2, 2013), Third Decl. of Peter M. Lacy [666] ¶ 5, and
> Decl. of Peter M. Lacy [619] ¶ 20 (deeming reasonable my hourly rates of
> $250/hour to $335/hour for 2007 to 2012, in EAJA/ESA fee award).

> *Oregon Natural Desert Ass'n v. Ryan*, No. 3:08-cv-576-BR, 2011 WL 937589, *7
> (D. Or. Mar. 16, 2011) (deeming reasonable my hourly rate of $272.50/hour for
> 2008, in EAJA fee award).

> *Oregon Natural Desert Ass'n v. Locke*, No. 3:05-cv-210-KI, 2010 WL 56111, *3
> (D. Or. Jan. 5, 2010) (deeming reasonable my hourly rate of $295/hour for 2009,
> as an "environmental law" specialist" in FOIA fee award).

In fact, I have never had a court deny or adjust my requested enhanced rates under EAJA or any

other fee-shifting statute, in 19 years of practice.

38.    Further supporting my personal knowledge of attorney billing practices in this

Court and others in the Ninth Circuit, I have also served as a consulting attorney and provided

declaration testimony on attorney fee recovery matters, including in several recent cases:

> *Cent. Or. LandWatch v. Jeffries*, No. 2:17-cv-1004-SU, Decl. of Peter M. Lacy
> [141] (D. Or. Nov. 6, 2019) (supporting declaration in a still-pending motion for
> fees under EAJA and ESA, in case successfully challenging Forest Service
> motorized trail system decision).

> *Greenpeace, Inc. v. Stewart*, No. 17-35945, Decl. of Peter M. Lacy [64] (9th Cir.
> May 3, 2019) (supporting declaration in a still-pending motion for fees under
> EAJA, in case successfully challenging Forest Service proxy modeling for timber
> sale project).

➢ *Basin & Range Watch v. Bureau of Land Mgmt.*, No. 2:16-cv-00403-JCM-PAL, Judgment in a Civil Case [66] & Order [64] (D. Nev. Apr. 6 & Mar. 30, 2018) (awarding fees to prevailing plaintiff in a FOIA case, based in part on a supporting declaration I provided).

➢ *Bundorf v. Zinke*, No. 2:13-cv-616-MMD-PAL, Decl. of Peter M. Lacy [181] (D. Nev. Sept. 15, 2017) (supporting declaration in a case in which court awarded full request to plaintiff, ruling that award need not be reduced based on the fact that district court only ruled in favor of plaintiff on NEPA claim and did not reach merits of claims under other environmental statutes, *Bundorf v. Jewell*, 336 F. Supp. 3d 1248, 1256 (D. Nev. 2018)).

➢ *McKenzie Flyfishers v. McIntosh*, No. 6:13-cv-2125-TC, Opinion & Order [159] at 4, 12–13, 27–28 (D. Or. Jan. 22, 2016) (stating, based on my "experience as an environmental litigator" that "this court finds Mr. Lacy's endorsement [as to reasonable hourly rates] persuasive" and also awarding fees for my services as a consulting attorney at my 2015 rate of $390/hour).

39.     Finally, I am very comfortable representing that the hourly rates charged by consulting counsel, Ms. Parent, Mr. Kimbrell, Ms. Potter, Mr. Bloemers, Mr. Shannon, Mr.Anuta, Ms. Rule and Mr. Bloch, are reasonable. As described above, these attorneys spent limited amounts of time on discrete, but necessary, tasks in this successful litigation.

## COSTS AND OTHER EXPENSES

40.     As shown on the overall summary sheet (Exhibit A at 1) and detailed in Exhibit C, ONDA seeks $4,501.61 for copying, postage, fees, and other recoverable costs and expenses, and $210,126.25 for the services of three consultants—particularly those of GIS Analyst, Dr. Craig Miller—whose services, studies, analyses, and reports were instrumental to ONDA's success. These costs and other expenses are reasonable, were necessary for the preparation of ONDA's case, and are typical of the types of costs that are routinely charged to clients in everyday practice.

## CONCLUSION

41.     I attest that all of the information submitted to the Court in support of ONDA's fee application is accurate.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

DATED this 13th day of March, 2020.

Respectfully submitted,

s/ Peter M. Lacy

_____

Peter M. Lacy
Oregon Natural Desert Association

Of Attorneys for Plaintiff-Appellant