**Peter M. ("Mac") Lacy (OSB # 013223)**
Oregon Natural Desert Association
2009 NE Alberta St., Suite 207
Portland, OR 97211
(503) 525-0193
lacy@onda.org

**Thomas C. Buchele (OSB # 081560)**
Earthrise Law Center
10015 SW Terwilliger Blvd.
Portland OR  97219
(503) 768-6736
tbuchele@lclark.edu

**David H. Becker (OSB # 081507)**
Law Office of David H. Becker, LLC
4110 SE Hawthorne Blvd. # 168
Portland, OR 97214
(503) 388-9160
davebeckerlaw@gmail.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **OREGON NATURAL DESERT ASSOCIATION,** | |
| Plaintiff, | No. 3:09-cv-369-JR |
| v. | **DECLARATION OF KARL G. ANUTA** |
| **JEFF ROSE**, Burns District Manager, BLM, *et al*., | |
| Defendants, | |
| and | |

**HARNEY COUNTY**,

Defendant-Intervenor-
Cross Claimant.

I, Karl G. Anuta, declare as follows:

1.     I make this declaration in support of the Oregon Natural Desert Association's (ONDA) application for fees, costs, and other expenses pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d). It is my opinion that the hours and rates sought by plaintiff's counsel are reasonable and appropriate, given the complexity of the facts, the number of years and multiple legal forums involved, and the various laws involved in this case. It is also my opinion that the costs and other expenses sought are reasonable.

## QUALIFICATIONS

2.     I am an active member in good standing of the state bars of both Oregon and Washington. I am also an active member in good standing of the bars of the U.S. Court of Appeals for the Ninth Circuit, the U.S. District Court for the District of Oregon, and both the U.S. District Courts for the Western District of Washington and the Eastern District of Washington. My resume is attached to this declaration as Exhibit A.

3.     I have extensive experience in the field of trial litigation and public interest environmental law. I hold a Certificate in Environmental and Natural Resources Law from Lewis & Clark Law School, where I obtained my J.D. in 1986. In 2003, I was awarded the Distinguished Environmental Law Graduate award by Lewis & Clark. For over 30 years, I have litigated a wide variety of cases in both state and federal court, throughout the Pacific Northwest. I have been involved in litigating a number of cases against federal agencies under the Administrative Procedure Act (APA) and involving the National Environmental Policy Act

(NEPA) and other similar laws. I have also pursued many lawsuits against private entities throughout the Northwest, involving matters ranging from complex pollution cleanup, to discrimination claims, to medical malpractice, to toxic exposure injuries.

## THE HOURS REQUESTED ARE REASONABLE

4.      I have reviewed the written opinions of the District Court and the Court of Appeals, the principal District Court and appellate briefs, as well as the PACER docket reports for the proceedings. I have also reviewed the significant, but ultimately unsuccessful, efforts that ONDA's counsel made to settle the fee issues. I have gone over detailed itemizations of ONDA's attorneys' time and activities in this case, as well as those attorneys' draft Declarations in support of the Fee Application. I have also reviewed the key Declarations and timesheets of Dr. Craig Miller, Dr. Jonathan Gelbard, and Bill Marlett.

5.      In addition to the materials related to this case, I have also reviewed a number of leading opinions on fee issues from the Ninth Circuit, as well other Federal District Courts in the Pacific Northwest. This includes the Ninth Circuit's opinions in *Ibrahim v. U.S. Department of Homeland Security*, 912 F.3d 1147 (9th Cir. 2019), *Pollinator Stewardship Council v. EPA*, No. 13-72346, 2017 WL 3096105 (9th Cir. June 27, 2017), and *Moreno v. City of Sacramento,* 534 F.3d 1106 (9th Cir. 2008), and opinions issued by various District Courts in the Pacific Northwest, including several from the District Court for the District of Oregon.

6.      Based on my review of the work completed and result obtained in this case, as well as my own personal experience with and knowledge of the time needed to successfully litigate a case of this nature in federal court, it is my opinion that the number of hours claimed by plaintiff's counsel are quite reasonable. One of the reasons I am of that opinion is the unique and difficult nature of the legal issues presented in this case. Cases of this sort are extremely

complex, and rarely result in a complete victory for the plaintiff conservation group or individual. Yet in this case, ONDA and its attorneys obtained phenomenal results. The challenged agency actions (the Travel Plan and the Recreation Plan) were ultimately vacated by the Ninth Circuit. *Or. Natural Desert Ass'n v. Rose*, 921 F.3d 1185, 1188 (9th Cir. 2019). In addition, ONDA obtained one or more court rulings that the agency was required to conduct an appropriate inventory of the baseline conditions in order to be able to complete its NEPA analysis, and that inventory had to include looking at the actual conditions on the ground.

7.     It was only through years of perseverance by ONDA's attorneys and the phenomenal work by ONDA's consultants that these results were achievable. It was clearly the work of the consultants Miller, Marlett and Gelbard—which documented with photographs, descriptions, as well as maps, the actual conditions that the agency was either unaware of or had ignored, and the consequences on the ground (for example, with regard to weed infestations and loss of roadless areas) when the agency did so—that made ONDA's factual case compelling to the Ninth Circuit.

