**Peter M. ("Mac") Lacy (OSB # 013223)**
Oregon Natural Desert Association
2009 NE Alberta St., Suite 207
Portland, OR 97211
(503) 525-0193
lacy@onda.org

**Thomas C. Buchele (OSB # 081560)**
Earthrise Law Center
10015 SW Terwilliger Blvd.
Portland OR 97219
(503) 768-6736
tbuchele@lclark.edu

**David H. Becker (OSB # 081507)**
Law Office of David H. Becker, LLC
4110 SE Hawthorne Blvd. # 168
Portland, OR 97214
(503) 388-9160
davebeckerlaw@gmail.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| **OREGON NATURAL DESERT ASSOCIATION,** | |
| Plaintiff, | No. 3:09-cv-369-JR |
| v. | **DECLARATION OF STEPHANIE M. PARENT** |
| **JEFF ROSE**, Burns District Manager, BLM, *et al*., | |
| Defendants, | |
| and | |

**HARNEY COUNTY**,

                Defendant-Intervenor-
                Cross Claimant.

---

I, STEPHANIE M. PARENT, declare as follows:

    1.    I submit this declaration in support of plaintiff-appellant Oregon Natural Desert Association's ("ONDA") application for fees, costs, and other expenses pursuant to the Equal Access to Justice Act ("EAJA"). I am an attorney licensed to practice law in Oregon since 1992. I am a member of the bars of the State of Oregon, the United States District Court for the District of Oregon, the United States Court of Appeals for the Ninth Circuit, the United States District and Bankruptcy Courts for the District of Columbia, and the United States Court of Appeals for the District of Columbia.

## QUALIFICATIONS

    2.    I have been practicing law since 1992. I obtained my law degree in 1992 from the Northwestern School of Law of Lewis & Clark College, where I earned the Environment and Natural Resources Law Certificate. I was also the Ninth Circuit Review Editor of *Environmental Law* and a nationalist in the Pace Environmental Moot Court competition.

    3.    Starting in 1992, immediately following law school, I worked as an attorney for the United States Department of Agriculture, Office of the General Counsel, in Washington, D.C. Next, I worked for four years as a trial attorney with the United States Department of Justice, Environment and Natural Resources Division, General Litigation Section in Washington, D.C. I was promoted to a "Senior Attorney" during that time.

    4.    From January, 1999 to August, 2004, I was a staff attorney at the Pacific Environmental Advocacy Center ("PEAC") in Portland, Oregon. PEAC, which today is known

as the Earthrise Law Center, is the environmental law clinic at Lewis & Clark Law School and operates as a public interest law firm. It represents solely public interest organizations and individual members of the public in complex environmental and natural resource litigation. In August, 2004 I was promoted to Managing Attorney. I was PEAC's Acting Director and Managing Attorney from July 2003 to July 2004 and from July 2005 to December 2006. In addition to my duties as an attorney with PEAC, I also co-taught the Forest Law and Policy seminar and Environmental Litigation course at Lewis & Clark Law School.

5. At the end of 2007, I left PEAC and opened my solo private practice, continuing to represent citizens and public interest organizations in environmental litigation. I continued to work on some cases that I began while at PEAC.

6. On November 30, 2009, I took a trial attorney position with the Oregon Department of Justice and closed my private practice. At the Oregon Department of Justice, I represented state environmental and natural resource agencies in litigation, including actions enforcing agency orders concerning safe drinking water, water pollution, removal and fill of materials in fish-bearing waters of the state, and confined animal feeding operations. I also represented the State of Oregon in litigation in federal court concerning the Endangered Species Act biological opinion for operations of the Federal Columbia River Power System, the Federal Energy Regulatory Commission ("FERC") authorization of a liquefied natural gas facility, and the cleanup of the Hanford nuclear site.

7. In August, 2015, I took a job as a Senior Attorney with the Center for Biological Diversity. The Center is a non-profit organization with offices throughout the United States whose mission is to protect the lands, waters, and climate that species need to survive. I am based in Portland, Oregon, and work in the Center's Environmental Health program.

8. I have developed extensive expertise as an environmental attorney over the past 28 years of practice. During my time representing public interest environmental plaintiffs, like ONDA, I was lead counsel on a number of cases against federal agencies for violating environmental laws, including the National Environmental Policy Act ("NEPA"), the Federal Land Policy and Management Act, the National Forest Management Act ("NFMA"), the Taylor Grazing Act, the Endangered Species Act ("ESA"), the Clean Water Act, the Wild and Scenic Rivers Act, and the Freedom of Information Act ("FOIA").

