**Peter M. ("Mac") Lacy (OSB # 013223)**
Oregon Natural Desert Association
2009 NE Alberta St., Suite 207
Portland, OR 97211
(503) 525-0193
lacy@onda.org

**Thomas C. Buchele (OSB # 081560)**
Earthrise Law Center
10015 SW Terwilliger Blvd.
Portland OR  97219
(503) 768-6736
tbuchele@lclark.edu

**David H. Becker (OSB # 081507)**
Law Office of David H. Becker, LLC
4110 SE Hawthorne Blvd. # 168
Portland, OR 97214
(503) 388-9160
davebeckerlaw@gmail.com

Attorneys for Plaintiff

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **OREGON NATURAL DESERT ASSOCIATION,** | |
| Plaintiff, | No. 3:09-cv-369-JR |
| v. | **DECLARATION OF STEPHEN BLOCH** |
| **JEFF ROSE**, Burns District Manager, BLM, *et al*., | |
| Defendants,<br>and | |
| **HARNEY COUNTY**, | |

                Defendant-Intervenor-
                Cross Claimant.

I, STEPHEN BLOCH, declare as follows:

## INTRODUCTION

1.      I am an attorney licensed to practice law in Utah since 1997. I am a member of the bars of the State of Utah, the United States District Court for the District of Utah, the United States Court of Appeals for the Tenth Circuit, and the United States Supreme Court. I have also been admitted *pro hac vice* for litigation in the United States District Court for the District of Columbia.

2.      Since 2012, I have served as Legal Director for the Southern Utah Wilderness Alliance ("SUWA") in Salt Lake City, Utah. I have been an environmental attorney and litigator for SUWA since 1999. I am a 1997 graduate of the University of Utah College of Law. After graduation I served as a judicial clerk for the Honorable Judith Billings on the Utah Court of Appeals. My resume is attached as Exhibit A.

3.      I submit this declaration in support of plaintiff-appellant Oregon Natural Desert Association's ("ONDA") application for fees, costs, and other expenses pursuant to the Equal Access to Justice Act ("EAJA"). In particular, I will attest to (1) the excellence of the results obtained by ONDA in this case, discussing the importance of the court decisions and relief obtained by ONDA, and (2) the importance of the work undertaken by ONDA's GIS Analyst, working in concert with ONDA's attorneys, in securing the excellent result obtained.

4.      In order to render the opinions in the discussion that follows, I reviewed the docket sheet, the major pleadings and decisions in this case, all of Dr. Craig Miller's declarations and supporting materials, the ONDA route and wilderness inventory surveys and reports, and the

key maps, photo-sets, route analysis forms, charts and tables prepared by Dr. Miller. I also reviewed Dr. Miller's Ninth Declaration, in which he further explains the work he performed in this litigation.

## EXPERIENCE AND QUALIFICATIONS

5.   SUWA is a nonprofit environmental membership organization dedicated to the preservation of outstanding wilderness found throughout Utah. Since 1983, SUWA has advocated for permanent protection for the millions of acres of wilderness-quality lands in Utah, and for on-going management of public lands not ultimately designated as Wilderness for the protection of their unique values, including opportunities for solitude and quiet recreation. SUWA focuses its efforts on the federal public lands managed by the Bureau of Land Management ("BLM").

6.   For the past twenty years, much of SUWA's work has focused on advocating for the protection of wilderness caliber lands in BLM land use planning and resource allocation decisions and, more specifically, in contentious BLM Travel Management Planning decisions. This work includes conducting ground-truthing surveys of lands managed by the BLM and using geographic information system (GIS) analysis to visualize and analyze that information, commenting on BLM land management planning and proposals, and advocating for limitations on off-road vehicle use and recognition that some routes claimed by resource users to be "roads" do not in fact exist or should be closed to motorized use to protect the outstanding values of Utah's public lands.

7.   An equally contentious environmental issue in Utah involves claims by the State of Utah and its counties brought under the Quiet Title Act, 28 U.S.C. § 2409a, to rights-of-way for so-called "highways" under Revised Statute 2477 (commonly referred to as "R.S. 2477"),

which is part of the Mining Law of 1866 and was repealed by Congress in 1976 with the passage of the Federal Lands Policy and Management Act (FLPMA), subject to valid existing rights as of that time. The State and counties claim over 14,000 rights-of-way, totaling about 36,000 miles, over federal public lands throughout Utah. Many of these routes do not actually exist on the ground. SUWA and its partners have proved this by collecting field surveys and photographs of alleged "highways."

8. Over the past thirty years SUWA has conducted on-the-ground inventories and, over the past decade, extensive GIS analysis across more than 5,000 miles of alleged off-road vehicle trails and R.S. 2477 claims across Utah.