8.     On top of that, ONDA also was able to establish some important legal precedents. ONDA got a published decision which verifies that materials that were never made available to the public, and were instead submitted during the appeals process by the agency, cannot serve as a valid basis for a NEPA decision. *Rose*, 921 F.3d at 1192. In addition, ONDA obtained a specific ruling that having a road or trail exist on paper "as a matter of record" was not the proper test to apply when evaluating compliance with the laws that control actions in the Steens. *Id*. at 1189–90.

9.     There was also critical on the ground relief and significant legal changes created by ONDA's efforts. ONDA won and maintained an injunction that limits motorized use and

mechanical maintenance on over 120 miles of mapped "routes" for a period that lasted at least eight years, and ultimately the agency stipulated that it would not engage in those activities on those same routes until a new travel plan is completed and issued. While they may have lost some "skirmishes" along the way, ONDA basically "won the war" and achieved virtually everything it set out to do when it filed the original challenge to the Steens TMP.

10.    Finally, it appears to me that counsel have carefully exercised billing judgment and have not charged for hours that the agency or Intervenor attorneys might have tried to argue were due to duplicative efforts, or were excessive in number. Over 120 hours of attorney time was "written off," as were over 67 hours of law clerk time and over 25 hours of expert time.

11.    Mr. Lacy acted as lead counsel throughout this case, with Mr. Becker serving as co-counsel for most of the case, and with Mr. Buchele serving as co-counsel during a period when Mr. Becker was unavailable. Mr. Lacy also engaged other junior attorneys (Ms. Ruether, Ms. Feenstra, and Mr. Goetz), as well as law clerks, on discrete tasks over the course of the lengthy litigation. In my professional opinion, and based on my personal experience with co-counsel arrangements, these arrangements were not only appropriate, but likely a critical factor in ONDA's success.

12.    Co-counsel arrangements are common in plaintiff-side public interest environmental litigation. It is good practice to associate co-counsel when the circumstances warrant it. Doing so allows the casework to be split between several lawyers. When there is limited time to do research, draft briefs, and so forth, this can be critical to effectively presenting a case. This sort of arrangement allows solo practitioners, such as Mr. Becker and myself, or Mr. Lacy, who is ONDA's only attorney and similarly lacks the resources of colleagues and support

staff that one would find at a traditional law firm, to work on a case of this sort, without the need to devote our entire practice to only one case.

13.    Co-counsel arrangements, including incorporating junior attorneys into a legal team, also typically increase efficiency. Co-counsel can split up who is responsible for handling/briefing certain legal issues, or handling other tasks such as record review. This allows individual attorneys to focus on fewer issues. That typically improves the quality (and shortens the length) of the briefing, and increases the quality of the advocacy and the client representation. For practitioners like myself, Mr. Lacy, Mr. Becker, and Mr. Buchele, who do not work at large law firms, co-counsel arrangements enable us to share workload and expertise similarly to how cases are often handled by multiple attorneys at large corporate law firms.

14.    In my experience, in addition to the benefits of co-counsel arrangements of this type, regular conferrals (often via email and over the phone) and draft editing between co-counsel result in both better strategic decision-making and better work-product. Most lawyers do not (and should not) work in a vacuum. There is nothing unreasonable about multiple lawyers billing for time spent emailing and talking about the case. This is a necessary activity that the courts have recognized is not "duplicative" the way losing defendants often try to claim. *Moreno*, 534 F.3d at 1112–13 (explaining the difference between appropriate duplicative and unnecessarily duplicative work and concluding, "It is only where the lawyer does *unnecessarily* duplicative work that the court may legitimately cut the hours."); *see also Norman v. Housing Auth. of the City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988) ("There is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each."). The Ninth Circuit has also specifically upheld awards of fees

to multiple attorneys representing the same parties. *See e.g. Democratic Party of Wash. v. Reed*, 388 F.3d 1281, 1286–87 (9th Cir. 2004).

15.    Based on my review of the case documents and ONDA's counsels' time records, as well as my personal discussions with ONDA's counsel, the time sought for co-counsel conferrals and mutual work-product editing was non-duplicative and was reasonably expended in furtherance of the successful litigation. In this case, it appears that, at almost all times, only Mr. Lacy and one other co-counsel were sharing the bulk of the work. During the appellate and post-appellate proceedings, Mr. Lacy strategically used both Mr. Becker and Mr. Buchele to confer on strategy and review important briefs and Motions—but again, it appears from my review that these were reasonable decisions in a complex, hotly-contested litigation. The ONDA attorneys did not engage in any unnecessarily duplicative work. *See Moreno*, 534 F.3d at1113.

16.    I am sure that a defense lawyer—particularly a very busy agency attorney who did not have the burden of proving his or her case, and overcoming the deference often given to the agency and their counsel—could have defended this case with considerably less time than that put in by Mr. Lacy, Mr. Becker, and Mr. Buchele. However, part of what makes a successful plaintiff-side public interest attorney is putting in the long hours needed—to ensure that the briefing is correct and that all the issues that need to be addressed are covered, **and** that they are covered succinctly.