9. Some of these cases include: *Or. Natural Desert Ass'n v. Bureau of Land Mgmt.*, 625 F.3d 1092 (9th Cir. 2010) (successful appeal of NEPA claims); *Or. Natural Desert Ass'n v. Tidwell*, 716 F. Supp. 2d 982 (D. Or. 2010) (successful claims under the ESA citizen suit and NFMA); *Or. Natural Desert Ass'n v. Locke*, 572 F.3d 610 (9th Cir. 2009) (rejecting Department of Commerce's appeal of district court fee award, agreeing that plaintiff was a "substantially prevailing party" in a "case under" FOIA, and therefore entitled to fees under FOIA); *N.W. Envtl. Def. Ctr. v. BPA*, 477 F.3d 668 (9th Cir. 2007) (successful petition pursuant to the Northwest Power Act); *Or. Natural Res. Council v. Allen*, 476 F.3d 1031 (9th Cir. 2007) (successful appeal in ESA case); *Or. Natural Desert Ass'n v. Lohn*, 522 F. Supp. 2d 1295 (D. Or. 2007) (holding that plaintiff in ESA case was a "prevailing party" entitled to fee award under EAJA); *Or. Natural Desert Ass'n v. Lohn*, 485 F. Supp. 2d 1190 (D. Or. 2007) (successful ESA case invalidating a National Marine Fisheries Service biological opinion for livestock grazing in steelhead habitat in John Day River basin); *Klamath Siskiyou Wildlands Ctr. v. Boody*, 468 F.3d 549 (9th Cir. 2006) (successful appeal of case involving FLPMA and NEPA); *Or. Natural Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977 (9th Cir. 2006) (successful appeal of decision to dismiss challenge to grazing on national forest); *Or. Natural Desert Ass'n v. Gutierrez*, 419 F.

3

Supp. 2d 1284 (D. Or. 2006) (vacating Department of Commerce regulation as unreasonable on its face and in violation of FOIA); *Or. Natural Desert Ass'n v. Gutierrez*, 409 F. Supp. 2d 1237 (D. Or. 2006) (agency's failure to make a timely determination with respect to FOIA request amounts to an improper withholding); *Gifford Pinchot Task Force v. U.S. Fish & Wildlife Serv.*, 378 F.3d 1059 (9th Cir. 2004) (successful appeal of critical habitat analysis and unlawful regulatory definition of "adverse modification"); *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166 (9th Cir. 2002) (successful appeal and defense of request for rehearing in ESA Section 4 appeal); *Or. Natural Desert Ass'n v. Singleton*, 75 F. Supp. 2d 1139 (D. Or. 1999) (requested injunctive relief granted in Wild and Scenic Rivers Act suit).

10. While representing the State of Oregon, my federal court cases included: *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 184 F. Supp. 3d 861 (D. Or. 2016) (ESA) and *Oregon v. FERC*, 636 F.3d 1203 (9th Cir. 2011) (NEPA).

11. In my current position with the Center for Biological Diversity, I am lead counsel on a number of cases concerning the ESA, the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), and the FOIA, as well as NEPA and the National Wildlife Refuge System Administration Act. *See, e.g.*, *Ctr. for Envtl. Health v. Wheeler*, No. C 18-03197 SBA, 2019 U.S. Dist. LEXIS 185604 (N.D. Cal. Sep. 30, 2019) (defeating motion to dismiss ESA and unreasonable delay claims); *Ctr. for Biological Diversity v. EPA*, 316 F.Supp.3d 1156 (N.D. Cal. 2018) (defeating motions to dismiss ESA claims); *Audubon Soc'y of Portland v. Zinke*, Case No.: 1:17-cv-00069-CL (lead), 2018 U.S. Dist. LEXIS 53570 (D. Or. 2018) (defeating "clawback" motion in consolidated cases concerning wildlife refuges); *Ctr. for Biological Diversity v. U.S. EPA*, 847 F.3d 1075 (9th Cir. 2017) (FIFRA and ESA).

//

## DISCUSSION

12. During my career, I have become familiar with the work and billing practices of many attorneys who practice environmental law in the Pacific Northwest. The U.S. District Court for the District of Oregon awarded $520/hour for my time in 2016 in *Oregon Natural Desert Ass'n v. Bureau of Land Mgmt.*, 223 F. Supp. 3d 1147 (D. Or. 2016); *see id.* ECF No. 143 ¶ 13 (Declaration of Stephanie M. Parent listing $520 per hour rate). I am familiar with the practice experience and qualifications of the attorneys representing ONDA in this action. My current hourly rate for Portland is $550 per hour.