9. SUWA's work to defeat the designation of so-called "ghost routes" either in BLM-led motorized travel planning or in R.S. 2477 litigation in Utah is similar to BLM's identification in this case of 555 miles of "existing" routes on Steens Mountain, and then deciding to open those routes to motorized use and mechanized maintenance—even though ONDA's field surveys, studies, and analyses showed that hundreds of miles of those routes were non-existent or so primitive on the landscape that designating them for maintenance would forever change the character of Steens Mountain.

10. In this way, the work SUWA does in Utah is quite similar—and at times directly connected—to that of ONDA in Oregon. For example, ONDA in 2008 won a landmark decision in the Ninth Circuit in which that court held that the BLM must consider impacts to wilderness values just like any other resource or value on the public lands. *Or. Natural Desert Ass'n v. Bureau of Land Mgmt.*, 625 F.3d 1092 (9th Cir. 2010). The case was important not just for the millions of acres of land affected by the agency decisions ONDA had challenged there, but also because in 2012 the U.S. Department of the Interior reinstated its wilderness inventory handbook

that it had rescinded in 2003 under the George W. Bush administration through a settlement between Interior and the State of Utah. This led the BLM to resume inventorying tens of millions of acres of federal public land across the West. In Utah, SUWA relied on *ONDA v. BLM* in district court briefing defending a 2017 settlement agreement between SUWA and the United States (over the objections of the State of Utah and two counties that opposed the settlement complaining that it inappropriately prioritized wilderness). That briefing ultimately resulted in the district court issuing a decision granting the parties "joint motion for an indicative ruling." *S. Utah Wilderness Alliance v Schneider*, No. 2:12cv257 DAK (D. Utah April 26, 2017) (Dkt 537). In short, I am thoroughly familiar with the types of wilderness and route inventory issues that ONDA has long been pursuing and which were at the heart of this case about Steens Mountain travel planning.

11. As SUWA's Legal Director, and in my twenty years of experience as an attorney at SUWA, I have worked extensively and have expertise in drafting and filing comments, protests, administrative appeals and federal litigation involving the designation of routes available for motorized travel on federal public lands in Utah. Through my work on these types of environmental cases, I have developed expertise in analyzing and applying complex environmental statutory frameworks and related procedural and administrative law doctrines. I have represented SUWA in more than three dozen cases and administrative processes involving travel planning on lands managed by the BLM. This includes a number of administrative proceedings before the Department of the Interior's Board of Land Appeals ("IBLA"). As a result, I am intimately familiar with the requirements of the National Environmental Policy Act ("NEPA"), the Federal Land Policy and Management Act ("FLPMA"), the minimization criteria (Executive Order 11644 and 43 C.F.R. Part 8340), and BLM internal guidance (BLM Handbook

8342) that BLM is obligated to apply in its travel planning to minimize damage to resources on public lands.

12. Some representative cases involving travel management that I have been involved in on behalf of SUWA include:

    a. *Natural Resources Def. Council v. McCarthy*, 4:19cv55 (D. Utah filed Aug. 1, 2019). NRDC, SUWA and The Wilderness Society have challenged BLM's decision to summarily lift a 12-year closure order on cross-country off-highway vehicle use across 5,400 acres of BLM managed lands, and alleged that BLM violated NEPA.

    b. *SUWA v. Burke*, 908 F.3d 630 (10th Cir. 2018); *SUWA v. Burke*, No. 2:12CV257DAK, 2015 WL 2452932 (D. Utah May 22, 2015); *SUWA v. Burke*, 981 F. Supp. 2d 1099 (D. Utah 2013). This case, which resulted in a series of judicial decisions, began in 2008 with SUWA's challenge to six BLM land use plans and associated Travel Management Plans in Utah. SUWA argued that BLM failed to comply with NEPA and to properly document and apply the BLM regulatory criteria for minimization of impacts in its Travel Management Plans, among other violations of law. The parties agreed to litigate the BLM Richfield field office plans first in a "Bellwether" process, acknowledging that the outcome of this first challenge may be dispositive for the other challenged plans. On November 4, 2013, the district court ruled that BLM failed to minimize the impacts of motorized use on the land and its resources and to inventory archaeological sites when the agency issued its Richfield Resource Management Plan and Travel Management Plan

in 2008. The case settled in 2017, with BLM agreeing to prepare thirteen new Travel Management Plans and include travel network minimization alternatives in its new NEPA analyses. The Tenth Circuit upheld the settlement on appeal after the State of Utah and two of its counties challenged its validity. In the lead-up to the filing of this case SUWA conducted extensive on-the-ground inventories across hundreds of miles of routes BLM proposed to designate for motorized vehicle use that conflicted with agency and citizen identified wilderness. This information was used by SUWA GIS-analysts to, among other things, evaluate whether BLM complied with the minimization criteria.