17.    It takes considerably more time to write a succinct brief than it does to write an overly long one.[1] That sort of effort is what is needed for a lawyer to try to win a case—

---

[1] This is a **long** recognized fact for non-legal writing. *See, e.g.*, (a) A statement attributed to Roman orator Cicero ("*Cicero excuses himself for having written a long letter, by saying he had not time to make it shorter.*") in an 1824 publication: The Harmonicon: A Journal of Music, Number 20, Signor Rossini and Signor Carpani, p.156, published by William Pinnock, Music Warehouse, London; (b) A statement attributed to Martin Luther, who died in 1546 (and was

particularly one against the government. Given the facts and the complexity of this case, and the number of years and different phases and multiple agency decisions that were involved, the amount of time spent by ONDA's counsel on this case is very reasonable. When counsel for the government, or a corporate polluter, complain—as they almost always do—about the amount of time a plaintiff's counsel spends, I am immediately reminded of the Ninth Circuit's observations on this very issue in *Moreno v. City of Sacramento* (a civil rights case handled on the same "you only get paid if you win" basis as the case at hand). I believe those observations cut right to the proverbial heart of the matter:

> It must also be kept in mind that **lawyers are not likely to spend unnecessary time on contingency fee cases** in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. . . . **By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case**; after all, he won, **and might not have, had he been more of a slacker**.

*Moreno*, 534 F.3d at 1112 (emphasis added).

18.    It is also my opinion that the time ONDA's counsel spent on particular segments of the case—for example, the hours spent on pre-complaint research and claims evaluation, on briefing jurisdictional issues and summary judgment, on dealing with remedy issues including injunctive relief—was reasonable. For example, as a general matter, this Court has recognized that tasks involved in reviewing factual evidence, researching applicable law, identifying and

---

reported to have said in his letters: "*If I had my time to go over again, I would make my sermons much shorter...*") The Life of Luther: Written By Himself, Collected and Arranged by M. Michelet, [Translated by William Hazlitt] p.293, 1846; and (c) A statement made by Henry David Thoreau in a letter to a friend: "*Not that the story need be long, but it will take a long while to make it short.*" Letters to Various Persons by Henry David Thoreau, [Letter dated 11-16-1857 to Mr. B: Harrison Blake], p.165, Riverside Press, Cambridge, Houghton, Osgood, and Company, Boston, 1879. It is also a well-recognized phenomenon in the legal world. *See e.g., Hardtke v. Berryhill*, No. C17-5375 BAT, 2018 WL 2387862, at *1 (W.D. Wash. May 24, 2018) ("it is common for shorter briefs to take longer to write"); and *Maloney v. T3Media, Inc.*, No. CV 14-05048-AB VBKX, 2015 WL 3879634, at *7 (C.D. Cal. May 27, 2015) ("shorter briefs often take longer to write").

evaluating potential claims, and developing and drafting a complaint "are tasks that 'rank among the most important an attorney performs in any litigation'" and time reasonably spent on these tasks is recoverable. *League of Wilderness Defenders/Blue Mtns. Biodiversity Proj. v. U.S. Forest Serv.* ("*LOWD*"), No. 3:10-cv-01397-SI, 2014 WL 3546858, *11 (D. Or. July 15, 2014) (quoting *Lucas v. White,* 63 F. Supp. 2d 1046, 1058–59 (N.D. Cal. 1999)). In reviewing ONDA's counsels' time sheets, it was reasonable, over the course of this decade-plus, multi-phase litigation, for them to spend, for example, about 300 hours obtaining and reviewing records, about 550 hours on legal research, about 900 hours on District Court proceedings including motions practice, about 300 hours of appellate proceedings including motions practice, about 250 hours on oral arguments, and about 160 hours working with scientists and consultants.

19.     For example, this Court has held that 150 hours was reasonable for researching and drafting the complaint in a civil rights suit. *Prison Legal News v. Columbia Cnty.*, No. 3:12-cv-00071-SI, 2014 WL 1225100, at *9 (D. Or. Mar. 24, 2014). The Northern District of California has found approximately 630 hours of attorney time devoted solely to briefing summary judgment in a case involving FLPMA and NEPA claims to be reasonable. *Ctr. for Biol. Diversity v. BLM*, No. C 06-4884 SI, 2011 WL 6092453, at *1–*2 (N.D. Cal. Dec. 7, 2011).[2] In *Center for Biological Diversity*, the court also found that the additional 632.26 hours of attorney time and 39 hours of paralegal time spent on remedy issues was reasonable if a 15% reduction— to approximately 537 attorney hours and 33 paralegal hours—was applied to account for only partial success in the remedy phase. *Id.* In the case at hand, ONDA was fully successful on the merits, and on remedy, so no such reduction is warranted under the controlling law.

---

[2] It is worth noting that ONDA's counsel had to brief summary judgment *twice* in this case, once in 2010–2011 leading to the court-ordered IBLA remand, and again in 2016–2017 after that remand and leading to ONDA's successful appeal.