13. I have known Mr. Lacy since 1999, and have co-counseled many cases with him. I began working with him in January 1999 when, as a first-year law student, he began serving as a law clerk for ONDA. At that time, I represented ONDA on several matters, in my role as a staff attorney at PEAC. I served as Mr. Lacy's attorney supervisor for ONDA, and continued to work with him through PEAC and ONDA for the remainder of his time in law school. When he graduated in 2001 and took a job with ONDA, we continued to work together, both on existing and new cases for ONDA. I continue to work as co-counsel to Mr. Lacy in one active case today, an appeal pending in the Ninth Circuit Court of Appeals, *Oregon Natural Desert Association v. U.S. Forest Service*, No. 18-35514, a case in which the Center is a co-plaintiff.

14. Mr. Lacy is one of the most dedicated attorneys I know. He has devoted his entire legal career to ONDA (and the dozens of other non-profit conservation groups he has also represented in various ONDA legal actions). Mr. Lacy has an excellent reputation within the public interest law bar and among conservation groups for his skills in environmental litigation. As a result of his education and experiences, he possesses the knowledge and skills to claim a practice specialty in environmental law, and I am aware that his practice is limited to

environmental matters in federal and state courts and before administrative agencies.

15.   Mr. Lacy's specialized skills were necessary given the facts involved in this case and applicable law. This case involved complex and technical matters of federal environmental law and GIS and spatial analysis, involving multiple agency decisions (and decision makers) and their associated administrative records. The specialized nature of the subject matter combined with the extensive administrative records required an attorney with Mr. Lacy's years of experience and expertise to present a succinct and well-organized argument for the court. I have continually been impressed by his thoughtful and strategic thinking about the types of complex factual and legal issues we deal with in cases like this one. Plus, based on his long service to ONDA, Mr. Lacy probably understands the unique legal framework that guides BLM management of public lands on Steens Act better than any other attorney I know. In addition, I know Mr. Lacy to be an effective and efficient manager of a legal team, which showed in this case where he coordinated the work of multiple attorneys and law clerks who assisted him at various stages of the case, along with consultants and expert scientists, as well as policy- and ground-based staff at ONDA.

16.   I have known Mr. Becker since 2005, and have co-counseled several cases with him. He also represents a plaintiff in the ongoing consolidated cases in which I represent the Center for Biological Diversity, *Audubon Soc'y of Portland*, No. 1:17-cv-00069-CL (lead) (D. Or. filed Jan. 17, 2017). Mr. Becker is also an extraordinarily dedicated attorney. He unflaggingly pursues the interests of his clients. His ability and capacity to absorb an enormous amount of information in a short amount of time, synthesize that information, and develop a case over time is unparalleled. Like Mr. Lacy, Mr. Becker has an excellent reputation as a public interest environmental litigator. I know that Mr. Becker limits his practice to public interest

environmental litigation in federal court and before federal administrative agencies, and he possesses the knowledge and skills to claim a practice specialty in environmental law and specifically in federal environmental litigation. He is able to rely upon his experience and developed expertise in environmental case law, administrative legal principles, and scientific subject matter concerning public lands management to efficiently and effectively proceed in each case. Like Mr. Lacy, I believe Mr. Becker's specialized skills and expertise were necessary in this case.

17. I have known Mr. Buchele since 2007. Mr. Buchele and I have not co-counseled, but share similar interests in administrative law issues as they relate to environmental litigation and often confer on those issues. I am, of course, familiar with the cases that Earthrise attorneys, including Mr. Buchele, have brought and their successes, and I also know Mr. Buchele and his staff attorneys by reputation in the community. Like Mr. Lacy and Mr. Becker, Mr. Buchele has significant expertise in environmental law and is hardworking, thoughtful, and insightful in environmental litigation on behalf of his clients.

**I.     THE REQUESTED HOURLY RATES AND THE TIME SPENT BY ONDA ARE REASONABLE.**

18. Based upon my practice and experience in Oregon, it is my opinion that the hourly rates of $250 to $565 that ONDA's main attorneys—Mr. Lacy, Mr. Becker, and Mr. Buchele—seek for the period from 2007 to 2020 are reasonable market rates for attorneys of their experience and specialized expertise in environmental law, which was necessary for the successful outcome in this case. Given their experience and expertise, if these attorneys were working for private firms in Portland, it is very likely that their time would be billed to clients at higher hourly rates than those requested here. It is certain that attorneys with the specialized skills and experience necessary to bring a complex case like this, involving NEPA, the Steens

Act, FLPMA, and the Wilderness Act, are not available at the EAJA rates. The EAJA therefore justifies an award at these eminently reasonable Portland market rates.

19.   In addition, periodically staffing the case with additional junior attorneys like Ms. Ruether, Ms. Feenstra, and Mr. Goetz, as well as student law clerks, allowed Mr. Lacy to assign discrete research and tasks at far lower hourly rates (ranging from $130–$295/hour for the attorneys, and $120–$175/hour for the law clerks). This saved substantial senior attorney hours and therefore money.