c. *Kane Cnty., Utah v. Salazar*, 562 F.3d 1077 (10th Cir. 2009). SUWA intervened in this case to defend BLM's travel management plan for the Grand Staircase-Escalante national monument against claims that the plan and its closure of alleged rights-of-way violated R.S. 2477.

d. *SUWA v. Kenczka*, No. 2:12CV913DN, 2012 WL 12875859 (D. Utah Oct. 6, 2012). This case involved a challenge to a BLM decision to upgrade and pave a primitive dirt road in Uintah County, Utah, alleging that BLM's approval of the paving project violated NEPA.

e. *SUWA v. Sierra*, No. 2:08-CV-195-TC, 2008 WL 4643003 (D. Utah Oct. 20, 2008). This case involved a challenge to BLM's decision to deny SUWA's petition to close Arch Canyon, in San Juan County, Utah, to motorized vehicle use.

    f.  *Williams v. Bankert*, No. 2:05CV503DAK, 2007 WL 3053293 (D. Utah Oct. 18, 2007). SUWA intervened in this case to defend BLM's closure of several routes in the San Rafael Route Designation Plan to off-highway vehicle use. The district court upheld the agency's decision against challenges under FLPMA and NEPA.

    g.  *Utah Shared Access Alliance v. Carpenter*, 463 F.3d 1125 (10th Cir. 2006). SUWA intervened in this case to defend BLM-imposed restrictions on use of off-highway vehicles against a challenge by a motorized access advocacy group under FLPMA, NEPA, and other laws.

    h.  *SUWA v. Nat'l Park Serv.*, 387 F. Supp. 2d 1178 (D. Utah 2005). In this case, SUWA challenged portions of a National Park Service backcountry management plan that affected road access to Canyonlands National Park under NEPA and other laws.

    i.  *Utah Shared Access Alliance v. U.S. Forest Serv.*, 288 F.3d 1205 (10th Cir. 2002). SUWA intervened in this case to defend Forest Service-imposed travel restrictions on use of off-highway vehicles against a challenge by a motorized access advocacy group under NEPA and other laws.

13. I first visited and backpacked in Steens Mountain in 1993 when I worked as a seasonal technician and fire fighter for the U.S. Forest Service, Malheur National Forest in Burns, Oregon. I have returned several times since, most recently in the early-2000s. My visits to Steens Mountain made a lasting impression on me as one of the West's wildest and most remote landscapes. I found it to be an area where motorized use was at best in conflict with if not inimical to the protection of the area's unique flora, fauna, and unspoiled nature. I am also a

longstanding and current member of ONDA, first joining in 1997, and closely follow and am familiar with its advocacy to protect Steens Mountain among other wild places in southeast Oregon.

**DISCUSSION**

I.   **ONDA OBTAINED AN EXCELLENT RESULT IN THIS CASE**

14.   A prevailing party is entitled to a "fully compensatory" fee award if it has "obtained excellent results." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). In my opinion, put simply, ONDA obtained excellent results in this matter. In *ONDA v. Rose*, the Ninth Circuit Court of Appeals: vacated the Steens Mountain travel management plan and comprehensive recreation Plan; established circuit precedent regarding federal agencies' obligation to conduct a proper inventory of baseline conditions in a NEPA analysis, particularly in the travel management planning context; held that the IBLA arbitrarily changed the definition of "roads or trails" without a reasoned explanation; and, established circuit precedent regarding the IBLA's inappropriate decision to declare BLM complied with NEPA by relying on materials submitted directly to that Board – and not the public – during an administrative appeal. 921 F.3d 1185, 1190–92 & n.4. ONDA also obtained an injunction prohibiting motorized vehicle use on approximately 121 miles of routes on Steens Mountain that lasted from 2011 to 2019. Finally, ONDA has reached a stipulation with BLM that will keep motorized vehicles off of these 121 miles of route and prohibit mechanical maintenance on those same miles until BLM issues a new Steens Mountain travel management plan. *See ONDA v. Rose*, No. 09-cv-369-JR [376] (D. Or. Dec. 20, 2019) (Stipulation and Order describing that long-standing injunction and keeping it in place until BLM prepares new travel plan as ordered by Ninth Circuit).

15. Because of ONDA's excellent work, BLM's proposal to allow the creation of hundreds of miles of dirt roads and trails across Steens Mountain has been enjoined and set-aside, insuring that this wild and ecologically significant place will not literally be overrun by motorized vehicles. As a long-time attorney and wilderness advocate the results obtained by ONDA in this litigation are precisely what conservationists across the country point to as successful litigation to preserve a remarkable national treasure.