20.     The records submitted by ONDA show that one of the things they worked hard on was trying to settle the case—on the merits in 2009 and again in 2015–2016, and on fee recovery and remedy issues in 2019–2020—or to at least get stipulations on key fact points. The 160+ hours ONDA's attorneys spent on Mediation and Settlement activities at multiple times throughout this litigation is time that is fully compensable. As to the fee recovery work, ONDA filed a placeholder application for attorney fees in the Ninth Circuit in October of 2019, but has been unsuccessful in negotiating a settlement of that issue with the agency. Although the U.S. Supreme Court has cautioned that "a request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), in light of the complexity of the many years of litigation in this case, and the apparent intransigence of agency defendants that ended up precluding a negotiated resolution of the fee issue, the amount of time ONDA spent on fee recovery issues is considerably less than I would have expected. It takes a **lot** of time to prepare a well presented and well supported fee petition. I know, as unlike most of the agency or private polluter attorneys who typically just criticize a winning plaintiff's fee petition, I have had to prepare such petitions.

### THE REQUESTED RATES ARE REASONABLE

21.     In my opinion, the rates requested by ONDA's counsel are reasonable and are within the market rates for similar highly specialized federal environmental litigation in Portland, Oregon. All three of the main ONDA attorneys (Mr. Lacy, Mr. Becker, and Mr. Buchele) are well known and respected public interest attorneys in the Pacific Northwest. All have spoken at conferences on the types of issues that came up in this case, and all are regularly consulted by attorneys here (and throughout the country) on these issues.

22.    ONDA seeks the following rates for its attorneys, who are based in Portland,

Oregon:

**ONDA Rates**

| YEAR | Lacy (JD 2001) | Becker (JD 1999) | Buchele (JD 1986) |
|---|---|---|---|
| 2007 | $250 | | |
| (Years Experience) | (6) | | |
| 2008 | $272.50 | $290 | |
| (Years Experience) | (7) | (9) | |
| 2009 | $295 | $315 | |
| (Years Experience) | (8) | (10) | |
| 2010 | $310 | $325 | |
| (Years Experience) | (9) | (11) | |
| 2011 | $320 | $335 | |
| (Years Experience) | (10) | (12) | |
| 2012 | $335 | $350 | |
| (Years Experience) | (11) | (13) | |
| 2013 | $350 | $365 | |
| (Years Experience) | (12) | (14) | |
| 2014 | $375 | $380 | |
| (Years Experience) | (13) | (15) | |
| 2015 | $390 | $400 | |
| (Years Experience) | (14) | (16) | |
| 2016 | $400 | $420 | $475 |
| (Years Experience) | (15) | (17) | (30) |
| 2017 | $415 | $435 | $500 |
| (Years Experience) | (16) | (18) | (31) |
| 2018 | $440 | $465 | $525 |
| (Years Experience) | (17) | (19) | (32) |
| 2019 | $455 | $475 | $540 |
| (Years Experience) | (18) | (20) | (33) |
| 2020 | $470 | $525 | $565 |
| (Years Experience) | (19) | (21) | (34) |

The District Court for the District of Oregon uses the Oregon State Bar Economic Survey[3] as its initial benchmark for reasonable hourly rates.

23.      I note from the draft declarations from Mr. Lacy, Mr. Becker, and Mr. Buchele that this Court has awarded them their reasonable Portland market rates in several cases, most recently awarding Mr. Lacy $400 per hour in 2016 as an attorney with 15 years of experience (Lacy Declaration ¶ 35); Mr. Becker $465 per hour in 2018 as an attorney with 19 years of experience (Becker Declaration ¶¶ 8, 23); and Mr. Buchele $475 per hour in 2018 as an attorney with more than 30 years of experience (Buchele Declaration ¶ 18). The rates they have been awarded by this Court in the past are reasonable and consistent with market rates for Portland attorneys of their experience and specialized expertise listed in the 2017 Oregon State Bar Survey.

24.      Mr. Becker's declaration shows the inflation-adjusted rates for attorneys in the Portland market, based on the Oregon State Bar Economic Survey (Becker Declaration ¶¶ 30–38). These are consistent with my understanding of how this Court has evaluated inflation-adjusted rates to account for the fact that the 2016 rates listed in the 2017 Oregon State Bar Survey are now more than four years old. Based on the inflation-adjusted rates from the 2017 Oregon State Bar Survey, the rates that Mr. Lacy, Mr. Becker, and Mr. Buchele are seeking are reasonable market rates for the years since their most recent fee awards in the District of Oregon.