20.   In reviewing the major district and appellate court pleadings, briefings, and court decisions, as well as the time records ONDA's attorneys have prepared in support of their amended fees application,[1] it is my opinion that the total number of hours expended and sought for recovery—nearly 3,000 hours of attorney time and 200 hours of law clerk time over the twelve years that this case has been in litigation—as well as each individual attorney's hours expended and sought, is reasonable. The issues in this case were complex, involving claims under multiple federal environmental laws. The case involved complicated facts and legal standards, including multiple agency decisions, required administrative processes, a voluminous administrative record, and additional outside evidence and declarations from experts on all sides. This required a significant amount of research and pre-complaint evaluation of potential claims to prepare the 27-page complaint and multiple further amended and supplemental complaints. The on-the-ground result that ONDA obtained—vacatur of the Travel Plan and Recreation Plan, and a driving and maintenance injunction established and expanded over the course of eight years of the litigation reaching back to 2011 and now preserved in a stipulation that will be in

---

[1] I also note that I am familiar with this case through having served as a moot panelist for Mr. Lacy in March 2019, helping him prepare to argue ONDA's successful appeal in the Ninth Circuit.

8

place until a new and lawful Travel Plan is prepared—was an outstanding outcome for ONDA and its commitment to safeguarding the long-term ecological integrity of Steens Mountain. As ONDA's executive director, Ryan Houston, states in his declaration, ONDA achieved everything it set out to do in this case.

21.    I do not view the work of the attorneys in this case as duplicative. Rather, they have followed sound principles for efficiently and successfully engaging in a complex environmental litigation. Attorneys who co-counsel have the benefit of strategic discussion that often results in streamlined litigation. Co-counsel also generally divide preliminary tasks such as legal research and drafting separate issues, then review each other's work, which benefits the client and the court. Here, Mr. Lacy led the litigation from start to finish. Along the way, he effectively and efficiently integrated and managed co-counsel, student law clerks, consultants, and ONDA staff. The work of Mr. Lacy and his legal team, including Mr. Becker and Mr. Buchele, was complimentary, not duplicative—and certainly was necessary to bring this complex matter to a successful result. I also know that Mr. Lacy and Mr. Becker have worked together for years on many cases, including for a time when both were staff attorneys together at ONDA. They have developed an incredibly effective working relationship over the past fifteen years. In addition, it is my understanding that the attorneys in this case have exercised their billing judgment and are not seeking fees for time spent that may have been duplicative or redundant.

## II.    THE COSTS AND EXPENSES, INCLUDING STUDIES AND ANALYSES NECESSARY FOR THE PREPARATION OF ONDA'S CASE, ARE REASONABLE.

22.    I consider the $191,200 in expenses ONDA is seeking for the reports, studies, and analyses prepared by Dr. Craig Miller that document the conditions, and often the non-existence,

9

of routes on-the-ground, and include GIS and spatial analyses of the BLM's environmental review documents, to be necessary for the preparation and successful prosecution of ONDA's case. I believe that the costs and expenses sought for Dr. Miller's work are reasonable, particularly given how essential the information he gathered, analyzed, and studied was to this case. I am familiar with Dr. Miller's GIS work through the cases in which I have represented ONDA, and I know his work to be of the highest quality. I have observed how, time and again, his work has proved central to nearly all of ONDA's courtroom successes over the past two decades. Dr. Miller's detailed studies and analyses in this case, including his many maps, photo sets and route survey forms, were invaluable to ONDA and its attorneys in identifying problems and potential legal issues for research and claim development, for illustrating ONDA's concerns to the court, and for helping ONDA secure the long-standing injunction that has limited use of about 120 miles of disputed routes for almost a decade now. Dr. Miller's work was essential to the ultimately excellent result ONDA achieved in this case.

23. I also reviewed the other costs of litigation and expenses ONDA requests, including those of consultant Bill Marlett (with whom I worked when he was the executive director of ONDA) and ecologist Dr. Jonathan Gelbard, and I find them to be reasonable and of the types that are routinely charged to clients in similar cases.

24. In preparing this declaration, I reviewed the complaint, the major appellate court, district court, and Board of Land Appeals pleadings, briefings, and decisions, declarations and evidence submitted by Dr. Miller, Dr. Gelbard and Mr. Marlett, and the time records ONDA's attorneys have prepared in support of their amended fees application. I spent 8.8 hours at my normal hourly rate in Portland of $550 per hour in reviewing these materials and preparing this declaration. A true and accurate copy of my timesheet is attached as Exhibit A.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 10th day of March 2020 in Portland, Oregon.

                                                 s/ Stephanie M. Parent

                                                 Stephanie M. Parent