## II. THE STUDIES AND ANALYSES OF DR. CRAIG MILLER WERE NECESSARY FOR THE PREPARATION OF ONDA'S CASE

16. In order to effectively advocate (comment, appeal, litigate) in contemporary travel management planning processes for the protection of places like Utah's redrock wilderness and Oregon's Steens Mountain, conservation organizations like SUWA and ONDA must conduct extensive on-the-ground inventories (collecting GIS data, photographs, field notes, etc.) and then compile, analyze and display that information with the aid GIS technology, all the while documenting and detailing the steps taken to accomplish that work in supporting declarations. I have reviewed the work conducted by Dr. Craig Miller in support of ONDA's Steens Mountain advocacy at issue in this case, including his ground truthing, mapping, GIS spatial analysis and route evaluation forms, and concluded that each aspect of this work was necessary for ONDA to create a record that it knew the on-the-ground condition of Steens Mountain better than BLM and to ultimately prevail in this litigation. Without thoroughly documenting that certain alleged motorized vehicle roads and trails do not exist on the ground, and then analyzing and displaying the information, including comparing it against BLM's information (where there was any), it would be impossible for ONDA overcome the many presumptions built into review of federal agency fact-finding and decision making. It is unsurprising that Dr. Miller prepared nine declarations and significant supporting materials given the decade-plus span of this case. In

short, Dr. Miller's work was more than reasonable: it was both necessary and essential to the preparation (and success) of ONDA's case.

17.     Various iterations of Dr. Miller's declarations, reports and materials were submitted by ONDA to the district court (including his declarations at ECF ## 56, 122, 167, 186, 196, 220, 296, and 339) and Ninth Circuit (including several of his district court and IBLA declarations included as part of the Excerpts of Record, one declaration [App. ECF 15-4] filed in support of ONDA's successful motion for injunction pending appeal, and also key ONDA surveys and inventory reports for which Miller was primarily responsible, including ONDA's 2002 *Wilderness Inventory Report*, AR 20655, its 2003 *Steens Mountain CMPA Road Closure Recommendations*, SAR 4074, and its 2007 *Route Inventory Report*, AR 313). This Court's several decisions in the matter referred to as *ONDA v. McDaniel* reference, cite to and rely on Dr. Miller's declarations and materials. *See, e.g.*, 2012 WL 13051084 at 6 (D. Or. Sept. 28, 2012) (citing Miller declaration); 282 F.R.D. 533, 535, 36 (D. Or. May 31, 2012) (citing Miller declarations); 2011 WL 3793710 (D. Or. Aug. 25, 2011) (relying, in part, on Miller declaration to establish injunction); 2011 WL 1654265 at 1, 26 (D. Or. April 28, 2011) (relying on Miller declaration and denying BLM motion to strike same); and, 751 F. Supp. 2d 1151, 1163 (D. Or. 2011) (citing Miller declaration). On remand from this Court, the IBLA also cited Dr. Miller's declarations and work dozens of times in its 2014 decision. RAR 22268–341.

18.     I am aware that ONDA is seeking approximately $191,000 in costs (at $100 an hour) for 1,939.25 hours of work performed by Dr. Miller throughout the various stages of this litigation, as described above. Based on my experience, that is a reasonable hourly rate, number of hours, and total amount of costs for the scope and extent of Dr. Miller's work in this lengthy, complex, multi-phase, evidence-heavy litigation. In 2018, SUWA contracted with a third-party,

Bio-West Inc. www.bio-west.com) with offices in Logan, Utah, to perform GIS analysis and prepare an expert report in a contentious R.S. 2477 case, *Kane County, Utah v. United States and SUWA*, 2:10cv1073 (D. Utah). Bio-West's rates are comparable ($93.74/hour) to those of Dr. Miller and with a significantly smaller project of a shorter duration SUWA incurred costs from 2018-Feb. 2020 that are on par with those sought in this matter. I further note that, given the length of this complex litigation, Dr. Miller's total hours come out to an extraordinarily reasonable average of less than 150 hours a year since he first began evaluating and ground-truthing BLM's route survey information and travel plan proposal in 2007.

### TIME SPENT REVIEWING MATERIALS AND PREPARING DECLARATION

19. Between February 24 and March 11, I spent 6.75 hours reviewing the pleadings and docket sheet, the key court decisions and legal briefs, and the studies, analyses and declarations of Dr. Craig Miller (including the attachments to those declarations and related materials); communicating with the counsel in this matter; and preparing this supporting declaration. As an attorney with more than 23 years of highly specialized experience and expertise in environmental law and litigation, my reasonable hourly rate in the relevant forum (Portland, Oregon) is $535 per hour, based on the inflation-adjusted rates in the 2017 Oregon State Bar Economic Survey for attorneys with 21 to 30 years of experience and for attorneys with practice specialties in environmental law. I have maintained contemporaneous records of my time on this case. A compilation of time entries is attached as Exhibit B.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 11th day of March 2020 in Salt Lake City, Utah.

                                           s/ Stephen Bloch

                                           Stephen Bloch, Legal Director
                                           Southern Utah Wilderness Alliance