25.      Mr. Lacy is seeking rates ranging from $415 in 2017 (with 16 years of experience) to $470 in 2020 (with 19 years of experience). These are reasonable for an attorney

---

[3] Elliott, D. *et al.*, *Oregon State Bar 2017 Economic Survey – Report of Findings*, Survey Research Lab, Portland State University, Dec. 26, 2017, https://www.osbar.org/_docs/resources/Econsurveys/17EconomicSurvey.pdf.

with his specialized practice and years of experience, based on the inflation-adjusted 2017

Oregon State Bar Survey rates for attorneys in Portland who practice Real Estate/Land

Use/Environmental Law:

|  | Year | Mean | Median | 75% | 95% |
|---|---|---|---|---|---|
| OSB Survey # | 2016 | $398.00 | $390.00 | $475.00 | $610.00 |
| Adjusted # | 2017 | $409.30 | $401.07 | $488.49 | $627.32 |
| Adjusted # | 2018 | $423.00 | $414.50 | $504.83 | $648.31 |
| Adjusted # | 2019 | $434.38 | $425.65 | $518.42 | $665.77 |
| Adjusted # | 2020 | $447.76 | $438.76 | $534.39 | $686.27 |

and for all attorneys with 16–20 years of experience in Portland:

|  | Year | Mean | Median | 75% | 95% |
|---|---|---|---|---|---|
| OSB Survey # | 2016 | $334.00 | $325.00 | $400.00 | $500.00 |
| Adjusted # | 2017 | $343.48 | $334.23 | $411.36 | $514.20 |
| Adjusted # | 2018 | $354.98 | $345.41 | $425.12 | $531.40 |
| Adjusted # | 2019 | $364.53 | $354.71 | $436.57 | $545.71 |
| Adjusted # | 2020 | $375.76 | $365.63 | $450.01 | $562.51 |

My only problem with Mr. Lacy's rates is that they are less than they should be, in my view. Mr.

Lacy is, as I previously noted, one of the preeminent attorneys in the Pacific Northwest on these

issues. In my view he should be billing his time at the 95% rate, rather than the lower rate that he

is actually using.

26.    Mr. Becker is seeking a rate of $475 per hour in 2019 and $525 per hour in 2020,

the year he moved into the range for Portland attorneys with 21–30 years of experience. The

inflation-adjusted rates in Portland for such attorneys are:

|  | Year | Mean | Median | 75% | 95% |
|---|---|---|---|---|---|
| OSB Survey # | 2016 | $394.00 | $415.00 | $475.00 | $525.00 |
| Adjusted # | 2020 | $443.26 | $466.89 | $534.39 | $590.64 |

The rate Mr. Becker seeks for 2020 is between the median and 75% percentile rate for attorneys

with his level of experience in Portland. The only issue I have with Mr. Becker's requested rate

is the same as the one I have with Mr. Lacy. I think Mr. Becker is underbilling and using too low

a rate, given his level of experience and knowledge. He too should, in my view, be billing closer

to if not at the 95% rate for all his time.

27.    Mr. Buchele is seeking rates of $540 per hour in 2019 and $565 per hour in 2020.

The inflation-adjusted rates for Portland attorneys with more than 30 years of experience are:

| | Year | Mean | Median | 75% | 95% |
|---|---|---|---|---|---|
| OSB Survey # | 2016 | $413.00 | $425.00 | $495.00 | $610.00 |
| Adjusted # | 2017 | $424.73 | $437.07 | $509.05 | $627.32 |
| Adjusted # | 2018 | $438.94 | $451.69 | $526.09 | $648.31 |
| Adjusted # | 2019 | $450.76 | $463.85 | $540.25 | $665.77 |
| Adjusted # | 2020 | $464.64 | $478.14 | $556.89 | $686.27 |

Mr. Buchele's rate suffers from the same problems as those sought by Mr. Lacy and Mr. Becker.

In my view the actual Market Rate for his time is at least $600/hour if not more.

28.    The OSB 2017 Economic Survey actually underestimates market rates for

environmental law specialists in my experience. Among other reasons, the Survey does not

reflect an environmental *litigation* practice specialty, does not account for the additional

specialization of this practice at the federal court level, does not account for the relative scarcity

of attorneys in this specialized practice area, fails to address any aspect of the skill and standing

of the attorney or his/her reputation, and fails to address other special factors such as the novelty

and complexity of the issues or the quality of the representation. Some judges in the District of

Oregon have noted as much, pointing out that the OSB Survey does "not encompass the highly

specialized practice of federal environmental litigation," but rather groups three categories of

attorneys—which include some very different types of legal work—into one practice area. *See*

*LOWD*, 2014 WL 3546858, at *15; *see also Or. Natural Desert Ass'n v. Gutierrez*, 442 F. Supp.

2d 1096, 1102 (D. Or. 2006) (also exercising caution where survey data was "several years behind the current market").

29.    In my experience, rates for attorneys who specialize in federal environmental litigation are likely to be at the very top of the range of the listed rates for "Real Estate/Land Use/Environmental Law" practitioners. Such attorneys are also likely to be at the top of the listed ranges of rates by years of experience for all attorneys in Oregon, because the "Real Estate/Land Use/Environmental Law" practice area is one of the highest compensated in Oregon, as reflected in the OSB 2017 Economic Survey's charts of hourly billing rates by area of practice. These charts show that the median rates for attorneys in Portland range from $200 per hour (for Civil Litigation-Insurance Defense) to a high of $390 per hour for Real Estate/Land Use/Environmental Law. 2017 OSB Survey at 40–43. Real Estate/Land Use/Environmental Law practitioners also have the highest 25th percentile, mean, and 75th percentile rates among all of the specialized practice areas in the Survey, and have the second-highest 95th percentile rate (after Tax/Estate Planning practitioners). 2017 OSB Survey at 40–43. Given these data, it is likely that Real Estate/Land Use/Environmental Law practitioners would be at the top of each listed range of rates by years of experience, which encompasses attorneys from all practice areas. *See* 2017 OSB Survey at 38–40.

30.    The rates for ONDA's counsel fall well within what a number of large firms in Portland charge for attorneys with considerably less experience and expertise. For example, in 2010, several of Portland's large firms—firms that I know engage in extensive natural resource litigation for corporate extractive or development interests—reported in a nationwide survey done by The National Law Journal (published Dec. 6, 2010) (hereafter referred to as the "NLJ" survey) that their top *Associate* Attorneys were being billed out at a high of $450/hour (Schwabe

Williamson) and $435/hour (Davis Wright Tremaine). In that same survey, Perkins Coie reported billing its "8th year" associates out at up to $436/hour. Given that the 2010 market rate for less experienced associates here in Portland was between $450 and $436, the rates requested by the far more experienced ONDA attorneys (Mr.Lacy, Mr. Becker & Mr. Buchele) are well within the market rate for Portland.

31.    By way of comparison, the Schwabe Williamson and Davis Wright Tremaine firms reported in that same NLJ 2010 survey that they had senior partners who were then billing up to $540/hour, and $795/hour, respectively. That was ten years ago. The average partner billing rates at those two firms was then $415 and $486 per hour, respectively. This was also comparable to partner billing rates at several other Portland law firms that also regularly represent corporate natural resource clients in federal court litigation. For example, Lane Powell and Stoel Rives both reported in that same NLJ 2010 survey that they had partners billing as high as $600/hour. In a 2011 update of that same NLJ survey, Stoel Rives reported that its partner high billing rate had risen to $625/hour (an increase of $25/hour). Given my understanding of and familiarity with the Portland legal market for specialized environmental litigation expertise, it is safe to say that rates in Portland have not gone down over the ensuing years.

32.    The NLJ-reported billing rates are also right in line with what attorneys at such firms routinely request for rates in litigation in the District of Oregon. For example, in 2009, two Schwabe Williamson attorneys requested fees in a case that was filed in that court against the U.S. Department of Agriculture and U.S. Forest Service over the navigability of and the use of motors on Waldo Lake. One of the Declarations filed in support of fees indicated that the "standard" billing rate **back in 2009** for an attorney with a 1982 OSB number (David Bartz, who had at that point been practicing for 27 years) was $475 per hour. *See* Declaration of Carson

Bowler, [ECF 169](#), *Stewart v. USA*, 6:07-6282-TC (D. Or. filed Nov. 9, 2006), at p. 2, ¶ 3. Mr.

Bowler, who has a 1995 bar number (then practicing for 14 years), testified that his standard

billing rate **as of 2009** was $350/hour. Fee rates have risen considerably since 2009. *See, e.g.*,

*Llanes v. Zalewski*, No. 3:18-cv-267-SB, Declaration of Jeffrey M. Edelson in Support of

Defendants' Petition for Attorneys Fees and Costs, [ECF 85](#), ¶ 12 (Markowitz Herbold PC

attorney with 1986 JD charging $650/hour for 2019 and $575/hour for 2018).

33.    More recently, in late 2019, *The Oregonian* reported that the Oregon Secretary of

State engaged the firm of Schwabe Williamson Wyatt to defend a lawsuit challenging the

Secretary's decision to reject a series of ballot measures.[4] That story linked to the contract that

Schwabe signed with the Secretary of State.[5] At page 17, the contract lists the rates that the

Secretary of State agreed to pay the Schwabe attorneys, including $690 per hour for W. Michael

Gillette (an attorney with 49 years of experience in 2019) and $320 per hour for Jessie Schuh (an

attorney with 3 years of experience in 2019).

34.    In light of this evidence of the actual market rates in Portland, the rates sought by

ONDA's attorneys are well within (if not actually below) the market rates for the sort of highly

specialized environmental law and litigation work performed in this case.

35.    The rates reported in the NLJ surveys, and by Mr. Bowler, Mr. Gillette, Mr.

Anderson, and Ms. Schuh, are true market rates. Unlike the Oregon State Bar survey, these rates

do not homogenize small firms and large firms. These rates also take into account the demand

for and expertise and specialty of the same types of lawyers. These are factors that the courts

---

[4] *See* Rob Davis, *Secretary of State's attorney billing taxpayers $690 an hour in forest initiatives lawsuit*, THE OREGONIAN (Nov. 21, 2019), *available at* [https://www.oregonlive.com/politics/2019/11/secretary-of-states-attorney-billing-taxpayers-690-an-hour-in-forest-initiatives-lawsuit.html](https://www.oregonlive.com/politics/2019/11/secretary-of-states-attorney-billing-taxpayers-690-an-hour-in-forest-initiatives-lawsuit.html).

[5] *Available at* [https://assets.documentcloud.org/documents/6556898/Schwabe-Contract.pdf](https://assets.documentcloud.org/documents/6556898/Schwabe-Contract.pdf)

routinely recognize as a basis for departing from the otherwise more modest rates specified in some fee-shifting statutes, or those listed in the 2017 Oregon State Bar Survey.

36.     My opinion that Mr. Lacy's, Mr. Becker's, and Mr. Buchele's hourly rates are reasonable is also based on the fact that each of them possesses highly specialized knowledge, skill, and experience in NEPA and other federal environmental law issues. All three of these ONDA attorneys have made NEPA litigation a particular area of focus during their respective careers. Mr. Lacy has devoted himself to work for ONDA in Central and Eastern Oregon since shortly after he left law school. He is considered by practitioners in the field to be one of the preeminent grazing and travel plan law specialists in the Pacific Northwest. Similarly, Mr. Becker is a highly respected appellate and briefing specialist, who since he got his LL.M. has devoted himself to public interest environmental litigation in the Western United States. And Mr. Buchele is known throughout the Nation for his work obtaining injunctions to help protect areas throughout the country. His name appears on an extraordinary number of cases in the Ninth Circuit and beyond. Mr. Lacy, Mr. Becker, and Mr. Buchele are among the very limited number of lawyers that members of the public interest environmental law bar think of when they have a "federal public lands law" related question.

37.     Despite their skill and reputations, ONDA's attorneys frequently represent plaintiffs without getting paid fees at all as the cases progress. This sort of contingency fee approach is typical for plaintiff side public interest lawyers. These counsel take on cases on this basis in the hope that they can successfully conclude the litigation in their client's favor, and then—as the fee shifting statutes dictate—be awarded reasonable fees at market rates.

38.     I have done this same sort of work myself, on many occasions. Sometimes it is successful, but more often it is not. The government still wins more cases than it loses. These

cases are essentially done on a contingent fee basis with the only prospect of getting any fair compensation for the work done being a full award of fees under the applicable fee shifting statutes. This is precisely what Judge Kozinski so artfully recognized in *Moreno, supra.*

39.     Cases of this type are very risky. Most attorneys will not undertake them, because the chances for recovering any fees are often slim and the work is quite complex. People, including non-profit organizations, who seek attorneys to undertake these kinds of cases often have little money. They have a hard time finding able and experienced attorneys such as Mr. Lacy, Mr. Becker, and Mr. Buchele, who are willing to invest the effort in pursuing such a case. Attorneys who represent the citizens and non-profit groups in cases such as this perform an extremely valuable public service. Congress recognized as much when it included a fee recovery provision in the EAJA. Without the sort of fee shifting created by the EAJA, people or groups of limited economic means would not be able to afford to pursue legitimate challenges to wrongful government conduct by natural resource agencies. That is true whether those people are conservationists or poor farmers and ranchers.

40.     Since I periodically litigate cases under public interest fee shifting statutes, like the EAJA, I work hard to stay familiar with the attorney hourly billing rates throughout the Pacific Northwest area. Moreover, because I am in private practice I also occasionally (though much less frequently than I would like) get hired to represent private or local governmental clients who pay me directly. As a result, I am acutely aware of what the market will support in the way of hourly billing rates.

//

//

//

41.    My own current market billing rate for 2020 is $560 per hour.[6] I do not often get paid this hourly rate, but then again I do not represent the extractive or polluting industry side of these disputes. As the NLJ Surveys I cited show (and as I know from my own personal discussions with them) my colleagues of similar age and experience in the Environmental and Natural Resources bar who do represent the industry side routinely bill at much higher hourly rates for their Portland work.  That is the true "Market Rate" for the work at issue.

42.    As I have already outlined, the market rates for similarly talented attorneys in the Portland area are such that the billing rates listed by all of ONDA's counsel in this case are very reasonable. What these counsel do is highly specialized work that fills an important niche in the market. The Oregon State Bar has itself recognized that where attorneys have a specific niche, they can (and, as the NLJ survey and my own research among my colleagues shows, regularly do) charge considerably more than the average general practitioner for their work. The OSB issued a Memo in 2008 that recognized that niche attorneys are not limited to large firms. Those same attorneys, working at smaller "boutique" law firms, often charge just as much. It is the niche, not the firm, that dictates what the Market hourly rate is.

43.    Perhaps equally important, the rates requested by ONDA's attorneys are comparable to other attorney fee awards in the courts in this area. For example, in *Sorenson v. Mink,* 239 F.3d 1140, 1147 (9th Cir. 2001), this Court indicated that the plaintiffs' "unrebutted" declarations showed that hourly rates of up to $350 per hour in the Portland area for civil rights type public interest work was reasonable. That was almost 20 years ago. Rates have gone up substantially since then. In their declarations, Mr. Lacy, Mr. Becker, and Mr. Buchele cite many

---

[6] My market rate is slightly less than Mr. Buchele's rate.  Although we have both been practicing the same number of years, he is so specialized and experienced that he does only environmental litigation. In contrast, I also spend some of my time on other types of litigation.  For that reason, my rate for this sort of work is slightly less than Mr. Buchele's.

recent cases in which they have been awarded rates equivalent to what ONDA is seeking for their work here. *See, e.g.*, *Alliance for the Wild Rockies, Inc. v. U.S. Army Corps of Eng'rs*, No. 3:16-cv-1407-HZ, 2019 WL 1749518 (D. Or. Apr. 18, 2019) (awarding $465 per hour for Mr. Becker's work in 2018); *League of Wilderness Defenders v. Turner,* 305 F. Supp. 3d 1156 (D. Or. 2018) (Mr. Buchele's rate of $475/hour held reasonable for work performed in 2016–2018); *Or. Natural Desert Ass'n v. Bureau of Land Mgmt.*, 223 F. Supp. 3d 1147, 1154–55 (D. Or. 2016) (awarding $400/hour for Mr. Lacy's work in 2016); *LOWD*, 2014 WL 3546858, at *11–15 (Mr. Buchele's rate of $450/hour reasonable for work performed in 2010–2012). Given these data points, the rates requested by ONDA for its attorneys in this case are more than reasonable.

44.    For these reasons, based on my review of the recent cases, and the expertise and quality of the work at issue in the case at hand, I am quite comfortable stating that Mr. Lacy's, Mr. Becker's, and Mr. Buchele's requested hourly rates are consistent with (or, given the NLJ survey results in some cases, well below) rates that are regularly billed in this region by attorneys with comparable experience, training, and reputation.

45.    Based on my experience and knowledge of the public interested environmental community in the region, I also am confident that no equally well qualified attorneys—in Portland or otherwise—would have been willing to represent the plaintiff in this case at the EAJA rate of $125/hour (even as adjusted for inflation). It was not just reasonable for the plaintiff to employ Mr. Lacy, Mr. Becker, and Mr. Buchele as its attorneys, but also absolutely essential. That is the way these cases get won, or at least tried with efficiency and full advocacy.

46.    Additionally, rates ranging between $110 per hour for student law clerk/paralegal work in 2007 and $175 per hour for such time in 2020 is very reasonable, given what most firms charge for that sort of work these days.

**COSTS AND OTHER EXPENSES, INCLUDING STUDIES AND ANALYSES
NECESSARY FOR THE PREPARATION OF ONDA'S CASE**

47.    I also am of the opinion that the costs and other expenses sought by ONDA are

reasonable. As I outlined in paragraph 7, the work of ONDA's consultants was critical to the

plaintiff's success.[7] The other costs sought are all the type of litigation expenses that are

normally billed to clients, and all look reasonable in amount in my opinion.

**FEES FOR PREPARATION OF THIS DECLARATION**

48.    I spent 12.2 hours in reviewing the documentation and preparing this Declaration.

My reasonable hourly rate for 2020, as an attorney with 35 years of experience and a specialized

practice in environmental law and litigation, is $560 per hour, which is consistent with the

market rate for an attorney of 30+ years of skill and expertise in the same areas of practice,

---

[7] *See, e.g.*, *Rose,* 921 F.3d at 1190 (discussing at length the importance of the agency establishing the "physical condition" of the routes at issue, including "whether they are overgrown with vegetation or have become impassable in certain spots"—which is precisely what ONDA's consultants provided key evidence on) and 1191 (describing that the EA and an EIS to which it tiered "contain only a cursory analysis of the project's impact on noteworthy aspects of the Steens Mountain Area, such as the sage grouse population and the spread of noxious weed infestations"); *Or. Natural Desert Ass'n v. McDaniel*, 292 F. Supp. 3d 1119, 1134 (D. Or. 2018) (denying BLM's motion to strike Miller's declaration including attached tables and photographs); *Or. Natural Desert Ass'n v. McDaniel*, No. 3:09-cv-369-PK, 2012 WL 13051084, at *6 (D. Or. Sept. 28, 2012) (relying on Miller declaration to revise previous conclusion regarding whether a particular categorical exclusion could authorize reestablishment of disused primitive routes by mechanical blading); *Or. Natural Desert Ass'n v. McDaniel*, 282 F.R.D. 533, 535–36 (D. Or. 2012) (relying in part on Miller declaration and his involvement in the case to clarify that BLM had the wrong GIS data and that BLM had to provide the correct GIS data to complete the administrative record); *Or. Natural Desert Ass'n v. McDaniel*, No. 3:09-cv-369-PK, 2011 WL 3793710, at *2 (D. Or. Aug. 25, 2011) (relying in part on Miller declaration to establish injunction); *Or. Natural Desert Ass'n v. McDaniel*, No. 3:09-cv-369-PK, 2011 WL 1654265, at *1, *26, n.6, n.13, n.15, n.16 (relying on Miller declaration in granting summary judgment to ONDA, also denying BLM motion to strike Miller declaration because Court would consider it to show that BLM had failed to consider important factors); *Or. Natural Desert Ass'n v. McDaniel*, 751 F. Supp. 2d 1151, 1163 (D. Or. 2011) (relying on Miller declaration filed in original IBLA proceedings to show that ONDA exhausted issue present in district court).

litigating in Portland, Oregon. The total fees, at $560/hour, for my time spent on this matter are $6,832.00. A detailed time sheet of the time I spent is attached as Exhibit B.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 11th day of March 2020, at Portland, Oregon.


s/ Karl G. Anuta_____
KARL G. ANUTA